Patrick L. Oot (*pro hac vice* granted)
SHOOK, HARDY & BACON L.L.P.
1800 K Street, N.W., Suite 1000
Washington, DC  20006
Tel: 202.783.8400 | Fax: 202.783.4211
oot@shb.com

Eva M. Weiler (SBN:  233942)
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California  92614-2546
Tel: 949.475.1600 | Fax: 949.475.0016
eweiler@shb.com

M. Kevin Underhill (SBN:  208211)
Steve Vieux (SBN:  315133)
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2600
San Francisco, California  94104
Tel: 415.544.1900 | Fax: 415.391.0281
kunderhill@shb.com
svieux@shb.com

Attorneys for Defendant Walmart Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND

| | |
|---|---|
| GREENPEACE, INC.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>WALMART INC.; DOES 1 through 25, inclusive,<br><br>                    Defendants. | Case No.:  3:21-cv-00754 MMC<br><br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7<br><br>**WALMART INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:   Apr. 30, 2021<br>Time:   9:00 a.m.<br><br>Complaint Filed:  December 16, 2020 |

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................... 1

INTRODUCTION ................................................................................................................. 2

FACTS ALLEGED ............................................................................................................... 3

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.   Walmart Is Not Subject to Personal Jurisdiction in California for Purposes of
     Greenpeace's Claims Against It ................................................................................ 7

     A.   Walmart is not subject to general personal jurisdiction in California. ................. 8

     B.   Walmart is not subject to specific personal jurisdiction in California for
          purposes of Greenpeace's claims. ...................................................................... 9

          1.   Specific jurisdiction requires a "substantial connection" between the
               plaintiff's own claim and the defendant's forum-related activities. .......... 9

          2.   Greenpeace does not allege the necessary connection between its own
               claim and Walmart's activities in California. ......................................... 11

II.  Greenpeace Has Not Stated a UCL Claim. ......................................................... 13

     A.   Greenpeace does not allege it lost money or property. ....................................... 13

     B.   The complaint does not provide the "fair notice" Rule 8(a) requires because it
          does not specify the products or recycling programs at issue. .............................. 17

     C.   The complaint also fails to satisfy Rule 9(b). ................................................... 18

     D.   The same arguments defeat the causes of action labeled as unlawful- or unfair-
          practice claims. ................................................................................................. 20

III. Greenpeace Has Not Alleged a Basis for Injunctive Relief. ............................... 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) ...................................................................9

*Amalgamated Transit Union, Local 1756, AFL–CIO v. Superior Court*,
   46 Cal. 4th 993 (2009) ...............................................................14, 16, 17

*Animal Legal Def. Fund v. LT Napa Partners LLC*,
   234 Cal. App. 4th 1270 (2015) ..................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................7

*Ballard v. Bhang Corp.*,
   No. EDCV 19-2329-JGB, 2020 WL 6018939 (C.D. Cal. Sept. 25, 2020)...................17

*Becton, Dickinson and Co. v. Cytek Biosciences Inc.*,
   No. 18-cv-00933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020)......................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................7, 17

*Bontrager v. Showmark Media LLC*,
   2014 WL 12600201 (C.D. Cal. June 20, 2014) ...........................................15

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017)..................................................................7, 8, 9, 10, 11

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) ...............................................18

*Cafasso v. General Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ...................................................................7

*Californians for Disability Rights v. Mervyn's LLC*,
   165 Cal. App. 4th 571 (2008) ..................................................................15

*Californians for Disability Rights v. Mervyn's LLC*,
   39 Cal. 4th 223 (2006) .........................................................................15, 16, 17

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983).....................................................................................24

*City of Oakland v. BP PLC*,
   No. C 17-06011 WHA, 2018 WL 3609055 (N.D. Cal. July 27, 2018) ...............9, 12, 13

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ..................................................................17

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
 398 F. Supp. 3d 623 (N.D. Cal. 2019) ....................................................................................19

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ..............................................................................................................8

*Day & Zimmermann, Inc. v. Challoner*,
 423 U.S. 3 (1975) ................................................................................................................17

*Doe v. Unocal Corp.*,
 248 F.3d 915 (9th Cir. 2001) .............................................................................................9, 11

*eBay Inc. v. MercExchange, L.L.C.*,
 547 U.S. 388 (2006) ............................................................................................................24

*Erie R. Co. v. Tompkins*,
 304 U.S. 64 (1938) ..............................................................................................................17

*Freeman v. ABC Legal Servs., Inc.*,
 877 F. Supp. 2d 919 (N.D. Cal. 2012) ..................................................................................24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) .........................................................................................................8, 11

*Gross v. Vilore Foods Co.*,
 No. 20-cv-0894-DMS, 2020 WL 6319131 (S.D. Cal. Oct. 28, 2020) ......................................17

*Hall v. Time Inc.*,
 158 Cal. App. 4th 847 (2008) ..........................................................................................16, 17

*Hodsdon v. Mars, Inc.*,
 891 F.3d 857 (9th Cir. 2018) ...........................................................................................19, 20

*Huynh v. Quora, Inc.*,
 No. 5:18-CV-07597-BLF, 2020 WL 7495097 (N.D. Cal. Dec. 21, 2020) .................................24

*Johnson v. United Continental Holdings, Inc.*,
 No. C-12-2730-MMC, 2013 WL 6354210 (N.D. Cal. Dec. 5, 2013).........................................18

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ..........................................................................7, 13, 18, 19, 21

*Knapp v. Sage Payment Solutions, Inc.*,
 No. 17-cv-03591-MMC, 2018 WL 659016 (N.D. Cal. Feb. 1, 2018).........................................6

*Kwikset Corp. v. Superior Court*,
 51 Cal. 4th 310 (2011) ....................................................................................13, 14, 15, 16, 17

*LiMandri v. Judkins*,
 52 Cal. App. 4th 326 (1997) ...........................................................................................19, 20

*Mattel, Inc. v. Greiner & Hausser GmbH*,
 354 F.3d 857 (9th Cir. 2003) .................................................................................................6

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) .................................................................11

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) ....................................................................7

*O'Donnell v. Bank of Am. Nat'l Ass'n*,
   504 F. App'x 566 (9th Cir. 2013) ...........................................................21

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) ..................................................................9

*Reichman v. Poshmark, Inc.*,
   267 F. Supp. 3d 1278 (S.D. Cal. 2017)...................................................15

*Resolute Forest Products, Inc. v. Greenpeace International*,
   No. 17-cv-02824-JST, 2019 WL 281370 (N.D. Cal. Jan. 22, 2019) ..............11

*Rubenstein v. Neiman Marcus Group LLC*,
   667 F. App'x 564 (9th Cir. 2017) ...........................................................21

*Schertzer v. Samsonite Co. Stores, LLC*,
   2020 WL 4281990 (S.D. Cal. Feb. 25, 2020) ..................................21, 24

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................24

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal. 4th 553 (1998) ............................................................................15

*Svenson v. Google, Inc.*,
   No. 13-cv-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ...........7

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ....................................................................7

*Ticknor v. Choice Hotels Int'l, Inc.*,
   265 F.3d 931 (9th Cir. 2001) ..................................................................17

*Walden v. Fiore*,
   571 U.S. 277 (2014)...................................................................7, 9, 10, 11

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) .............................................................8, 11

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ................................................................20

**Statutes**

Cal. Bus. & Prof. Code § 17203 ...............................................................24

Cal. Bus. & Prof. Code § 17204 ...............................................................13

Cal. Bus. & Prof. Code § 17500 ...................................................................................21

Cal. Bus. & Prof. Code § 17580.5(a).............................................................................22

Cal. Bus. & Prof. Code § 17580.5(b).........................................................................5, 22

Cal. Pub. Res. Code §§ 18010 ......................................................................................22

Cal. Pub. Res. Code §§ 18011 ......................................................................................22

Cal. Pub. Res. Code §§ 18015 ......................................................................................22

Cal. Pub. Res. Code §§ 40180 ................................................................................21, 22

Cal. Pub. Res. Code §§ 42257 ................................................................................21, 22

Cal. Pub. Res. Code §§ 42355.5 .............................................................................21, 22

**Rules**

Fed. R. Civ. P. 8(a) ...........................................................................................1, 3, 7, 17

Fed. R. Civ. P. 9(b) ...........................................................................3, 7, 13, 18, 19, 21

Fed. R. Civ. P. 12(b)(2)...................................................................................................6

Fed. R. Civ. P. 12(b)(6)...................................................................................................1

**Other Authorities**

16 C.F.R. § 260.12(a).......................................................................................................5

16 C.F.R. § 260.12(b)(1)............................................................................................5, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 30, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Maxine M. Chesney in the United States Courthouse, Courtroom 7, 19th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Walmart Inc. will and hereby does move for an order dismissing Plaintiff's complaint.

