Patrick L. Oot (*pro hac vice* granted)
SHOOK, HARDY & BACON L.L.P.
1800 K Street, N.W., Suite 1000
Washington, DC 20006
Tel: 202.783.8400 | Fax: 202.783.4211
oot@shb.com

Eva M. Weiler (SBN: 233942)
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614-2546
Tel: 949.475.1600 | Fax: 949.475.0016
eweiler@shb.com

M. Kevin Underhill (SBN: 208211)
Steve Vieux (SBN: 315133)
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, California 94105
Tel: 415.544.1900 | Fax: 415.391.0281
kunderhill@shb.com
svieux@shb.com

Attorneys for Defendant Walmart Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND

| | |
|---|---|
| GREENPEACE, INC.,<br><br>        Plaintiff,<br><br>    vs.<br><br>WALMART INC.,<br><br>        Defendant. | Case No.: 3:21-cv-00754 MMC<br><br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7<br><br>**WALMART INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:   June 25, 2021<br>Time:  9:00 a.m.<br><br>Complaint filed Dec. 16, 2020<br>First Am. Compl. filed Mar. 29, 2021 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION ............................................................................................................ 1

INTRODUCTION ................................................................................................................. 2

FACTS ALLEGED ............................................................................................................... 3

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.    Greenpeace does not allege a loss of money or property as a result of the alleged
      misconduct, and so lacks standing to bring a UCL claim. ................................................. 7

      A.    California law does not support "organizational standing" for purposes of a
            UCL deceptive-practice claim. ................................................................................ 7

      B.    Greenpeace has not adequately alleged organizational standing. ........................ 10

II.   The complaint fails to satisfy Rule 8(a) and Rule 9(b). ...................................................... 11

      A.    The complaint does not provide the "fair notice" Rule 8(a) requires. .................. 11

      B.    The complaint also fails to satisfy Rule 9(b). ........................................................ 13

      C.    The same arguments defeat the causes of action labeled as unlawful- or unfair-
            practice claims. ...................................................................................................... 15

III.  Greenpeace has not alleged a basis for injunctive relief. ................................................... 18

CONCLUSION ..................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                                                     **Page(s)**

*Am. Diabetes Assoc. v. United States Dept. of the Army*,
  938 F.3d 1147 (9th Cir. 2019) ...................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................6

*Ballard v. Bhang Corp.*,
  No. EDCV 19-2329-JGB, 2020 WL 6018939 (C.D. Cal. Sept. 25, 2020)...................12

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225, 1228-31 (9th Cir. 2019) .....................................................................12

*Becton, Dickinson and Co. v. Cytek Biosciences Inc.*,
  No. 18-cv-00933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020)......................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................6, 11, 13

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) .......................................................................12

*Cafasso, U.S. ex rel v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) .....................................................................................6

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)......................................................................................................18

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) .....................................................................................9

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
  398 F. Supp. 3d 623 (N.D. Cal. 2019) .......................................................................14

*Ctr. for Biological Diversity v. Bernhardt*,
  No. 19-cv-05206-JST, 2020 WL 4188091 (N.D. Cal. May 18, 2020) .........................11

*Day & Zimmermann, Inc. v. Challoner*,
  423 U.S. 3 (1975)........................................................................................................9

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ........................................................................................................18

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Rev.*,
    959 F.2d 742 (9th Cir. 1992) ..........................................................................................10

*Freeman v. ABC Legal Servs., Inc.*,
    877 F. Supp. 2d 919 (N.D. Cal. 2012) .....................................................................18, 19

*Friends of the Earth v. Sanderson Farms, Inc.*,
    992 F.3d 939 (9th Cir. 2021) ....................................................................................10, 11

*Gross v. Vilore Foods Co.*,
    No. 20-cv-0894-DMS, 2020 WL 6319131 (S.D. Cal. Oct. 28, 2020) .............................14

*Hairston v. South Beach Bev. Co., Inc.*,
    No. CV 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ...........................12

*Hall v. SeaWorld Ent., Inc.*,
    747 F. App'x 449 (9th Cir. 2018) ..................................................................................15

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ....................................................................................14, 15

*Huynh v. Quora, Inc.*,
    No. 5:18-CV-07597-BLF, 2020 WL 7495097 (N.D. Cal. Dec. 21, 2020) .....................18

*Johnson v. United Cont'l Holdings, Inc.*,
    No. C-12-2730-MMC, 2013 WL 6354210 (N.D. Cal. Dec. 5, 2013)..............................12

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...........................................................................6, 13, 16

*La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ......................................................................................10

*Nat'l Council of La Raza v. Cegavske*,
    800 F.3d 1032 (9th Cir. 2015) ......................................................................................10

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ..........................................................................................6

*O'Donnell v. Bank of Am. Nat'l Ass'n,*

    504 F. App'x 566 (9th Cir. 2013) ...................................................................................16

*Rubenstein v. Neiman Marcus Group LLC,*

    667 F. App'x 564 (9th Cir. 2017) ...................................................................................16

*S. Cal. Hous. Rts. Ctr. v. Los Feliz Towers Homeowners Ass'n,*

    426 F. Supp. 2d 1061 (C.D. Cal. 2005) ............................................................................9

*Schertzer v. Samsonite Co. Stores, LLC,*

    No. 19-CV-639-JLS, 2020 WL 4281990 (S.D. Cal. Feb. 25, 2020) ......................16, 19

*Sonner v. Premier Nutrition Corp.,*

    971 F.3d 834 (9th Cir. 2020) ..........................................................................................18

*Walker v. Nestlé USA, Inc.,*

    No. 3:19-cv-723-L, 2021 WL 1195983 (S.D. Cal. Mar. 30, 2021) .................................14

*Wilson v. Hewlett-Packard Co.,*

    668 F.3d 1136 (9th Cir. 2012) ........................................................................................15

**State Cases**

*Amalgamated Transit Union, Loc. 1756, AFL–CIO v. Superior Ct.,*

    46 Cal. 4th 993 (2009) ...........................................................................................7, 8, 9