Walmart moves to dismiss under Federal Rules 12(b)(2) and 12(b)(6) on the following grounds: (1) Walmart is not subject to personal jurisdiction in California for purposes of Greenpeace's claim; (2) Greenpeace's UCL claim fails because it has not "lost money or property" as the UCL requires; (3) the complaint does not satisfy Federal Rules of Civil Procedure 8(a) or 9(b); and (4) Greenpeace has not alleged facts showing it would have a right to injunctive relief, the only form of relief it seeks.

# **INTRODUCTION**

Greenpeace is right to be concerned about plastic pollution but wrong to think this lawsuit is an appropriate way to address that problem. It alleges Walmart deceives consumers into buying products erroneously labeled as "recyclable." But none of the allegedly deceived consumers are parties here, and the products are not erroneously labeled. Greenpeace does not contend these products cannot be recycled—it contends the products are not recycled *often enough* to merit the term "recyclable." It presents this as an interpretation of the applicable federal regulation, but is actually urging this Court to rewrite it. Even if Greenpeace's novel theory were correct, it would not have a cause of action against Walmart, partly because (as it concedes) the *reasons* more plastic products are not recycled involve market conditions and third-party actions for which Walmart is not responsible. For these and other reasons, the Court should dismiss the complaint.

First, Walmart is not subject to personal jurisdiction in California for purposes of Greenpeace's claim. It is not subject to *general* personal jurisdiction in California for any purpose. And while it could be subject to *specific* personal jurisdiction in a case brought by a consumer who alleged he or she was misled, this is not such a case. The causal connection between *Greenpeace's* claim—that it had to "divert resources" to investigate Walmart's practices—and Walmart's conduct in California is too attenuated to permit a court here to exercise jurisdiction. Greenpeace does not allege Walmart's conduct in California was different than its conduct anywhere else, or that the conduct actually required Greenpeace to do anything in California. It chose to act here, and its claim does not arise out of jurisdictionally relevant contacts between its claim and California.

Second, even if jurisdiction existed, Greenpeace's UCL claim—its only claim—would fail. The UCL requires a plaintiff to allege that it "lost money or property" as a result of the allegedly wrongful conduct. Greenpeace does not allege it "lost" anything, only that it "diverted resources" to investigate before filing this lawsuit, which it says it is doing on behalf of the general public. But lawsuits "on behalf of the general public" are what the 2004 amendments to the UCL were meant to eliminate. The California Supreme Court has never held that a case such as Greenpeace has alleged here can be brought under the UCL, and a federal court should not hold that "diverting resources" can state a UCL claim.

Third, Greenpeace's complaint does not satisfy Federal Rule of Civil Procedure 8(a) or 9(b). The complaint does not give fair notice as Rule 8(a) requires because it does not specify the products at issue, instead questioning entire categories. Nor does it specify the places where these products allegedly cannot be recycled. It does not and could not allege that recycling programs are the same everywhere. Partly for those same reasons, the complaint does not satisfy Rule 9(b). While Greenpeace does not allege *it* was deceived (indeed, it contends the opposite), all its causes of action depend on showing that *consumers* were deceived. Its claims are therefore grounded in fraud, which means Rule 9(b) applies. Because none of the consumers are parties, it is no surprise that the complaint offers no details about when or where anyone was deceived, what label deceived them, or when Walmart knew facts it allegedly failed to disclose to such a person.

Finally, even if Greenpeace could jump through the hoops above, it has not alleged facts showing it would have a right to injunctive relief, the only kind of relief it is seeking. For all these reasons, the Court should dismiss the complaint.

### FACTS ALLEGED

Greenpeace, Inc., is a nonprofit organization based in Washington, D.C., that focuses on environmental issues. Compl. ¶¶ 5–7. It uses "peaceful protest and creative communications"—and sometimes litigation—"to expose global environmental problems and promote solutions...." *Id*. ¶ 6. Here, it seeks to address the worldwide problem of plastic pollution with a lawsuit in California against just one of the many retailers that sell plastic products.

Walmart Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas. Compl. ¶ 17. Greenpeace complains that Walmart misleads consumers by selling "a variety of single-use plastic products that are labeled as recyclable...." *Id*. ¶ 1. Greenpeace does not contend the "recyclable" representation is literally false. Instead, it contends the representation is misleading because third parties do not recycle the products often enough. *Id*. Specifically, Greenpeace alleges the products are "not recyclable" because (1) some consumers "do not have access to recycling programs" that accept them; (2) they cannot be separated and sorted correctly by recycling facilities; and (3) there are no "end markets" for reusing or converting the products. *Id*. ¶ 2.

Greenpeace does not allege Walmart is responsible for any of those underlying issues. To the contrary, it alleges that low recycling rates are due partly to increased production of new plastics by "major oil and natural gas companies," causing prices to fall to the point that recycled plastics are no longer competitive. *Id*. ¶ 35. As a result, recycling facilities "cannot afford" to keep operating because there are now "almost no buyers" for their products. *Id*. Greenpeace also attributes the problem to China's decision to sharply limit its import of recyclable materials, including plastics. *Id*. ¶ 38. This policy was enacted in 2018, and over the next year, China's plastic imports allegedly dropped by 99 percent. *Id*. ¶ 38 & n.36 (citing article stating policy was enacted in January 2018). For this reason, too, "[r]ecycling companies can no longer sell used plastic at prices that cover their processing cost, providing them with no incentive to do so." *Id*. ¶ 38. Again, the complaint does not allege Walmart has any responsibility for those developments. Rather, it asserts that Walmart has continued or increased its use of the term "recyclable" on labels despite the "widespread acknowledgement that end markets for plastic waste have been shrinking...." *Id*. ¶ 39. But it alleges no facts to support that assertion. In particular, it alleges no facts showing Walmart even knew this was happening, or if it did know, when. After all, if market forces dictate recycling rates as Greenpeace alleges, then those rates will necessarily change constantly. Yet the complaint says nothing about when or even if Walmart knew the conditions Greenpeace claims it failed to disclose.

Though its claims are grounded in fraud, Greenpeace does not specify which labels are allegedly deceptive. Rather than target specific products, it targets *all* products (A) "made from plastics #3–7 or unidentified plastic," (B) sold under Walmart's private label brands, and (C) labeled as "recyclable." *Id*. ¶ 2. It provides two "non-exclusive" lists of some of the huge number of brands and products this definition would include. *See id.* nn. 4 & 5. The phrase "plastics #3–7" refers to the practice of describing types of plastic by number, an example of which is given in the complaint. *See* Compl. ¶¶ 33–34. Greenpeace is not targeting plastics #1 and 2, which it describes as "the most recyclable," though according to Greenpeace those plastics are recycled at rates as low as 13 percent. *Id*. ¶ 34. Greenpeace targets only plastics #3–7, alleging these are "rarely, if ever recycled." *Id*.