*Animal Legal Def. Fund v. LT Napa Partners LLC,*

    234 Cal. App. 4th 1270 (2015) ....................................................................................8, 9

*Californians for Disability Rts. v. Mervyn's LLC,*

    39 Cal. 4th 223 (2006) ..................................................................................................7, 8

*Hall v. Time Inc.,*

    158 Cal. App. 4th 847 (2008) ...........................................................................................9

*Kwikset Corp. v. Superior Ct.,*

    51 Cal. 4th 310 (2011) ................................................................................................7, 9

*LiMandri v. Judkins,*

    52 Cal. App. 4th 326 (1997) ....................................................................................14, 15

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,

    17 Cal. 4th 553 (1998) ...................................................................................................7

**Federal Statutes, Rules, and Regulations**

15 U.S.C. § 45 (FTC Act) ...............................................................................................16

Fed. R. Civ. Pro. 8(a) ..............................................................................1, 2, 11, 12, 13

Fed. R. Civ. Pro. 9(b) ..................................................................................1–3, 11, 13, 16

Fed. R. Civ. Pro. 12(b)(6) ...............................................................................................1

16 C.F.R. § 260.12(a) ................................................................................................5, 17

16 C.F.R. § 260.12(b)(1) ...........................................................................................5, 17

**State Statutes**

Cal. Bus. & Prof. Code § 17200 (UCL) ................................................................ passim

Cal. Bus. & Prof. Code § 17500 (FAL) ...................................................................15, 16

Cal. Bus. & Prof. Code § 17580.5 ......................................................................5, 16, 17

Cal. Pub. Res. Code § 18015 ..........................................................................................16

Cal. Pub. Res. Code § 40180 ..........................................................................................16

Cal. Pub. Res. Code § 42257 ..........................................................................................16

Cal. Pub. Res. Code § 42355.5 .......................................................................................16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 25, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Maxine M. Chesney in the United States Courthouse, Courtroom 7, 19th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Walmart Inc. will and hereby does move for an order dismissing Plaintiff's complaint.

Walmart moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) Greenpeace's UCL claim fails because it has not lost money or property as a result of Walmart's alleged conduct; (2) the complaint does not satisfy Federal Rules of Civil Procedure 8(a) or 9(b); and (3) Greenpeace has not alleged facts showing it would have a right to injunctive relief, the only form of relief it seeks.

1

## **INTRODUCTION**

2    Greenpeace is right to be concerned about plastic pollution but wrong to think this lawsuit is
3    an appropriate way to address that problem. It alleges that Walmart deceives consumers into buying
4    products erroneously labeled as "recyclable." But none of the allegedly deceived consumers are
5    parties here, and the products are not erroneously labeled. Greenpeace does not contend these
6    products cannot be recycled—it contends the products are not recycled *often enough* to merit the
7    term "recyclable." It presents this as an interpretation of the applicable federal regulations, but is
8    actually urging this Court to rewrite them. Even if Greenpeace's novel theory were correct, it would
9    not have a cause of action against Walmart, partly because (as it concedes) the *reasons* more plastic
10   products are not recycled involve market conditions and third-party actions for which Walmart is not
11   responsible. For these and other reasons, the Court should dismiss the complaint.

12   First, the UCL requires a plaintiff to allege it lost money or property as a result of the
13   allegedly wrongful conduct. Greenpeace does not allege it "lost" anything, only that it "diverted
14   resources" to investigate before pursuing this lawsuit, which it says it is doing on behalf of the
15   general public. But lawsuits "on behalf of the general public" are what the 2004 amendments to the
16   UCL were meant to eliminate. Greenpeace purports to assert "organizational standing," but no
17   California court has ever held that "diverting resources" to prevent others from being misled can
18   state a UCL claim. A federal court should not be the first to do so. Even if such a claim could be
19   brought under the UCL, Greenpeace has not alleged the necessary facts. Its allegations describe not a
20   diversion of resources in response to Walmart's conduct but "business as usual" for Greenpeace.
21   Even if the federal standard applied, that would not be enough.

22   Second, Greenpeace's complaint does not satisfy Federal Rule of Civil Procedure 8(a) or
23   9(b). The complaint does not give fair notice as Rule 8(a) requires because it does not specify the
24   products at issue, instead questioning entire categories. Nor does it specify the times or places where
25   these products allegedly could not be recycled. It does not and could not allege that recycling
26   programs are the same everywhere. Partly for those same reasons, the complaint does not satisfy
27   Rule 9(b). While Greenpeace does not allege *it* was deceived (in fact it concedes otherwise) all its
28   causes of action depend on showing that *consumers* were deceived. Its claims are therefore still

grounded in fraud, which means Rule 9(b) applies. But because none of the consumers are parties, it is no surprise that the complaint offers no details about when or where anyone was deceived, what label deceived them, or when Walmart knew facts it allegedly failed to disclose to such a person.

Finally, Greenpeace has not alleged facts showing it would have a right to injunctive relief, the only kind of relief it is seeking. For all these reasons, the Court should dismiss the complaint.

## **FACTS ALLEGED**

Greenpeace, Inc., a nonprofit organization based in Washington, D.C., focuses on environmental issues. FAC ¶¶ 5–7. It uses "peaceful protest and creative communication"—and sometimes litigation—"to expose global environmental problems and promote solutions...." *Id*. ¶ 6. Here, it seeks to address the worldwide problem of plastic pollution by filing a lawsuit in California against just one of the many retailers that sell plastic products.

Walmart Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas. FAC ¶ 26. Greenpeace complains that Walmart misleads consumers by selling "a variety of single-use plastic products and packaging that are labeled as recyclable...." *Id*. ¶ 1. None of the consumers Greenpeace alleges were misled are parties to the case, nor does Greenpeace allege any details about how or when any particular consumer might have relied on a misrepresentation or omission. Further, Greenpeace does not contend the "recyclable" representation is literally false. It contends the representation is misleading because third parties do not recycle the products often enough. *Id*. Specifically, Greenpeace alleges the products are "not recyclable" because (1) some consumers "do not have access to recycling programs" that accept them; (2) they cannot be separated and sorted correctly by recycling facilities; and (3) there are no "end markets" for reusing or converting the products. *Id*. ¶ 2.