The complaint includes partial images of the labels of four products. Compl. ¶¶ 41, 46, 48, 50. But it does not allege when these images were taken, nor do the images show the entire label for

any of the four products. Three of the four labels bear a disclaimer telling consumers they should "Check Locally" because the products are "[n]ot recycled in all communities." *Id.* ¶¶ 46, 48, 50. The images also show that all the labels direct consumers to other sources of information about recycling, including Walmart's own website and *how2recycle.info*. Both sites contain information about recyclability, what the label claims are intended to convey, some of the limitations on recycling programs, and whether particular materials can be recycled in particular communities and if so, where. *See, e.g.*, https://how2recycle.info/check-locally (last visited Feb. 17, 2021) (providing links that allow consumers to search for local recycling information by zip code and material type). Greenpeace does not allege which if any particular communities' recycling programs are deficient.

Greenpeace's fundamental claim, that the term "recyclable" as applied here is misleading, involves a radical reinterpretation of the FTC's "Green Guides." While the Green Guides are not enforceable federal regulations, California state law provides a safe harbor for environmental claims that follow the Guides. Cal. Bus. & Prof. Code § 17580.5(b). According to the Guides, a product or package is recyclable, and can be labeled as such, if it "***can be*** collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a) (emphasis added). Greenpeace does not allege the products and packaging it targets *cannot* be collected, separated, or otherwise recovered by recycling facilities. It alleges they are not actually *being* recycled at acceptable rates by recycling facilities (which are independent of Walmart), but does not allege they cannot be recycled.

Beyond that, the Green Guides standard is based on *access* to recycling facilities. The Guides allow unqualified recyclable claims if 60% of targeted customers have access to facilities that can recycle the item at issue. 16 C.F.R. § 260.12(b)(1). They instruct marketers to use a qualified recyclable claim if less than 60% of targeted customers have access to such facilities. *Id.* § 260.12(b)(2). Greenpeace does not allege *all* California consumers lack access to appropriate recycling facilities that can accept the products for recycling and are capable of recycling them, nor does it identify any particular community that lacks such access. Instead, its argument hinges on reports that *some* recycling facilities are failing to recycle plastic products and packaging they accept, due to allegedly decreasing demand for certain types of recycled plastic. Compl. ¶ 42. Even

1    assuming that to be true, Greenpeace does not plead any facts showing that Walmart is responsible

2    for this state of affairs.

3        Greenpeace does not allege *it* was misled by the labels. To the contrary, it alleges it was

4    harmed because it decided to focus on Walmart's "recyclable" claims as part of its environmental

5    mission, and by doing so it "diverted resources" it might have devoted to something else instead:

> Greenpeace investigated Defendants' recyclable representations because part of
> Greenpeace's mission is to ensure that consumers are not misled by environmental
> marketing claims. In furtherance of this mission and as part of Greenpeace's
> investigation, Greenpeace diverted resources from other programs in order to
> specifically investigate Defendants' representations that the Products are recyclable.
> In particular, Greenpeace utilized extensive staff time and expended substantial
> resources to understand the issue of plastic pollution and investigate Defendants' role
> in the proliferation of plastic waste. Greenpeace would not have diverted such
> resources but for Defendants' false representations that the Products are recyclable.
> Greenpeace has thus suffered injury in fact and lost money or property as a direct
> result of Defendants' misrepresentations and material omissions.

12   Compl. ¶¶ 61, 71, 83. It does not allege which other programs suffered as a result, or what

13   consequences, if any, they suffered. None of the consumers Greenpeace alleges were misled are

14   parties to the case, nor does Greenpeace allege any details about how or when any particular

15   consumer might have relied on a misrepresentation or omission. Nor does Greenpeace allege it

16   diverted any resources to anything *in California* except in one paragraph, where it alleges that in

17   February 2019 it "organized a 'day of action'" in which supporters took pictures of plastic pollution

18   in Los Angeles. Compl. ¶ 14. It does not allege it lost any money or property in doing so.

19       Greenpeace seeks only injunctive relief, including an order enjoining the allegedly wrongful

20   practices and requiring Walmart to conduct a "corrective advertising and information campaign,"

21   and also seeks to recover its attorneys' fees and costs because, according to Greenpeace, it is acting

22   in "the public interest." Compl. p. 31 (prayer for relief).

23                          **LEGAL STANDARD**

24       A defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

25   The plaintiff has the burden to establish that jurisdiction exists. *Mattel, Inc. v. Greiner & Hausser*

26   *GmbH*, 354 F.3d 857, 862 (9th Cir. 2003); *Knapp v. Sage Payment Solutions, Inc.*, No. 17-cv-03591-

27   MMC, 2018 WL 659016, at *1 (N.D. Cal. Feb. 1, 2018). "[M]ere 'bare bones' assertions of

28

minimum contacts with the forum or legal conclusions unsupported by specific factual allegations" do not satisfy that burden. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

A complaint must provide "fair notice" of the plaintiff's claims and the grounds on which they rest, as well as enough facts to set forth a plausible claim for relief. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels, conclusions, blanket assertions, and recitations of a claim's legal elements are not "facts" and need not be accepted as true. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. It is not enough to allege facts "merely consistent with" liability. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. The facts must plausibly show a viable claim without requiring speculation. *Svenson v. Google, Inc.,* No. 13-cv-04080-BLF, 2015 WL 1503429, *2 (N.D. Cal. Apr. 1, 2015). Further, any claims grounded in fraud (whether or not *labeled* as fraud claims) must also be pleaded with particularity, including claims based on concealment or omission theories. Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009). Thus, claims grounded in fraud must comply with Rules 8(a) and 9(b). *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (citing *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

## ARGUMENT

### I.   Walmart Is Not Subject to Personal Jurisdiction in California for Purposes of Greenpeace's Claims Against It.

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). General jurisdiction is "all-purpose": it allows a court to hear any claim against a defendant. *Bristol-Myers*, 137 S. Ct. at 1779–80 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). It exists only in a forum in which the defendant can fairly be considered "at home." *Id*. Specific jurisdiction is "very different": it must be case-linked, meaning that it can exist only if the plaintiff's suit actually arises out of or relates to the defendant's contacts with the forum. *Bristol-Myers*, 137 S. Ct. at 1780 (citing, *e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). The plaintiff's suit also must be sufficiently related to contacts that the defendant *itself*—not the plaintiff or a third party—created with the forum. *Id*. at 1781–82 (citing *Walden v. Fiore*, 571 U.S. 277, 285–89 (2014)).

Greenpeace makes only conclusory assertions regarding personal jurisdiction, alleging that the Court has jurisdiction because Walmart does business here:

> [Walmart] is a corporation or other entity that has sufficient minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself of the California market either through the distribution, sale or marketing of the Products in the State of California or by having a facility located in California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

Compl. ¶ 20. Neither this nor anything else in the complaint establishes personal jurisdiction. Walmart is not "at home" in California, and Greenpeace's claims—unlike the possible claims by third-party consumers to which it refers—do not arise from Walmart's alleged conduct in this state.

### A.     Walmart is not subject to general personal jurisdiction in California.

The two "paradigm" locations where a corporation is "at home" for purposes of general jurisdiction are (1) its place of incorporation and (2) its principal place of business. *Daimler AG*, 571 U.S. at 137. Walmart is incorporated in Delaware and its principal place of business is in Bentonville, Arkansas. Compl. ¶ 17.