Greenpeace does not allege Walmart is responsible for any of those underlying issues. To the contrary, it alleges that low recycling rates are due partly to increased production of new plastics by "major oil and natural gas companies," causing prices to fall to the point that recycled plastics are no longer competitive. FAC ¶ 46. As a result, recycling facilities no longer have an incentive to recycle plastic because there are now "almost no buyers" for the recycled products. *Id*. Greenpeace also attributes the problem to China's decision to sharply limit its import of recyclable materials,

including plastics. *Id.* ¶ 48. This policy was enacted in January 2018, and over the next year, China's plastic imports allegedly dropped by 99 percent. *Id.* ¶ 49 & n.40 (citing article stating policy was enacted in January 2018). For this reason, too, "[r]ecycling companies can no longer sell many types of used plastic at prices that cover their transportation and processing costs, providing them with no incentive to do so." *Id.* ¶ 49. Again, the complaint does not allege Walmart has any responsibility for those developments. Rather, it asserts Walmart has continued or increased its use of the term "recyclable" on labels despite the "widespread acknowledgement that end markets for plastic waste have been shrinking...." *Id.* ¶ 50. But it alleges no facts to support that assertion. In particular, it alleges no facts showing Walmart even knew this was happening. After all, if market forces dictate recycling rates as Greenpeace alleges, then those rates will change constantly. The complaint alleges no facts regarding what if anything Walmart knew about this situation.

Though its claims are grounded in fraud, Greenpeace does not specify which products' labels are allegedly deceptive. Rather than target specific products, it targets *all* products (A) "made from plastics #3–7 or unidentified plastic," (B) sold under Walmart's private label brands, and (C) labeled as "recyclable." FAC ¶ 2. It provides two "non-exclusive" lists of some of the enormous number of brands and products this definition would include. *See id.* nn. 3 & 4. The phrase "plastics #3–7" refers to the practice of describing types of plastic by number. *See id.* ¶ 45. Greenpeace is not targeting plastics #1 and 2, which it describes as "the most recyclable," though according to Greenpeace those plastics are recycled at rates as low as 13 percent. *Id.* Greenpeace targets only plastics #3–7, alleging these are "rarely, if ever recycled." *Id.*

The complaint includes partial images of the labels of a few products. FAC ¶¶ 52, 57, 59, 61. But it does not allege when these images were taken, nor do the images show the entire label for any of the products. Three of the labels bear a disclaimer telling consumers they should "Check Locally" because the products are "[n]ot recycled in all communities." *Id.* ¶¶ 52, 57, 59. The images also show that all the labels direct consumers to other sources of information about recycling, including Walmart's own website and www.how2recycle.info. Both sites contain information about recyclability, what the label claims are intended to convey, some of the limitations on recycling programs, and whether particular materials can be recycled in particular communities and if so,

where. *See, e.g.*, https://how2recycle.info/check-locally (last visited Apr. 14, 2021) (providing links that allow consumers to search for local recycling information by zip code and material type). Greenpeace does not allege which if any particular communities' recycling programs are deficient.

Greenpeace bases many of its allegations on the FTC's "Green Guides." *See* FAC ¶¶ 14, 33, 34, 37–40, 55, 56, 60, 62, 63, 80, 89, 90. While the Green Guides are not enforceable federal regulations, California state law provides a safe harbor for environmental claims that follow the Guides. Cal. Bus. & Prof. Code § 17580.5(b). Greenpeace's fundamental claim, that the term "recyclable" as applied here is misleading, involves a radical reinterpretation of the Guides. According to the Guides, a product or package is recyclable, and can be labeled as such, if it "***can be*** collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a) (emphasis added). Greenpeace does not allege the products and packaging it targets *cannot* be collected, separated, or otherwise recovered by recycling facilities. It alleges they are not *being* recycled at acceptable rates by recycling facilities (which are independent of Walmart), or that it may not be profitable for those facilities to accept them, but does not allege they cannot be recycled.

Beyond that, the Green Guides standard is based on *access* to recycling facilities, not a percentage of what those facilities recycle. The Guides allow unqualified recyclable claims if 60% of targeted customers have access to facilities that can recycle the item at issue. 16 C.F.R. § 260.12(b)(1). They instruct marketers to use a qualified recyclable claim if less than 60% of targeted customers have access to such facilities. *Id.* § 260.12(b)(2). Greenpeace does not allege *all* California consumers lack access to appropriate recycling facilities that can accept the products for recycling and are capable of recycling them, nor does it identify any particular community that lacks such access. Instead, its argument hinges on reports that *some* recycling facilities are failing to recycle plastic products and packaging they accept, due to allegedly decreasing demand for certain types of recycled plastic. Even assuming that to be true, Greenpeace does not plead facts showing Walmart is responsible for this state of affairs.

Greenpeace does not allege *it* was misled by the labels. To the contrary, it alleges only that it was harmed because it decided to focus on Walmart's "recyclable" claims as part of its mission to

protect the environment, and to do so it "spent" or "diverted" staff time, money, or other resources that it might have devoted to something else instead. FAC ¶¶ 5, 20, 24, 25, 66. But as Greenpeace's allegations show, its campaign against Walmart is the sort of thing it does all the time, both in general and related to plastics in particular. *See, e.g.*, *id.* ¶¶ 6–10 (describing its activities generally and related to plastics), 11 (noting that its plastic-pollution campaigns have been conducted inside and outside California and have targeted many "major retailers and manufacturers" and "consumer product companies" besides Walmart). Almost all of the new allegations in the First Amended Complaint relate to this contention that Greenpeace was "harmed" by Walmart as a result of Greenpeace's decision to direct one of these campaigns at Walmart. Greenpeace does not allege which other campaigns or programs might have been deprived of resources as a result of its decision to target Walmart, or what consequences, if any, they suffered.

Greenpeace seeks only injunctive relief, including an order enjoining any allegedly wrongful practices and requiring Walmart to conduct a "corrective advertising and information campaign," though it does not specify what it wants the Court to force Walmart to say. *See* FAC p. 39 (prayer for relief). Nor does the FAC make clear how such orders would further Greenpeace's mission of protecting the environment, since changing a label or issuing a "corrective" statement would not make any product more or less recyclable.