Greenpeace also alleges that Walmart "manufactures, distributes, and sells the Products in California," but that is irrelevant to general personal jurisdiction.[1] If that were sufficient, "any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed." *Goodyear*, 564 U.S. at 929. The Supreme Court has repeatedly rejected such arguments. *See Bristol-Myers*, 137 S. Ct. at 1781 (rejecting California Supreme Court's "sliding scale" approach to specific jurisdiction because it "resemble[d] a loose and spurious form of general jurisdiction"); *Goodyear*, 564 U.S. at 929–30 (rejecting state courts' application of "stream of commerce" theory); *Daimler AG*, 571 U.S. at 136–39 (holding question is not whether activities in forum were "continuous and systematic," but whether they were so continuous and systematic to make it "essentially at home"); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020–21 & n.1 (9th Cir. 2017) (noting Supreme Court has rejected "stream of commerce" theory; holding no general jurisdiction despite importance of California market). So

---

[1] Greenpeace alleges no facts to support its assertion that Walmart "manufactures" the products in California, or that it manufactures them at all, for that matter.

despite the business Walmart does in California—a number that would be significant for any major retailer given the size of the state—that activity is irrelevant to the general-jurisdiction analysis.

**B.      Walmart is not subject to specific personal jurisdiction in California for purposes of Greenpeace's claims.**

Under the circumstances here, Walmart is also not subject to specific personal jurisdiction. Unlike general jurisdiction, specific jurisdiction exists only if a defendant's specific contacts with the forum give rise to the claim. *See Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). The defendant's "suit-related conduct" must "create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. A plaintiff's injury must be "tethered" to the forum state in a "meaningful way." *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015). Here, Greenpeace has not alleged that its injury is substantially tethered to California, or to contacts that Walmart created with that state. *See City of Oakland v. BP PLC*, No. C 17-06011 WHA, 2018 WL 3609055, at *3–4 (N.D. Cal. July 27, 2018) (dismissing global-warming claims against nonresident oil companies for lack of personal jurisdiction); *rev'd on other grounds*, 969 F.3d 895 (9th Cir. 2020).

**1.      Specific jurisdiction requires a "substantial connection" between the plaintiff's own claim and the defendant's forum-related activities.**

The Ninth Circuit employs a three-part test for specific jurisdiction: (1) the non-resident defendant must purposefully direct its activities at the forum or purposefully avail itself of the benefits and protections of its laws; (2) the plaintiff's claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.*

The problem for Greenpeace is that—unlike the potential claims of the California consumers in whose interest it claims to be acting—*its* claim does not arise out of or relate to Walmart's forum-related activities in a way that can support specific jurisdiction over Walmart. "What is needed—and what is missing here—is a connection between the forum and *the specific claims at issue.*" *Bristol-Myers*, 137 S. Ct. at 1781 (emphasis added). That connection *would* exist if the specific claims at issue were those of the California consumers who Greenpeace claims Walmart is misleading. But the

claim here is *Greenpeace's* claim that it was "injured" because it learned that Walmart was using the challenged labels and it diverted resources as a result. That claim has no connection to California except for the one Greenpeace chose to create by allegedly diverting some resources and organizing a "day of protest" in California. But jurisdiction cannot stem from a contact created by the plaintiff. *Bristol-Myers*, 137 S. Ct. at 1781–82; *Walden*, 571 U.S. at 285–89.

Nor does it matter that other parties may (or may not) have been injured in California by the alleged conduct. In *Bristol-Myers*, nonresidents argued jurisdiction in California was proper because, though there was no connection between the state and their claims, they had joined in a lawsuit along with other parties that could show such a connection. *Bristol-Myers*, 127 S. Ct. at 1781. But "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the product] in California— and allegedly sustained the same injuries as did the nonresidents—does not allow the state to assert specific jurisdiction over the nonresidents' claims." *Id*. Nor was it sufficient, "or even relevant," that the defendant had conducted other unrelated activities in California. *Id*. The necessary "connection between the forum and the specific claims at issue" was still missing. *Id*. Here, there *are* no other California plaintiffs—only nonparty consumers that Greenpeace asserts are being misled, though as discussed below, it does not plead the necessary facts to support even that assertion.

Greenpeace will likely argue that its claims do "relate to" Walmart's conduct in the forum because they are ultimately premised on harm to California consumers. But there must be a causal connection between the forum conduct and the *plaintiff's* harm that makes the two sufficiently "related"—not just any harm to anyone will do. Greenpeace has not alleged facts that would establish this, even under the Ninth Circuit's permissive "but for" standard. Again, Greenpeace's alleged injury is not spending money to buy products that disappointed or otherwise harmed it, but rather diverting of its own resources to address conduct it believes causes harm to *others*. But the Supreme Court has made clear that the "minimum contacts" that matter to specific jurisdiction must be "the defendant's *suit-related* contacts." *Walden*, 571 U.S. at 284. As *Bristol-Myers* clarified, factors such as selling the relevant product to other people in the forum, causing similar injuries to other people in the forum, or the ability of other people to bring "similar" claims, are not enough. 137 S. Ct. at 1781. Those are all connections between the defendant and "third parties," not between

the defendant and the litigation, and so they are "an insufficient basis for jurisdiction." *Id.* (quoting *Walden*, 571 U.S. at 286). In short, it makes no difference to specific jurisdiction how much *other* activity the defendant conducts in the forum. *Id.*; *see also Goodyear*, 564 U.S. at 930 n.6 (noting that "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction unrelated to those sales."); *Resolute Forest Products, Inc. v. Greenpeace International*, No. 17-cv-02824-JST, 2019 WL 281370, at *19 (N.D. Cal. Jan. 22, 2019) (holding allegations of unrelated conduct directed at state through licensing agreements with California entities could not support specific jurisdiction over the defendant).

Further, the connection must be *substantial. Walden*, 134 S. Ct. at 1121 (question is whether "the defendant's suit-related conduct" had a "substantial connection with the forum State.") Without an "adequate link" "between the forum and the specific claims" asserted by plaintiff, a state may not exercise specific jurisdiction "even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; [and] even if the forum State is the most convenient location for litigation." *Bristol-Myers*, 137 S. Ct. at 1780–81 (citation and alterations omitted). The requirement cannot be met by a connection that is too "attenuated." *Axiom Foods*, 874 F.3d. at 1068; *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1230 (9th Cir. 2011). And simply placing a product into a stream of commerce, even with the knowledge that it will be sold and used in California, is not sufficient. In-state conduct must be at least a "but for" cause of the plaintiff's injury; if the plaintiff presents "no evidence" that the defendant's California activities were a "necessary" cause of that injury, the requirement is not met. *Doe v. Unocal Corp*., 248 F.3d 915, 925 (9th Cir. 2001), *abrogated on other grounds* by *Williams*, 851 F.3d at 1023.

### 2.   Greenpeace does not allege the necessary connection between its own claim and Walmart's activities in California.

Greenpeace alleges activities by Walmart within California, but those activities were not a "but for" cause of its harm. As it concedes, the problem of plastic pollution is worldwide, not localized in California. The complaint attributes recent changes in the recycling markets, affecting "recyclability," not to Walmart's activities in California but to actions by China and unidentified oil

and gas companies. Compl. ¶¶ 35–38. Had Walmart never done business in California at all, consumers might not have suffered the injury Greenpeace alleges *they* suffered, but Greenpeace *itself* would have suffered the same injury *it* alleges. Its supporters would still have been unable to recycle plastic products at rates acceptable to Greenpeace, because, according to the complaint, that reflects market forces. Greenpeace, presumably, would still have diverted resources to address the resulting pollution. The complaint contains no facts showing the result would have been different. Walmart's California conduct is therefore not a "but for" cause of Greenpeace's claimed injury.