## LEGAL STANDARD

A complaint must provide "fair notice" of the plaintiff's claims and the grounds on which they rest, as well as enough facts to set forth a plausible claim for relief. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Labels, conclusions, blanket assertions, and recitations of legal elements are not "facts" and need not be accepted as true. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Further, any claims grounded in fraud (whether or not labeled as fraud claims) must also be pleaded with particularity, including claims based on concealment or omission theories. Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009). Thus, claims grounded in fraud must comply with Rules 8(a) and 9(b). *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (citing *Cafasso, U.S. ex rel v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

# ARGUMENT

**I.**  **Greenpeace does not allege a loss of money or property as a result of the alleged misconduct, and so lacks standing to bring a UCL claim.**

UCL actions may be brought only by a person who has lost money or property as a result of the defendant's alleged conduct. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320–21 (2011); Cal. Bus. & Prof. Code § 17204. The question here is not (as in *Kwikset*) whether a consumer who alleges reliance on a misleading label has adequately pleaded a loss of money or property as a result. The question is whether *Greenpeace* has done so, and the answer is no.

**A.**  **California law does not support "organizational standing" for purposes of a UCL deceptive-practice claim.**

Greenpeace's claim is that consumers are being deceived into buying products labeled "recyclable." But neither Greenpeace nor any other private party can represent "consumers" in general for purposes of a UCL claim. *Kwikset*, 51 Cal. 4th at 320–21; *see* Cal. Bus. & Prof. Code § 17203 (limiting ability to seek "relief on behalf of others"). In the past, anyone could freely bring UCL enforcement actions on behalf of "consumers" or the "general public," but this was so often abused that the law was amended in 2004 to eliminate it. *See Kwikset*, 51 Cal. 4th at 317 (noting amendments were meant "to eliminate standing for those who have not engaged in any business dealings with would-be defendants...."); *Amalgamated Transit Union, Loc. 1756, AFL–CIO v. Superior Ct.*, 46 Cal. 4th 993, 1000 (2009) (noting amendments were motivated by abuse of UCL's broad standing provision). Before 2004, nonprofit groups (or anyone else) could freely bring UCL actions "in the public interest" to redress alleged harm to other people. *See, e.g.*, *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553 (1998). After 2004, they could not. *Californians for Disability Rts. v. Mervyn's LLC*, 39 Cal. 4th 223, 227, 234 (2006).

Further, the California Supreme Court has held that the federal doctrine of "associational standing," which allows an association to pursue an action based on the standing of its members, conflicts with the amended UCL. *Amalgamated Transit*, 46 Cal. 4th at 1002–04. Because the amended law requires the *plaintiff* to have lost money or property as a result of the defendant's conduct, a group purporting to represent its members cannot do so under the UCL even if the

members assign their claims to it. *Id.* at 1002. That would essentially confer standing on the noninjured assignee "in direct violation of the express statutory requirement ... that a private [UCL action] be brought *exclusively*" by the injured party. *Id.* (emphasis in original).

Greenpeace therefore relies instead on the theory that it has suffered injury itself, as an organization, because the alleged practices have "frustrated Greenpeace's mission to protect the natural environment" and caused it to divert resources "in response to that frustration of purpose." FAC ¶ 5; *see id.* ¶ 20 (alleging Greenpeace "diverted money, staff time, and other organizational resources" that it would have otherwise used for something else); *see also id.* ¶¶ 24, 25, 66 (using similar language). This theory of "organizational standing," however, is another federal doctrine that also conflicts with the amended UCL, at least under the circumstances alleged here. Despite Greenpeace's new allegations of "injury," its claims are still derivative of the alleged economic harm to someone else, namely consumers. *See, e.g.*, FAC ¶ 24 (alleging that Greenpeace diverted resources to California only because the large number of "false recycling representations" here was confusing California consumers).[1] If an association cannot use the UCL to redress harm to its own members (*Amalgamated Transit*, 46 Cal. 4th at 1002–04), it is hard to see why an organization like Greenpeace should be able to use it to redress harm to "consumers" at large. That too conflicts with the statute's requirement that private UCL actions be brought "exclusively" by an injured party. *Cf. Californians for Disability Rights*, 39 Cal. 4th at 234 (holding that Prop 64 amendments applied retroactively even though they could "be viewed as defeating CDR's civic or philosophical interest in enforcing the UCL as an uninjured, volunteer plaintiff."). The California Supreme Court has never held that "organizational standing" can be a basis for a UCL action.

The Court of Appeal has suggested it could be, but that decision is both questionable and distinguishable. *Animal Legal Def. Fund v. LT Napa Partners LLC*, 234 Cal. App. 4th 1270, 1277–84 (2015). It involved unlawful-practice claims against a restaurant that was serving *fois gras* in alleged violation of a state statute. *Id.* at 1275–76. ALDF paid an investigator to visit the restaurant

---

[1] Notably, the complaint repeatedly lapses into the passive voice when referring to the injuries. *See id.* ¶¶ 4, 68, 72, 82, 93 (asserting Greenpeace has no adequate remedy at law for "the injuries currently being suffered" as a result of the allegedly deceptive statements). This tends to shift the focus to the injuries, but the relevant issue here is who (if anyone) suffered them.

and sued after he was served *fois gras*. *Id*. at 1276. The restaurant brought an anti-SLAPP motion, arguing that it was serving *fois gras* as a protest and so was engaging in protected conduct. *Id*. at 1277. The court held that the motion was properly denied because (in part) ALDF had shown it had a probability of prevailing on the standing issue. *Id*. at 1278–84. But in asserting that organizational standing could support a UCL claim, the *ALDF* court relied on federal authority, not an analysis of California law. It did not mention *Amalgamated Transit* and did not apply *Kwikset* at all. *ALDF*, 234 Cal. App. 4th at 1280–81. Instead, it relied ultimately on a 2005 federal decision that *Kwikset* itself did not even cite, much less apply. *See id*. (citing *S. Cal. Hous. Rts. Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1068–69 (C.D. Cal. 2005)). The court apparently reasoned that because *Kwikset* cited a case (*Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854–55 (2008)) that had in turn cited *Housing Rights*, the California Supreme Court must have been endorsing everything in the latter decision. *See id*. (acknowledging *Kwikset* did not address the issue, but claiming it "did express some approval for that proposition through its approving citation to *Hall*.") But because *Kwikset* did not address the issue (nor did *Hall*), that conclusion does not follow. *ALDF* therefore provides little reason to think the California Supreme Court would reach a similar result.