Judge Alsup recently considered a similar issue in a case that sought to address global warming through a lawsuit against manufacturers in California. *See City of Oakland v. BP PLC*, No. C 17-06011 WHA, 2018 WL 3609055, at *3–4 (N.D. Cal. July 27, 2018); *rev'd on other grounds*, 969 F.3d 895 (9th Cir. Aug. 12, 2020). There, the complaints alleged that the defendants contributed to global warming by producing and selling fossil fuels. *Id*. at *3. Some of that conduct took place in California, of course, and given the size of the state, those contacts were substantial. But the court found those substantial contacts were not a "but for" cause of the plaintiffs' injury:

> From all that appears in the amended complaints, ... this worldwide chain of events does not depend on a particular defendant's contacts with California. Rather, whatever sales or events occurred in California were causally insignificant in the context of the worldwide conduct leading to the international problem of global warming.... [P]laintiffs' nuisance claims depend on a global complex of geophysical cause and effect.... Ocean rise, as far as plaintiffs contend, would have occurred even without regard to each defendant's California contacts....

> [A]lthough plaintiffs list significant fossil-fuel-related activities that defendants have allegedly conducted in California, plaintiffs fail to sufficiently explain how these "slices" of global-warming-inducing conduct causally relate to the worldwide activities alleged in the amended complaints. And, notably, nowhere do plaintiffs contend that sea level rise would not occur absent defendants' California contacts. Instead, plaintiffs argue that defendants' mere contributions to global warming through their California activities can subject them to personal jurisdiction in California. But that is not the causal test for personal jurisdiction applied in this circuit....

*City of Oakland*, 2018 WL 3609055, at *3–4. Ultimately, the plaintiffs had to fall back on an argument that the courts should apply a "less stringent standard" given the nature of their claim, but Judge Alsup rejected that as well. *Id*. at *4 (citing *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)).

1    Greenpeace's claim here is at least one step further removed. Like the plaintiffs in *City of*

2  *Oakland*, Greenpeace alleges that a defendant's conduct in California contributes to a worldwide

3  environmental problem, not because the defendant is directly harming the environment but because

4  it sells a product to third parties who do so. The conduct of those third parties, and a host of other

5  intervening conditions, make the connection between the defendant's conduct and the harm highly

6  attenuated. As Judge Alsup held, that precludes jurisdiction. But in *City of Oakland*, the plaintiffs

7  could at least claim that they were being directly and uniquely harmed in California by the resulting

8  conditions (rising sea levels). Here, Greenpeace's harm—its diversion of resources—resulted from

9  its own decision to take measures to further its mission, some of which it *chose* to take in California.

10  That further increases the gap that the plaintiffs in *City of Oakland* were unable to bridge. Here too,

11  Greenpeace cannot show a sufficient connection between Walmart's forum conduct and its harm to

12  permit specific jurisdiction under the circumstances here.

13  **II.    Greenpeace Has Not Stated a UCL Claim.**

14    Even if personal jurisdiction existed, the complaint fails to state a claim under the UCL. This

15  results largely from the disconnect between Greenpeace and the consumers it alleges Walmart is

16  harming—none of whom have joined it in this action. The failure is especially stark because

17  Greenpeace is bringing a claim grounded in fraud that must be pleaded with particularity. *Kearns*,

18  567 F.3d at 1125–27. A claim is "grounded in fraud" if it alleges a "fraudulent course of conduct,"

19  and if so, it must be pleaded with particularity even if it is styled as a claim for "unfair" or

20  "unlawful" business practices. *Id*. Greenpeace does not claim *it* was misled, but its claims all depend

21  on a showing that *someone* was. *See, e.g.*, Compl. ¶¶ 1–2. Rule 9(b) thus applies to all of its claims.

22    **A.    Greenpeace does not allege it lost money or property.**

23    UCL actions may be brought only by a person who has "lost money or property." *Kwikset*

24  *Corp. v. Superior Court*, 51 Cal. 4th 310, 320–21 (2011); Cal. Bus. & Prof. Code § 17204. But the

25  question here is not (as in *Kwikset*), whether a consumer who alleges reliance on a misleading label

26  has adequately pleaded a loss of money or property. The question is whether *Greenpeace* has.

27  Greenpeace's claim depends on its contention that consumers have been deceived into buying

28  products labeled "recyclable" that are not recycled often enough to merit the term. *See, e.g.*, Compl.

¶¶ 54–56 (alleging "reasonable consumers believe that the Products are recyclable"). But neither Greenpeace nor any other private party can represent "consumers" in general for purposes of a UCL claim. *Kwikset*, 51 Cal. 4th at 320–21. Nor would it matter if those consumers were Greenpeace members (if Greenpeace has "members," which it does not allege). The UCL does not allow "associational standing"; that is, it does not allow an association to sue based on the standing of its members. *Amalgamated Transit Union, Local 1756, AFL–CIO v. Superior Court*, 46 Cal. 4th 993, 1004–05 (2009). Greenpeace relies instead on the theory that it has suffered injury itself, as an entity, because the alleged practices have "frustrated Greenpeace's mission to protect the natural environment and has caused Greenpeace to divert resources in response to that frustration of purpose." Compl. ¶ 5. This does not state a UCL claim.

The UCL requires a "loss of money or property," not a "diversion of resources." More specifically, it requires a "personal, individualized loss of money or property" in some "nontrivial amount." *Kwikset*, 51 Cal. 4th at 1287. Greenpeace's allegations do not establish this. For example, it alleges it began investigating Walmart in 2019 "by diverting resources to visit [its] stores, photograph [its] products, investigate [its] corporate websites, and analyze and report findings." Compl. ¶ 12. But it does not allege that it spent any money to do this. Based on the complaint's allegations, a Greenpeace volunteer could have walked to a Walmart store to take pictures with a phone, looked at Walmart's site on the internet, and passed that information on to a Greenpeace employee to analyze and report. None of that would involve a "loss of money or property" as the UCL requires. It does not allege any transactions or bargains with Walmart (or anyone) or a reduction in value of anything in which Greenpeace had a vested interest. There may be many kinds of economic injury, *see Kwikset*, 51 Cal. 4th at  323–24, but what is alleged here is not one of them.

Greenpeace next alleges that after diverting resources to the investigation, it "diverted additional resources" to tell Walmart about the results. Compl. ¶ 13. But it merely sent Walmart two email messages and "arranged for a meeting" that ultimately never took place. *Id*. Again, none of this alleges a loss of money.[2] Similarly, that Greenpeace "organized a 'day of action'" in which its

---

[2] It also contradicts Greenpeace's allegations, or at least suggestions, that Walmart was aware of the issue but sought to deceive consumers. *See* Compl. ¶¶ 39, 56. If Walmart already knew, then there was no reason for Greenpeace to "divert resources" to tell it.

supporters took pictures of pollution in Los Angeles and St. Petersburg, Florida, does not show that Greenpeace itself (or its supporters) lost money. And Greenpeace may have "spen[t] staff time and organizational resources pressuring [Walmart] to stop using the challenged labels" and to educate consumers about them, but waste of time is not enough to establish a UCL injury. *See Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1287 (S.D. Cal. 2017) (rejecting argument that waste of time due to unwanted text messages could state a UCL injury); *Bontrager v. Showmark Media LLC*, 2014 WL 12600201, at *9 (C.D. Cal. June 20, 2014) (holding "lost time" is not economic injury without showing a "measurable decline in income" as a result). Greenpeace even alleges it made "numerous posts" on Twitter (Compl. ¶ 14), but a tweet costs nothing. In fact, Greenpeace does not allege it spent any money, with one exception: it allegedly "created a petition and paid for it to be circulated on Facebook...." *Id*. But even then it alleges no facts showing this was a "non-trivial" expense.