That is especially true because *ALDF* did not involve a deceptive-practice claim, which (labels notwithstanding) is the only type of claim Greenpeace asserts here. Even if an organization could use the UCL to enforce a statute that may relate to its mission, allowing one to assert a claim that third parties were deceived would defeat one of the main purposes of the Prop 64 amendments—to ensure UCL deceptive-practice actions involved at least one person who could allege and prove actual reliance. *See, e.g.*, *Kwikset*, 51 Cal. 4th at 320–22. And when no state court has held that organizational standing can support a UCL fraud claim, a federal court should not be the first to do so. Where state law is unclear, a federal court sitting in diversity must err on the side of the interpretation that limits liability. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (citing *Erie*); *see Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (declining to expand state-law liability by eliminating privity requirement for implied-warranty claims). This Court should therefore hold that organizational standing cannot support a UCL fraud claim.

**B.      Greenpeace has not adequately alleged organizational standing.**

Even if organizational standing were otherwise viable, Greenpeace has not alleged the necessary facts to establish it. Even under federal precedent, organizations may be able to establish standing if they "alter their resource allocation to combat the challenged practices, but not when they go about their business as usual." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942–43 (9th Cir. 2021) (punctuation omitted); *see also, e.g.*, *Am. Diabetes Assoc. v. United States Dept. of the Army*, 938 F.3d 1147, 1154–55 (9th Cir. 2019). They must have "expended additional resources that they would not otherwise have expended, and in ways they would not have expended them." *Friends of the Earth*, 992 F.3d at 942 (citing *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015)). An organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). "It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.*; *see El Rescate Legal Servs., Inc. v. Exec. Office of Immigr. Rev.*, 959 F.2d 742, 748 (9th Cir. 1992) (organizations had standing where challenged policy "*require[d]* [them] to expend resources ... they otherwise would spend in other ways"; modifications added). In short, an organization must do more than merely allege it chose to allocate resources in a particular way to pursue its "business as usual." Otherwise, there would be no meaningful limits on organizational standing at all.

As Greenpeace alleges, it has long "worked to combat plastic pollution" in California and elsewhere, "and to ensure that consumers are not misled by environmental marketing claims." FAC ¶ 5. It has conducted many campaigns on both topics for at least three decades. *Id.* ¶¶ 8 (alleging campaigns to expose "greenwashing" for over three decades), 9 (alleging campaigns targeting plastic pollution for nearly four decades). These have involved educating the public and engaging with retailers, manufacturers, and consumer product companies to encourage them to use less plastic and "to discourage them from misleading consumers about the recyclability of the plastic they do use." *Id.* ¶ 11. The campaigns have not been limited to either California or Walmart. *Id.* Greenpeace alleges it began investigating the relevant practices and representations of Walmart and other

retailers in late 2018. *Id.* ¶ 12. This investigation led to one of many reports Greenpeace has issued about plastic pollution, but again nothing about this was specific to Walmart. *See id.* ¶ 12 & n.5 (citing David Pinsky and James Mitchell, "Packaging Away the Planet: U.S. Grocery Retailers and the Plastic Pollution Crisis," Greenpeace Reports (June 11, 2019)). To the contrary, in that report Greenpeace evaluated 20 retailers for its "2019 Supermarket Plastics Scorecard"—it gave all 20 a failing grade—and the report refers to many other such reports Greenpeace has issued in the past. While Greenpeace asserts that its actions toward Walmart prevented it from doing other things, these are conclusory assertions that it cites no facts to support. *See* FAC ¶¶ 14, 20, 24, 73, 83, 94. In short, Greenpeace alleges no facts to show that its activities with regard to Walmart were anything but its "business as usual" of "work[ing] to combat plastic pollution."

Similar facts were found insufficient in *Friends of the Earth*. There too, the Ninth Circuit noted that the advocacy groups had been engaged in various initiatives to further the stated goal (reducing antibiotic use in animal agriculture) for years before they targeted the defendant. *Friends of the Earth*, 992 F.3d at 942-43. Once the defendant's allegedly misleading advertisements came to their attention, "they simply continued what they were already doing—publishing reports on and informing the public of various companies' antibiotic practices." *Id.* And even without the advertising, the court noted, "the organization would have continued its pressure campaign" against the defendant and other similar producers. *Id*; *see Ctr. for Biological Diversity v. Bernhardt*, No. 19-cv-05206-JST, 2020 WL 4188091, at *5 (N.D. Cal. May 18, 2020) (where group routinely submitted similar petitions, "inserting economic considerations" or spending more time and effort on communication did not allege diversion of resources). Greenpeace alleges no facts to support different conclusions here, and so it has failed to allege an injury that could support organizational standing, even if that doctrine could provide standing under the UCL.

## II. The complaint fails to satisfy Rule 8(a) and Rule 9(b).

### A. The complaint does not provide the "fair notice" Rule 8(a) requires.

A complaint must provide, at a minimum, fair notice of the plaintiff's claims and the grounds on which they rest. *Twombly*, 550 U.S. at 555. The notice provided must be adequate to allow the opposing party to defend itself effectively and to permit discovery to be reasonably limited. *See id.* at

556–60 (explaining importance of Rule 8 in holding down discovery costs). Rule 8 requires plaintiffs to allege (among other things) when the actionable misconduct occurred, and in labeling cases they must identify the products they bought. *See, e.g.*, *Ballard v. Bhang Corp.*, No. EDCV 19-2329-JGB, 2020 WL 6018939, at *7 (C.D. Cal. Sept. 25, 2020) (dismissing labeling claims for lack of fair notice where allegations involved at least 15 products during long class period); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (dismissing for failure to plead dates of alleged misconduct, given possibility of limitations defense); *Becton, Dickinson and Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2020 WL 1877707, at *4 (N.D. Cal. Apr. 15, 2020) (dismissing for failure to identify acts constituting breach, especially given "years-long timeframe" of allegations); *Johnson v. United Cont'l Holdings, Inc.*, No. C-12-2730-MMC, 2013 WL 6354210, at *8 (N.D. Cal. Dec. 5, 2013) (dismissing claims that did not identify particular position, location, and time frame of job application). Greenpeace's broad claims do not provide fair notice.