More broadly, the Court should reject any attempt to base UCL standing on a mere "diversion of resources." To do that would greatly expand the scope of the statute, largely eliminating the effect of the 2004 amendments. The purpose of those amendments was "to eliminate standing for those who have not engaged in any business dealings with would-be defendants...." *Kwikset*, 51 Cal. 4th at 317. Before the amendments, nonprofit organizations (or anyone else) could bring lawsuits "in the public interest" to redress alleged harm to other people. *See, e.g.*, *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553 (1998). After the amendments, they could not. *See Californians for Disability Rights v. Mervyn's LLC*, 39 Cal. 4th 223, 227, 234 (2006) (citing *Stop Youth Addiction* as an example of what had formerly been allowed). Indeed, *Californians for Disability Rights* was one of the first cases to reach the California Supreme Court following the amendments, and the result deprived that organization of the ability to sue a department store for alleged violations that harmed others. *Id*. While the Court specifically addressed only whether the amendments applied to pending cases, the discussion would have been pointless if the organization might have been able to sue under the amended statute. But it was clear that it could not.[3] The

---

[3] The case proceeded only after the addition of a plaintiff who *did* meet the new requirements. *See Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 579 (2008).

California Supreme Court has never held that a nonprofit organization could sue under the UCL based on a "diversion of resources" such as Greenpeace alleges here.

Greenpeace will likely rely on a 2015 Court of Appeal decision, but that decision does not control. *Animal Legal Def. Fund v. LT Napa Partners LLC*, 234 Cal. App. 4th 1270, 1277–84 (2015). In that case, the ALDF brought a UCL action against a restaurant that was serving *fois gras* in alleged violation of a state statute. *Id*. at 1275–76. It paid an investigator to visit the restaurant and sued after he was able to order *fois gras*. *Id*. at 1276. Like Greenpeace here, ALDF sought no monetary relief, only an injunction preventing the conduct. *Id.* The restaurant brought an anti-SLAPP motion to strike the action, arguing that it was serving *fois gras* as a protest against the ban and was therefore engaging in protected conduct. *Id*. at 1277. Assuming without deciding that the conduct was protected, the Court of Appeal held that the motion was properly denied because (in part) ALDF had shown it had a probability of prevailing on the standing issue. *Id*. at 1278–84.

*ALDF* does not apply here because Greenpeace's conclusory allegations fall far short of the evidence presented by ALDF, which apparently offered detailed evidence of efforts it had undertaken to investigate the alleged violation and share its findings with law enforcement, as well as evidence that it was forced to postpone other projects due to the diversion of its limited resources. *Id*. at 1279–84. The complaint here lacks any such details. The case is also distinguishable because it was decided in the context of an anti-SLAPP motion. As the court itself pointed out, it was not concluding that ALDF had established standing, something it did not need to decide. *Id*. at 1282 n.7. Rather, it held "only that plaintiff's showing regarding standing is sufficient to defeat the defendants' special motion to strike." *Id*.

More importantly, the *ALDF* court's analysis is not just weak but inconsistent with the amended UCL and the California Supreme Court's guidance. The *ALDF* court did not mention *Amalgamated Transit* or *Californians for Disability Rights*, and did not apply *Kwikset* at all. *ALDF*, 234 Cal. App. 4th at 1280–81. Rather, the court ultimately relied on a 2005 federal decision that *Kwikset* itself did not even cite, much less apply. *See id*. (citing *S. Cal. Hous. Rights Center v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1068–69 (C.D. Cal. 2005)). The *ALDF* court apparently reasoned that simply because *Kwikset* cited a case (*Hall v. Time Inc.*, 158 Cal. App.

1    4th 847, 854–55 (2008)) that had in turn cited *Housing Rights*, the California Supreme Court must

2    have been endorsing everything in the latter decision. *See id.* (acknowledging *Kwikset* did not

3    address the issue, but claiming it "did express some approval for that proposition through its

4    approving citation to *Hall*.") But precisely because *Kwikset* did not address the issue (nor did *Hall*),

5    that conclusion hardly follows. Nor is it compatible with the amended UCL.

6           The ultimate question for this Court, of course, is what it believes the state's highest court

7    would do if it confronted the issue. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir.

8    2001); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). If state law is unclear, a federal court

9    sitting in diversity must err on the side of the interpretation that limits liability. *Day & Zimmermann,

10   Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (citing *Erie*); *see Clemens v. DaimlerChrysler Corp.*, 534

11   F.3d 1017, 1024 (9th Cir. 2008) (declining to expand state-law liability by eliminating privity

12   restriction for warranty claims). Here, the California Supreme Court has never held "diversion of

13   resources" can constitute "lost money or property," and the *ALDF* decision offers no good reason to

14   think it would. The *Housing Rights* case on which it relied—decided in 2005, just months after Prop

15   64 took effect and before *Amalgamated Transit* or *Californians for Disability Rights* were decided—

16   offers even less support. Under the circumstances, this Court should hold that "diversion of

17   resources" cannot constitute "lost money or property" for purposes of a UCL claim.

18   **B.    The complaint does not provide the "fair notice" Rule 8(a) requires

19         because it does not specify the products or recycling programs at issue.**

20          A complaint must provide, at a minimum, fair notice of the plaintiff's claims and the grounds

21   on which they rest. *Twombly*, 550 U.S. at 555. The notice provided must be adequate to allow the

22   opposing party to defend itself effectively and to prevent discovery to be reasonably limited. *See id.*

23   at 556–60 (explaining importance of Rule 8 in holding down discovery costs). Courts have thus

24   dismissed complaints with broad and wide-ranging allegations for failure to provide fair notice. *See,

25   e.g.*, *Gross v. Vilore Foods Co.*, No. 20-cv-0894-DMS, 2020 WL 6319131 (S.D. Cal. Oct. 28, 2020)

26   (dismissing complaint that failed to allege products were labeled uniformly throughout class period

27   or to specify which labels were misleading); *Ballard v. Bhang Corp.*, No. EDCV 19-2329-JGB,

28   2020 WL 6018939, at *7 (C.D. Cal. Sept. 25, 2020) (dismissing for lack of fair notice where claims

involved at least 15 different products during long class period); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (dismissing for failure to plead dates of alleged misconduct); *Becton, Dickinson and Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2020 WL 1877707, at *4 (N.D. Cal. Apr. 15, 2020) (dismissing complaint that did not identify acts constituting breach, especially given "years-long timeframe" of allegations); *Johnson v. United Continental Holdings, Inc.*, No. C-12-2730-MMC, 2013 WL 6354210, at *8 (N.D. Cal. Dec. 5, 2013) (dismissing claims that did not identify particular position, location, and time frame of job application).

Greenpeace's complaint should be dismissed for this reason as well. Greenpeace contends that it is necessarily misleading to state or imply that a product is "recyclable," apparently regardless of the context on any particular label or the recycling programs available at any particular time. It does not even purport to identify all the products it is targeting, instead merely describing very broad and ill-defined categories and providing two "non-exclusive" lists of some representative brands and products. Compl. ¶ 2 & nn. 4 & 5. The first list includes but is not limited to 20 of Walmart's private-label brands, and the second list includes but is not limited to 11 products sold under just one of those brand names. *Id*. Based on those footnotes, the complaint appears to be targeting hundreds if not thousands of product packages, of all sizes and shapes, and ranging (just within the one brand family identified) from diced mangos to silverware to plastic party cups. *Id*. The complaint includes images of a handful of product labels, but again these are only "examples." *Id*. ¶¶ 41, 46, 48, 50. Further, as discussed above, the complaint fails to make clear what time frame is relevant, an especially significant omission given Greenpeace's allegations that recyclability depends on changing market conditions. In short, the complaint fails to give fair notice of Greenpeace's claims.