Greenpeace contends that it is necessarily misleading to state or imply that a product is "recyclable," apparently regardless of the context on any particular label or the recycling programs available at any particular time. But allegedly misleading label statements must be evaluated "[i]n context," including at the pleading stage. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228–31 (9th Cir. 2019) (affirming dismissal of complaint alleging word "diet" was misleading); *Hairston v. South Beach Bev. Co., Inc.*, No. CV 12-1429-JFW, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (rejecting claim based on a "single out-of-context phrase found in one component" of a label). Here, Greenpeace does not even purport to identify all the products it is targeting, instead describing broad categories and providing "non-exclusive" lists of representative brands and products. FAC ¶ 2 & nn.3 & 4. Based on those footnotes, the complaint appears to be targeting hundreds if not thousands of product packages, of all sizes and shapes; and as Greenpeace's own sample images show, these products' labels are not identical. Beyond that, according to Greenpeace's own allegations, whether a certain kind of plastic product or packaging can be considered "recyclable" may depend on changing market conditions. *See id.* ¶ 49 & n.40 (alleging recyclability changed dramatically during 2018 following China's change in policy). Even if misleading at one time or place, it might not be misleading at others. Yet the complaint does not

identify the date or location of a single purchase. And because not a single consumer is a party to this case, Walmart could not defend itself by (for example) deposing the plaintiff or otherwise investigating the circumstances of any particular purchase. Further, with hundreds or thousands of product labels supposedly at issue, the burdens imposed by discovery (on Walmart and the Court) are likely to be significant. As the Supreme Court pointed out in *Twombly*, enforcing Rule 8's "fair notice" requirement is one way to place reasonable limits on discovery. *Twombly*, 550 U.S. at 555. Because Greenpeace's complaint fails to give fair notice of its claims, the Court should dismiss it for that reason alone.

### B.      The complaint also fails to satisfy Rule 9(b).

The complaint should also be dismissed because it is grounded in fraud but does not comply with Rule 9(b). *See Kearns*, 567 F.3d at 1125–27. Greenpeace does not allege *it* was deceived, but the whole premise of its complaint is that Walmart deceived *someone*, and that is true for all its UCL causes of action. The heart of Greenpeace's complaint is that consumers are "susceptible to marketing claims" assuring them that plastic products are "recyclable." FAC ¶ 1. Its "unlawful practice" cause of action alleges that Walmart has violated certain statutory or regulatory provisions, in each case "by misrepresenting that the Products are recyclable...." *Id*. ¶¶ 78–81. Similarly, its "unfair practice" claim accuses Walmart of "advertising and marketing the Products as recyclable when they are not," violating a policy of "deceiving or misleading consumers about the environmental impact of plastic products," and failing to disclose that the products are not ultimately recycled. *Id*. ¶¶ 87–91. So Rule 9(b) applies to all these claims, which must be pleaded with particularity. *Kearns*, 567 F.3d at 1125–27.

Greenpeace's claims fail because it does not claim it was misled, and has included no allegations about the consumers on whose behalf it purports to be acting. Though it includes examples of a few labels it claims are deceiving people, it never identifies even one person who was deceived, does not allege when any deception happened, and fails to allege any of the other circumstances of the fraud. The complaint therefore violates Rule 9(b).[2] For that reason as well,

---

[2] This would not have been an issue in *ALDF* because that plaintiff did not allege anyone was being misled, only that the defendant violated a state statute.

Greenpeace's UCL claims fail. *See, e.g.*, *Walker v. Nestlé USA, Inc.*, No. 3:19-cv-723-L, 2021 WL 1195983, at *2–3 (S.D. Cal. Mar. 30, 2021) (dismissing for failure to comply with 9(b) where plaintiff inclded pictures of product packaging but did not identify which if any she actually bought); *Gross v. Vilore Foods Co.*, No. 20-cv-0894-DMS, 2020 WL 6319131 (S.D. Cal. Oct. 28, 2020) (dismissing complaint that failed to allege products were labeled uniformly throughout class period or to specify which labels were misleading); *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 646 (N.D. Cal. 2019) (holding Clorox could not bring unfair-competition claim based on fraud because it did not allege it relied on the false advertising to its detriment). Allegations "too general to identify the transaction at issue" are too general to comply with 9(b). *Walker*, 2021 WL 1195983, at *3.

Nor could Greenpeace achieve a different result by arguing that its claim is based on nondisclosure. Under California law, fraud claims based on nondisclosure require allegations showing that the defendant had a duty to disclose the omitted information. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (defining four circumstances in which such a duty may exist); *see Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018) (citing *LiMandri*). A duty can be based on the defendant's decision to make a partial representation that omits material facts, but Greenpeace has not alleged the circumstances of any representation, full or partial, with particularity. Indeed, the complaint does not even allege that Walmart has a duty to disclose information about recycling programs; indeed, the only time the word "duty" appears is to point out that "recycling facilities (which are often operated by private companies) have no duty to provide such information...." FAC ¶ 56. If *recycling facilities* have no duty to provide information to consumers about what is "recyclable," it is not clear why Walmart would, and the complaint does not explain.

In fact, Greenpeace concedes (and the labels show) that the challenged products bear disclaimers warning consumers they should "check locally" to determine whether a product can in fact be recycled in their area because products are "not recycled in all communities." *Id*. And beyond that, the symbol and disclaimers come with a link that directs consumers to a website (how2recycle.info) explaining what "check locally" means and providing easy access to information about what is in fact recycled in a consumer's area. In the sort of "pure omission" claim Greenpeace

is alleging, a duty to disclose can exist only if the defendant "had exclusive [or at least superior] knowledge of material facts not known to the plaintiff." *LiMandri* at 336; *see Hodsdon* at 862 (describing this as a "pure omission" claim). Here, recyclability information is just as available to consumers and Greenpeace as it is to Walmart. Greenpeace does not allege otherwise.