### C.   The complaint also fails to satisfy Rule 9(b).

The complaint should also be dismissed because it is grounded in fraud but does not comply with Rule 9(b). *See Kearns*, 567 F.3d at 1125–27. Greenpeace does not allege *it* was deceived, but the whole premise of its complaint is that Walmart deceived *someone*, and that is true for all its UCL causes of action. The heart of Greenpeace's complaint is that consumers are "susceptible to marketing claims" assuring them that plastic products are "recyclable." Compl. ¶ 1. Its "unlawful practice" cause of action alleges that Walmart has violated [three or four] statutory or regulatory

provisions, in each case "by misrepresenting that the Products are recyclable...." *Id*. ¶¶ 66–68. Similarly, its "unfair practice" claim accuses Walmart of "advertising and marketing the Products as recyclable when they are not," violating a policy of "deceiving or misleading consumers about the environmental impact of plastic products," and failing to disclose that the products are not ultimately recycled. *Id*. ¶¶ 75–83. So Rule 9(b) applies to all these claims, which must be pleaded with particularity. *Kearns*, 567 F.3d at 1125–27.

Greenpeace's claims fail because it does not claim it was misled and has included no allegations about the consumers on whose behalf it is acting. Though it includes examples of a few labels it claims are deceiving people (Compl. ¶¶ 41, 46, 48, 50), it never identifies even one person who was deceived, does not allege when any deception happened, and fails to allege any of the other circumstances of the fraud. The complaint therefore fails to comply with Rule 9(b). (This would not have been an issue in *ALDF* because that plaintiff did not allege anyone was being misled, only that the defendant violated a state statute.) For that reason as well, the UCL claims fail. *See, e.g.*, *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 646 (N.D. Cal. 2019) (holding that Clorox could not bring unfair-competition claim based on alleged fraud because it did not allege it relied on the false advertising to its detriment).

Greenpeace also does not contend there is anything inherently false about the labels, but that using the triangular recycling symbol is a partial or implied representation that is misleading because of facts Walmart allegedly omits. Under California law, fraud claims based on nondisclosure require allegations showing that the defendant had a duty to disclose the omitted information. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (defining four circumstances in which such a duty may exist); *see Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (citing *LiMandri*). The complaint does not even allege that Walmart has a duty to disclose information about recycling programs; indeed, the only time the word "duty" appears is to point out that "recycling facilities (which are often operated by private companies) have no duty to provide such information...." Compl. ¶ 45. If *recycling facilities* have no duty to provide information to consumers about what is "recyclable," it is not clear why Walmart would, and the complaint does not explain.

1    In fact, Greenpeace concedes (and the labels show) that the challenged products bear
2    disclaimers warning consumers they should "check locally" to determine whether a product can in
3    fact be recycled in their area because products are "not recycled in all communities." *Id*. And beyond
4    that, the symbol and disclaimers come with a link that directs consumers to a website
5    (*how2recycle.info*) explaining what "check locally" means and providing easy access to information
6    about what is in fact recycled in a consumer's area. In the sort of "pure omission" claim Greenpeace
7    is alleging, a duty to disclose can exist only if the defendant "had exclusive [or at least superior]
8    knowledge of material facts not known to the plaintiff." *LiMandri* at 336; *see Hodsdon* at 862
9    (describing this as a "pure omission" claim). Here, recyclability information is just as available to
10   consumers and Greenpeace as it is to Walmart. Greenpeace does not allege otherwise. For that
11   matter, under *Hodsdon* a pure-omission claim requires either that the omitted fact relate to "the
12   central functionality of the product" or that an "unreasonable safety hazard" exists. 891 F.3d at 863–
13   64 (holding defendant had no duty to disclose the possible existence of slave or child labor in the
14   product's supply chain). Greenpeace does not allege either circumstance here.

15   Finally, to the extent that Greenpeace alleges Walmart had a duty to disclose additional
16   information to consumers because of the changes in market conditions that affected "recyclability,"
17   it has alleged no facts that would show Walmart knew about those changes, or if so, when. *See*
18   Compl. ¶ 79 (alleging that Walmart knew but failed to disclose "that the Products are not ultimately
19   recycled," but failing to allege when it knew this). A plaintiff asserting an omission claim based on
20   the sale of a product must allege that the defendant knew the allegedly omitted information at the
21   time of sale. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141–42 (9th Cir. 2012).
22   Greenpeace does not allege when any particular underlying transaction took place, but even if it had,
23   it has not alleged facts showing Walmart knew "recyclability" conditions had changed at any
24   particular time. For that reason as well, Greenpeace has not pleaded a claim with particularity.

### D.   The same arguments defeat the causes of action labeled as unlawful- or unfair-practice claims.

27   Greenpeace also asserts unlawful- and unfair-practice causes of action, alleging in both that
28   Walmart violated the letter or "policy" of several other statutes (the Federal Trade Commission Act

and California's False Advertising Law, Environmental Marketing Claims Act, and Public Resource Code). *See* Compl. ¶¶ 64–72, 76–78. But these causes of action fail for the same reasons above, including the failure to plead with particularity. Regardless of the label attached to these claims, Rule 9(b) still applies because they are "grounded in fraud." *Kearns*, 567 F.3d at 1125–26. Nothing about any of the cited statutes affects the result here.

First, Greenpeace alleges Walmart has violated Section 5 of the Federal Trade Commission Act. Compl. ¶ 66. The FTC Act does not create a private right of action, and it is not clear whether a private plaintiff can use the UCL to enforce that act. *Compare Rubenstein v. Neiman Marcus Group LLC*, 667 F. App'x 564, 567 (9th Cir. 2017) (holding alleged violation of FTC pricing guides was actionable under the UCL) *with O'Donnell v. Bank of Am. Nat'l Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) (holding it was not). But it makes no difference here because Greenpeace alleges only that Walmart has violated Section 5 by "misrepresenting that the products are recyclable," which is the same claim it asserts under the deceptive-practice prong. Adding Section 5 to the mix changes nothing. *See, e.g.*, *Schertzer v. Samsonite Co. Stores, LLC*, 2020 WL 4281990, at *8 (S.D. Cal. Feb. 25, 2020) (noting split of authority on enforceability but declining to reach question because plaintiff had not pleaded a deceptive-practice claim in any event).

Second, Greenpeace alleges that Walmart has violated California's False Advertising Law. Compl. ¶ 67. This also fails to advance the ball, however, because the FAL is similar to but significantly narrower than a UCL deceptive-practice claim: for example, the FAL applies only to "advertising" in the sale of property or services. Cal. Bus. & Prof. Code § 17500. As with Section 5 of the FTC Act, therefore, Section 17500 adds nothing. If Greenpeace has not alleged a violation of the UCL, it has also failed to allege a violation of the FAL.

Third, Greenpeace alleges that Walmart violated the California Public Resources Code (Compl. ¶ 69), but cites no particular section of that code in its cause of action. Elsewhere in the complaint, it cites Sections 40180, 42257, and 42355.5, but does not explain how Walmart has violated any of these. *Id.* ¶¶ 22, 24, 51. The first defines "recycling," apparently to distinguish it from "transformation"; the second is a now-repealed section that governed in-store recycling programs, and the third declares that it is California policy that environmental marketing claims not

1    be misleading. Cal. Pub. Res. Code §§ 40180, 42257, 42355.5. The chapter in which 42355.5 is

2    located focuses on claims regarding biodegradablity, not "recyclability." The complaint does not

3    make clear how any of these statutes might apply here. Greenpeace also mentions section 18015

4    (Compl. ¶ 33), which requires that certain products include the appropriate Resin Identification Code

5    (RIC #1–7). The requirement is limited, however, to plastic containers of eight ounces or more, and

6    plastic bottles of 16 ounces or more. Cal. Pub. Res. Code §§ 18010, 18011, 18015. Greenpeace does

7    not allege which if any Walmart products within those parameters fail to include the required RIC,

8    and the requirement would not apply to the one example it provides in the complaint. *See* Compl. ¶¶

9    46-47 (referring to a can of cooking oil that has a plastic cap but is made of metal). If Greenpeace is

10    alleging that Walmart violated the Public Resources Code, it has not alleged how.