For that matter, under *Hodsdon* a pure-omission claim requires either that the omitted fact relate to "the central functionality of the product" or that an "unreasonable safety hazard" exists. 891 F.3d at 863–64 (holding defendant had no duty to disclose the possible existence of slave or child labor in the product's supply chain); *see also Hall v. SeaWorld Ent., Inc.*, 747 F. App'x 449, 451–52 (9th Cir. 2018) (citing *Hodsdon*; holding defendant had no duty to disclose facts about its treatment of orcas). Greenpeace does not allege either circumstance here.

Finally, to the extent Greenpeace alleges Walmart had a duty to disclose additional information to consumers because of the changes in market conditions that affected "recyclability," it has alleged no facts that would show Walmart knew about those changes. *See* FAC ¶ 91 (alleging Walmart knew but failed to disclose "that the Products are not ultimately recycled," but failing to allege how or when it learned this). A plaintiff asserting an omission claim based on the sale of a product must allege that the defendant knew the allegedly omitted information at the time of sale. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141–42 (9th Cir. 2012). Greenpeace does not allege when any particular underlying transaction took place, but even if it had, it has not alleged facts showing Walmart knew "recyclability" conditions had changed at any particular time. For that reason as well, Greenpeace has not pleaded a claim with particularity.

**C.     The same arguments defeat the causes of action labeled as unlawful- or unfair-practice claims.**

Greenpeace also asserts unlawful- and unfair-practice causes of action, alleging in both that Walmart violated the letter or "policy" of several other statutes (the Federal Trade Commission Act and California's False Advertising Law, Environmental Marketing Claims Act, and Public Resource Code). *See* FAC ¶¶ 76–84, 85–95. But these causes of action fail for the same reasons above, including the failure to plead with particularity. Regardless of the label attached to these claims,

Rule 9(b) still applies because they are "grounded in fraud." *Kearns*, 567 F.3d at 1125–26. Nothing about any of the cited statutes affects the result here.

First, Greenpeace alleges Walmart has violated Section 5 of the FTC Act. FAC ¶ 78 (citing 15 U.S.C. § 45). The FTC Act does not create a private right of action, and it is not clear whether a private plaintiff can use the UCL to enforce that act. *Compare Rubenstein v. Neiman Marcus Group LLC*, 667 F. App'x 564, 567 (9th Cir. 2017) (holding alleged violation of FTC pricing guides was actionable under the UCL) *with O'Donnell v. Bank of Am. Nat'l Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) (holding it was not). But it makes no difference here because Greenpeace alleges only that Walmart has violated Section 5 by "misrepresenting that the products are recyclable," which is the same claim it asserts under the deceptive-practice prong. Adding Section 5 to the mix changes nothing. *See, e.g.*, *Schertzer v. Samsonite Co. Stores, LLC*, No. 19-CV-639-JLS, 2020 WL 4281990, at *8 (S.D. Cal. Feb. 25, 2020) (noting split of authority on enforceability but declining to reach question because plaintiff had not pleaded a deceptive-practice claim in any event).

Second, Greenpeace alleges that Walmart has violated California's False Advertising Law. FAC ¶ 79. This also fails to advance the ball, however, because the FAL is significantly narrower than a UCL deceptive-practice claim: for example, the FAL applies only to "advertising" in the sale of property or services. Cal. Bus. & Prof. Code § 17500. As with Section 5 of the FTC Act, therefore, Section 17500 adds nothing. If Greenpeace has not alleged a violation of the UCL, it has also failed to allege a violation of the FAL.

Third, Greenpeace at times refers to the California Public Resources Code, but never alleges Walmart has actually violated any section of that code. *See* FAC ¶¶ 32, 34, 44, 62, 88 (citing Cal. Pub. Res. Code §§ 18015, 40180, 42257, and 42355.5). It alleges that Walmart's conduct "violates the legislatively declared policy of [section] 42355.5 against deceiving or misleading consumers about the environmental impact of plastic" (*Id*. ¶ 88), but again this is just another form of Greenpeace's deceptive-practice claim.

Finally, Greenpeace also cites Business & Professions Code § 17580.5. Under that statute, it is unlawful to make misleading "environmental marketing claims," defined as those described in the FTC's "Green Guides." Cal. Bus. & Prof. Code § 17580.5(a). By the same token, the act provides a

safe harbor for claims that conform to the Green Guides. Cal. Bus. & Prof. Code § 17580.5(b). But again, it is not clear what, if anything, this adds to Greenpeace's allegations that Walmart has done something deceptive, which fail as explained above.

Greenpeace relies mostly on a Green Guide provision stating that "[a] product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." FAC ¶¶ 34, 80 (both citing 16 C.F.R. § 260.12). But Greenpeace does not allege that any of the challenged products *cannot* be "collected, separated, or otherwise recovered ... for reuse or use in manufacturing or assembling another item." It alleges only that, at least after the recent changes in the market, this does not happen often enough. *See, e.g., id.* ¶¶ 23 (referring to March 2020 email referring to "*the low rate* of recyclability for products that Defendants labeled as recyclable"), 24 (alleging that such products are "*unlikely* to be recycled"), 50 (stating that "*the majority of* plastic labeled as recyclable" is not recycled) (emphases added). But under the Green Guides, a marketer can make unqualified "recyclable" claims so long as "*recycling facilities are available to* a substantial majority of consumers or communities where the item is sold...." 16 C.F.R. § 260.12(b)(1) (emphasis added). A "substantial majority" means at least 60 percent. *Id.* Even if low profitability could make a facility "unavailable" in this sense, Greenpeace does not allege facts showing this standard is not being met in California as a whole or in any particular community. It has not alleged a violation of the Green Guides for that reason among others.