11         Finally, Greenpeace also cites Business & Professions Code § 17580.5 as a basis for its

12    unlawful-practice claim. Under that statute, it is unlawful to make misleading "environmental

13    marketing claims," defined as those described in the FTC's "Green Guides." Cal. Bus. & Prof. Code

14    § 17580.5(a). By the same token, the act provides a safe harbor for claims that conform to the Green

15    Guides. Cal. Bus. & Prof. Code § 17580.5(b). But again, it is not clear what, if anything, this adds to

16    Greenpeace's allegations that Walmart has done something deceptive, which fail as explained above.

17         Greenpeace relies primarily on a Green Guide provision stating that "[a] product or package

18    shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from

19    the waste stream through an established recycling program for reuse or use in manufacturing or

20    assembling another item." Compl. ¶¶ 68, 77 (both citing 16 C.F.R. § 260.12). But Greenpeace does

21    not allege that any of the challenged products *cannot* be "collected, separated, or otherwise

22    recovered ... for reuse or use in manufacturing or assembling another item. It alleges only that, at

23    least after the recent changes in the market, this does not happen often enough. *See, e.g., id*. ¶¶ 13

24    (referring to March 2020 email referring to "*the low rate* of recyclability for products that

25    Defendants labeled as recyclable"), 16 (alleging that such products are "*unlikely* to be recycled"), 39

26    (stating that "*the majority of* plastic labeled as recyclable" is not recycled) (emphases added). But

27    under the Green Guides, a marketer can make unqualified "recyclable" claims so long as "*recycling*

28    *facilities are available to* a substantial majority of consumers or communities where the item is

sold…." 16 C.F.R. § 260.12(b)(1) (emphasis added). A "substantial majority" means at least 60 percent. *Id*. Even if low profitability could make a facility "unavailable" in this sense, Greenpeace does not allege facts showing this standard is not being met in California or any other particular community. It has not alleged a violation of the Green Guides for that reason among others.

Greenpeace is, essentially, asking the Court to rewrite the Green Guides. It would require retailers not only to ensure certain products *can be* recycled, but also that they are *actually being* recycled by independent facilities at rates acceptable to Greenpeace. And if, as Greenpeace claims, recycling rates depend on ever-changing market conditions, this new duty would impose a heavy and continuing burden on retailers. Not only is this interpretation of the Green Guides wrong, it has drastic implications for the consumer-goods industry as a whole, because similar labeling is used by other retailers and brands across the country. *See* How2Recycle, *https://how2recycle.info* ("The How2Recycle label was created to provide consistent and transparent on-package recycling information to consumers in North America."). While this litigation may fit within Greenpeace's stated goal to discourage and if possible eliminate the use of plastic entirely, it goes well beyond what federal and California law require. And ironically, since the recyclability labels are a form of consumer education, removing the label could lead to *more* plastic ending up in landfills because consumers will no longer be encouraged to place recyclable plastic products and packages in the appropriate collection bins. Even Greenpeace concedes that at least some of this plastic is being recycled, but if consumers stop depositing it into collection bins, none of it will be.

Ultimately, Greenpeace's "unlawful" or "unfair" UCL claims add nothing to its allegations that Walmart is deceiving consumers by failing to disclose information about recycling programs. As shown above, all of Greenpeace's claims fail.

## III.   Greenpeace Has Not Alleged a Basis for Injunctive Relief.

Finally, even if Greenpeace had otherwise stated a claim, it has not alleged facts showing that it would have a right to injunctive relief, the only sort of relief it seeks. It could not and does not seek restitution, the only form of monetary relief authorized by the UCL. But that does not mean it is "absolved from also demonstrating that [it] is entitled to seek an injunction" under the standards that

apply to such relief in any case. *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 925 (N.D. Cal. 2012). It has not done so here.

Because a UCL action is equitable, remedies are limited to restitution and injunctive relief. "Traditional equitable principles" apply when seeking such relief. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020) (holding this is true where plaintiff seeks restitution); *see, e.g.*, *Huynh v. Quora, Inc.*, No. 5:18-CV-07597-BLF, 2020 WL 7495097, at *19 (N.D. Cal. Dec. 21, 2020) (same for injunctive relief, collecting cases). Prospective injunctive relief requires a plaintiff to show, among other things, that (1) it will suffer irreparable injury if the injunction is not granted, that legal remedies will be inadequate, (3) that the balance of hardships weighs in plaintiff's favor, and (4) that the public interest warrants the injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (plaintiff must show a "real or immediate threat that the plaintiff will be wronged again" in the future).

Greenpeace refers to injunctive relief three times in the complaint (apart from the prayer), each time alleging only that "injunctive relief is specifically authorized under Business & Professions Code § 17203." Compl. ¶¶ 63, 72, 82. It is authorized, but a plaintiff must still allege facts showing entitlement to such relief. Greenpeace also offers the conclusory allegation that it "has no adequate remedy at law for the injuries currently being suffered as an award of monetary damages would not prohibit" Walmart's allegedly deceptive acts. *Id*. ¶ 4, 70. This does not even specify *whose* "injuries currently being suffered" require injunctive relief to prevent.

To the extent that it refers to the consumers who are allegedly being deceived, as discussed above the complaint contains no facts at all pertaining to any of those injuries, if there have been any. It fails to allege grounds for injunctive relief to that extent. *See, e.g.*, *Schertzer*, 2020 WL 4281990, at *10–11 (holding that absent allegations showing a sufficient likelihood of future injury, a previously deceived consumer is not entitled to injunctive relief); *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 927 (N.D. Cal. 2012) (holding injunctive relief not warranted because even if allegations showed defendant would harm others in the future, they did not show it would harm "*these* Plaintiffs"; emphasis in original).

1   The injury asserted here as a basis for UCL standing is Greenpeace's alleged diversion of

2   resources. And in that regard, Greenpeace alleges only that without injunctive relief, "plastic

3   pollution and the resulting harms to [the environment] will continue to negatively impact

4   Greenpeace's efforts to protect these critical resources," and that relief is "necessary to further

5   Greenpeace's mission of ensuring consumers are not misled...." *Id.* ¶ 16. But "negative impact" does

6   not even purport to allege an *irreparable* injury; nor has Greenpeace alleged facts showing relief is

7   "necessary," much less that the balance of equities favors an injunction. Greenpeace does not need

8   an injunction to further its mission of ensuring consumers are not misled, because it can address that

9   by simply working to educate them directly, as it alleges it is already doing. *See id.* ¶¶ 6–9, 11, 14,

10  55. (As it happens, this is something Walmart is also doing, in part through the *how2recycle.info* link

11  on product labels, as well as numerous other internet and print resources.)

12   As far as balancing the equities, what injunctive relief here might add to Greenpeace's

13  mission would be far outweighed by the enormous cost to Walmart of changing the labels of the

14  many products that Greenpeace has targeted, as well as conducting a "corrective advertising and

15  information campaign" as the prayer for relief suggests. And, of course, no injunction by this Court

16  could affect the market conditions that Greenpeace itself alleges are responsible for low recycling

17  rates. In short, Greenpeace has not alleged facts showing it is entitled to injunctive relief, the only

18  type of relief it seeks here.

19   <u>**CONCLUSION**</u>

20   Greenpeace has not alleged facts showing that Walmart is subject to specific personal

21  jurisdiction in California for purposes of its claims here. Even if it had, it has not "lost money or

22  property" as the UCL requires, and in any event it has failed to plead its UCL claims in compliance

23  with Rules 8(a) or 9(b). Finally, it has not shown injunctive relief is warranted. The Court should

24  dismiss the complaint.

25

26

27

28

1

Dated:  March 8, 2021.

Respectfully submitted,

2

SHOOK, HARDY & BACON L.L.P.

3

4

By:  */s/ Eva. M. Weiler*

5

Patrick Oot (*pro hac vice*)
Eva M. Weiler

6

M. Kevin Underhill
Steve Vieux

7

Attorneys for Defendant Walmart Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28