Greenpeace is, essentially, asking the Court to rewrite the Green Guides. It would require retailers not only to ensure certain products *can be* recycled, but also that they are *actually being* recycled by independent facilities at rates acceptable to Greenpeace. And if, as Greenpeace claims, recycling rates depend on ever-changing market conditions, this new duty would impose a heavy and continuing burden on retailers. Not only is this interpretation of the Green Guides wrong, it has drastic implications for the consumer-goods industry as a whole, because similar labeling is used by other retailers and brands across the country. *See* How2Recycle, https://how2recycle.info ("The How2Recycle label was created to provide consistent and transparent on-package recycling information to consumers in North America."). While this litigation may fit within Greenpeace's

1    stated goal to discourage (and if possible eliminate) the use of plastic, it goes well beyond what

2    federal and California law require of retailers. And ironically, since the recyclability labels are a

3    form of consumer education, removing the label could lead to *more* plastic ending up in landfills

4    because consumers will no longer be encouraged to place recyclable plastic products and packages

5    in the appropriate collection bins. Even Greenpeace concedes that at least some of this plastic is

6    being recycled. If consumers stop depositing it into collection bins, none of it will be.

7            Ultimately, Greenpeace's "unlawful" or "unfair" UCL claims add nothing to its allegations

8    that Walmart is deceiving consumers by failing to disclose information about recycling programs.

9    These claims therefore fail for the same reasons discussed above.

10   **III.    Greenpeace has not alleged a basis for injunctive relief.**

11           Finally, even if Greenpeace had otherwise stated a claim, it has not alleged facts showing that

12   it would have a right to injunctive relief, the only sort of relief it seeks. It could not and does not

13   seek restitution, the only form of monetary relief authorized by the UCL. But that does not mean it is

14   "absolved from also demonstrating that [it] is entitled to seek an injunction" under the standards that

15   apply to such relief in any case. *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 925 (N.D.

16   Cal. 2012). It has not done so here.

17           Because a UCL action is equitable, remedies are limited to restitution and injunctive relief.

18   "Traditional equitable principles" apply when seeking such relief. *Sonner v. Premier Nutrition*

19   *Corp.*, 971 F.3d 834, 841 (9th Cir. 2020) (holding this is true where plaintiff seeks restitution); *see,*

20   *e.g.*, *Huynh v. Quora, Inc.*, No. 5:18-CV-07597-BLF, 2020 WL 7495097, at *19 (N.D. Cal. Dec. 21,

21   2020) (same for injunctive relief, collecting cases). Prospective injunctive relief requires a plaintiff

22   to show, among other things, that (1) it will suffer irreparable injury if the injunction is not granted,

23   that legal remedies will be inadequate, (3) that the balance of hardships weighs in plaintiff's favor,

24   and (4) that the public interest warrants the injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S.

25   388, 391 (2006); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (plaintiff must show

26   a "real or immediate threat that the plaintiff will be wronged again" in the future).

27           Greenpeace refers to injunctive relief three times in the complaint (apart from the prayer),

28   each time alleging only that "injunctive relief is specifically authorized under Business &

Professions Code § 17203." FAC ¶¶ 75, 84, 95. That is true, but a plaintiff must still allege facts showing entitlement to such relief. As noted above, Greenpeace also offers the conclusory allegation, phrased in the passive voice, that it "has no adequate remedy at law for *the injuries currently being suffered* as an award of monetary damages would not prohibit" Walmart's allegedly deceptive acts. *Id*. ¶¶ 4, 68, 72, 82, 93 (emphasis added). It seems to be trying to blur the lines between its injuries and consumer injuries, but in doing so it has not adequately alleged that either group is entitled to relief. And even when it refers to the consumers who are allegedly being deceived, as discussed above the complaint contains no facts at all pertaining to those injuries, if there have been any. It fails to allege grounds for injunctive relief to that extent. *See, e.g.*, *Schertzer*, 2020 WL 4281990, at *10–11 (holding that absent allegations showing a sufficient likelihood of future injury, a previously deceived consumer is not entitled to injunctive relief); *Freeman*, 877 F. Supp. 2d at 927 (holding injunctive relief not warranted because even if allegations showed defendant would harm others in the future, they did not show it would harm "*these* Plaintiffs"; emphasis in original).

The injury asserted here as a basis for UCL standing is Greenpeace's alleged diversion of resources. And in that regard, Greenpeace alleges only that without injunctive relief, plastic pollution and the resulting harm to the environment "will continue to negatively impact Greenpeace's efforts to protect these critical resources" (FAC ¶¶ 4, 25, 68), and that relief is "necessary to further Greenpeace's mission of ensuring consumers are not misled" (*id*. ¶ 25). But "negative impact" does not even purport to allege an *irreparable* injury; nor has Greenpeace alleged facts showing relief is "necessary," much less that the balance of equities favors an injunction. Greenpeace does not need an injunction to further its mission of ensuring consumers have the facts about recycling, because it can address that by simply working to educate them directly, as it is already doing and has been doing for decades.[3]

As far as balancing the equities, what injunctive relief here might add to Greenpeace's mission would be far outweighed by the enormous cost to Walmart of changing the labels of the

---

[3] As it happens, this is something Walmart is also doing, in part through the how2recycle.info link on product labels, as well as numerous other internet and print resources.

WALMART'S NOTICE & MOTION TO DISMISS
Case No. 3:21-cv-00754-MMC

1   huge number of products Greenpeace has targeted, as well as conducting a "corrective advertising

2   and information campaign," as the prayer for relief suggests. And, of course, no injunction by this

3   Court could affect the market conditions that Greenpeace itself alleges are responsible for low

4   recycling rates. In short, Greenpeace has not alleged facts showing it is entitled to injunctive relief,

5   the only type of relief it seeks here.

## CONCLUSION

7       Greenpeace has not alleged the necessary facts to assert organizational standing, even

8   assuming California law would permit a UCL deceptive-practice claim to proceed on that basis.

9   Greenpeace also has failed to plead its UCL claims in compliance with Rules 8(a) or 9(b), partly

10   because of the disconnect between itself and the consumers on whose behalf it purports to be acting.

11   Finally, Greenpeace has not alleged facts showing that injunctive relief is warranted. The Court

12   should dismiss the complaint.

Dated:  April 28, 2021             Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Eva. M. Weiler*
       Patrick Oot (*pro hac vice*)
       Eva M. Weiler
       M. Kevin Underhill
       Steve Vieux

       Attorneys for Defendant Walmart Inc.