1

LEXINGTON LAW GROUP
Howard Hirsch, State Bar No. 213209

2

Ryan Berghoff, State Bar No. 308812
Meredyth Merrow, State Bar No. 328337

3

503 Divisadero Street
San Francisco, CA 94117

4

Telephone: (415) 913-7800
Facsimile: (415) 759-4112

5

hhirsch@lexlawgroup.com
rberghoff@lexlawgroup.com

6

mmerrow@lexlawgroup.com

7

LAW OFFICE OF GIDEON KRACOV
Gideon Kracov, State Bar No. 179815

8

801 S. Grand Ave., 11th Floor
Los Angeles, CA 90017

9

Telephone: (213) 629-2071
Facsimile: (213) 623-7755

10

gk@gideonlaw.net

11

Attorneys for Greenpeace
GREENPEACE, INC.

12

13

**UNITED STATES DISTRICT COURT**

14

**NORTHERN DISTRICT OF CALIFORNIA**

15

16

GREENPEACE, INC.,

Case No. 3:21-cv-00754-MMC
Assigned to Hon. Maxine M. Chesney

17

                    Plaintiff,

**PLAINTIFF GREENPEACE, INC.'S OPPOSITION TO DEFENDANT WALMART, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

18

        v.

19

WALMART, INC.,

20

                    Defendant.

21

22

Date: July 2, 2021
Time: 9:00 a.m.

23

24

Complaint Filed: December 16, 2020
First Am. Compl. Filed: March 29, 2021

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………………………...1

II.     LEGAL BACKGROUND………………………………………...………………….2

III.    FACTS…………………………………………………………………...…..……..6

IV.    PLEADING STANDARD…………………………………………………………...8

V.     ARGUMENT…………………………………………………………………...…..9

        A. Greenpeace Has Organizational Standing to Bring Claims Under The UCL...…..9

             1. California and Federal Courts Recognize UCL Organizational Standing...9

             2. Greenpeace Has Properly Pled Standing To Pursue Its UCL Claims……12

        B. The FAC Satisfies Federal Pleading Standards…………………………..………14

             1. The FAC Satisfies FRCP 8(a) and 9(b)……...………………………....14

             2. Greenpeace Has Sufficiently Pled Reliance Under The UCL Fraudulent
             Prong……………………………………………………………...………..16

             3. Greenpeace Has Adequately Pled a Claim Under The UCL's Unlawful
             Prong………………………………………………………………………..18

             4. Greenpeace Has Adequately Pled a Claim Under The UCL's Unfair
             Prong………………………………………………………………………..20

        C. Greenpeace Has Adequately Alleged Entitlement To Injunctive
        Relief…………………………………………………………...……………...21

VI. CONCLUSION…………………………………………………………………...23

## TABLE OF AUTHORITIES

### Cases

*Abbott Laboratories v. Superior Court,*
    9 Cal.5th 642 (Cal. 2020) ........................................................................................ - 18 -

*Allen v. Hylands, Inc.,*
    773 Fed. Appx. 870 (9th Cir. 2019) .......................................................................... - 20 -

*Am. Diabetes Assoc. v. United States Dept. of the Army,*
    938 F.3d 1147 (9th Cir. 2019)................................................................................... - 14 -

*Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.,*
    46 Cal. 4th 993 (Cal. 2009)...................................................................................... - 10 -

*Animal Legal Defense Fund v. Great Bull Run, LLC,*
    No. 14-cv-01171-MEJ, 2014 U.S. Dist. LEXIS 78367 (N.D. Cal. June 6,
    2014).......................................................................................................- 10 -, - 13 -

*Animal Legal Defense Fund v. LT NAPA Partners LLC,*
    234 Cal. App. 4th 1270 (Cal. Ct. App. 2015) ........................................................... - 10 -

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................- 6 -, - 8 -

*Ballard v. Bhang Corp.,*
    No. EDCV 19-2329-JGB, 2020 U.S. Dist. LEXIS 188626, (C.D. Cal. Sept.
    25, 2020)................................................................................................................. - 15 -

*Beasley v. Lucky Stores, Inc.,*
    No. 18-cv-07144-MMC, 2020 U.S. Dist. LEXIS 13211, (N.D. Cal. Jan. 24,
    2020)....................................................................................................................... - 15 -

*Becerra v. Dr. pepper/Seven Up, Inc.,*
    945 F.3d 1225 (9th Cir. 2019)................................................................................... - 15 -

*Becton, Dickinson and Co. v. Cytek Biosciences Inc.,*
    No. 18-cv-009933-MMC, 2020 U.S. Dist. LEXIS 66423, (N.D. Cal. Apr. 15,
    2020)....................................................................................................................... - 15 -

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................- 2 -, - 14 -

*Brown v. Hain Celestial Group, Inc.,*
    11-CV-03082-LB, 2015 U.S. Dist. LEXIS 67912, (N.D. Cal. May 26, 2015)............ - 16 -

*California Medical Assn. v. Aetna Health of California, Inc.,*
    63 Cal. App. 5th 660 (Cal. Ct. App. 2021) .......................................................- 10 -, - 11 -

*Camacho v. Auto Club of S. Cal.,*
    142 Cal. App. 4th 1394 (Ct. App. 2006) ................................................................... - 20 -

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (Cal. 1999) ..................................................................................... - 20 -

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ................................................................................................ - 21 -

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) .................................................................................................. - 21 -

*Clorox v. Reckit Benckiser Grp. PLC,*

398 F. Supp. 3d 623 (N.D. Cal. 2019) ........................................................ - 16 -

*Ctr. for Biological Diversity v. Bernhardt,*
No. 19-cv-05206-JST, 2020 U.S. Dist. LEXIS 129941, (N.D. Cal. 2020) ................ - 14 -

*Davidson v. Kimberly-Clark Corp.,*
899 F. 3d 956 (9th Cir. 2018) ............................................................- 2 -, - 15 -

*Drum v. San Fernando Valley Bar Ass'n,*
182 Cal. App. 4th 247 (Ct. App. 2010) ........................................................ - 20 -

*Erie R.R. v. Tompkins,*
304 U.S. 64 (1938) ............................................................................... - 12 -

*Freeman v. ABC Legal Servs., Inc.,*
877 F. Supp. 2d 919 (N.D. Cal. 2012) ........................................................ - 21 -

*Friends of the Earth v. Sanderson Farms, Inc.,*
2021 U.S. App. LEXIS 9384 (9th Cir. 2021)....................................- 12 -, - 13 -

*Hairston v. South Beach Bev. Co., Inc.,*
No. cv 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18,
2012).................................................................................................. - 15 -

*Hinojos v. Kohl's Corp.,*
718 F.3d 1098 (9th Cir. 2013)................................................................. - 16 -

*Huynh v. Quora, Inc.,*
No. 5:18-CV-07597-BLF, 2020 U.S. Dist. LEXIS 241021 (N.D. Cal. Dec.
21, 2020)............................................................................................. - 21 -

*In Re Tobacco II Cases,*
46 Cal. 4th 298 (Cal. 2009) ........................................... - 2 -, - 11 -, - 16 -, - 17 -

*Johnson v. United Cont'l Holdings, Inc.,*
No. C-12-2730-MMC, 2013 U.S. Dist. LEXIS 171805 (N.D. Cal. Dec. 5,
2013).................................................................................................. - 15 -

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009)............................................................- 2 -, - 14 -

*Kwikset v. Superior Court,*
51 Cal. 4th 310 (2011)........................................................................ passim

*Moore v. Mars Petcare US, Inc.,*
966 F.3d 1007 (9th Cir. 2020).................................................................. - 16 -

*Morgan v. AT&T Wireless Services, Inc.,*
177 Cal. App. 4th 1235 (Cal. Ct. Ap. 2009) ..................................... - 16 -, - 17 -

*Organic Consumers Ass'n v. Sanderson Farms, Inc.,*
284 F. Supp. 3d 1005 (N.D. Cal. 2018) ..........................................- 12 -, - 13 -

*People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.,*
No. 15-cv-04301, 2016 U.S. Dist. LEXIS 11006 (N.D. Cal. Jan. 29, 2016) .....- 10 -, - 12 -

*Pilgrim v. Univ. Health Card, LLC,*
660 F.3d 943 (6th Cir. 2011)................................................................... - 23 -

*Rothman v. Equinox Holdings, Inc.,*
No. 2:20-cv-09760-CAS-MRWx, 2021 U.S. Dist. LEXIS 80683 (C.D. Cal.
April 27, 2021) .................................................................................... - 22 -

iii

*Rubenstein v. Neiman Marcus Group LLC,*
667 F. App'x 564 (9th Cir. 2017).................................................................. - 18 -

*S. Cal. Hous. Rights Ctr. v. Ass'n & Los Feliz Towers Homeowners Ass'n Bd. of Dirs.,*
426 F. Supp. 2d 1061 (C.D. Cal 2005) ........................................................ - 10 -

*Sonner v. Premier Nutrition Corp.,*
971 F.3d 834 (9th Cir. 2020) ....................................................................... - 21 -

*Williams v. Gerber Prods., Co.,*
552 F.3d 934 (9th Cir. 2008) ....................................................................... - 16 -

**Statutes**

**Fed. R. Civ. P**

(3) ................................................................................................................. - 1 -

8(a) ..................................................................... - 1 -, - 2 -, - 14 -, - 15 -

8(a)(2) ....................................................................................................... - 14 -

9(b) ..................................................................... - 1 -, - 2 -, - 14 -, - 15 -

**15 U.S.C.**

§ 45 ............................................................................................................. - 18 -

**Other Authorities**

**Business & Profession Code**

§ 17200 ............................................................................................ - 1 -, - 18 -

§ 17500 ....................................................................................................... - 18 -

§ 17580.5 ............................................................................................ - 3 -, - 19 -

**Cal. Pub. Res. Code**

§ 40180 ......................................................................................................... - 3 -

§ 42355.5 ............................................................................................. - 3 -, - 20 -

**Regulations**

**16 C.F.R.**

§ 260.1 .......................................................................................................... - 3 -

§ 260.1(d) ..................................................................................................... - 5 -

§ 260.12(d) .......................................................................................... - 4 -, - 19 -

iv

§ 260.12(b)(1) .............................................................................................................. - 5 -

§ 260.3(a) .................................................................................................................... - 5 -

§ 260.3(c) .................................................................................................................... - 4 -

**63 Fed. Reg.**

84, 24243 (May 1, 1998) .............................................................................................. - 5 -

84, 24244 (May 1, 1998) .............................................................................................. - 6 -

84, 24247 (May 1, 1998) .............................................................................................. - 4 -

**57 Fed. Reg.**

157, 36365 (August 13, 1992) ...................................................................................... - 4 -

84, 24244 (May 1, 1998) .............................................................................................. - 6 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   **INTRODUCTION**

"Simply stated: labels matter." *Kwikset v. Superior Court*, 51 Cal. 4th 310, 328 (Cal. 2011). Defendant Walmart, Inc. ("Walmart") markets and sells single-use plastic products and packaging that are labeled as recyclable, when such plastic is rarely, if ever, recycled.  ECF No. 24 ("FAC"), ¶ 1; *see also Smith v. Keurig Green Mt., Inc.*, 393 F. Supp. 3d 837 (N.D. Cal. 2019) (denying motion to dismiss for mislabeling products as recyclable).  The FAC seeks to remedy Walmart's unlawful, unfair, and fraudulent business practices with respect to the labeling, marketing, and sales of plastic products or packaging that are: (A) made from plastics #3-7 or unidentified plastic; (B) sold under Walmart's own private label brands; and (C) labeled as "recyclable" (the "Products").  FAC, ¶ 2. Plaintiff Greenpeace, Inc. ("Greenpeace") is a non-profit public interest organization that works to address plastic pollution and to ensure that the public is not misled by environmental marketing claims.  As a result of Walmart's unlawful, unfair, and fraudulent business practices in connection with labeling and selling the Products as recyclable, Walmart has frustrated Greenpeace's mission and has caused Greenpeace to spend money, staff time, and other organizational resources investigating and combating Walmart's misrepresentations.

Walmart seeks to dismiss the FAC on the following grounds: (1) Greenpeace's claims under California's Unfair Competition ("UCL"), Business and Professions Code ("B&P") § 17200, *et seq.*, fail because it has not lost money or property as a result of Walmart's alleged conduct; (2) the FAC does not satisfy Federal Rules of Civil Procedure ("FRCP") 8(a) or 9(b); and (3) Greenpeace has not alleged an entitlement to injunctive relief.  ECF No. 26 ("MTD"), at 1:12 – 2:5.  Walmart's Motion to Dismiss fails with respect to each argument raised.

First, Walmart argues that Greenpeace has not "lost" anything because it is bringing this case on behalf of the general public.  MTD, at 2:13-15.  Walmart is mistaken – Greenpeace is bringing this case on its own behalf.  FAC, ¶ 5.  Upon suspecting Walmart's misrepresentations, Greenpeace spent thousands of dollars and extensive staff time to investigate Walmart's labeling claims, analyze and then publicize the results of that investigation, and urge Walmart to remove the deceptive labels.  FAC, ¶¶ 13-25.  Surely, these costs qualify under governing law as money or

- 1 -

1   property lost as the result of Walmart's unlawful, unfair, and fraudulent business practices, and

2   these allegations establish Greenpeace's standing under the UCL.

3          Second, the FAC satisfies both FRCP 8(a) and FRCP 9(b).  FRCP 8(a) requires a short and

4   plain statement of the claims showing that Greenpeace is entitled to relief.  *Bell Atl. Corp. v.*

5   *Twombly*, 550 U.S. 544, 555 (2007).  Under FRCP 9(b), a pleading must identify the who, what,

6   when, where, and how of the misconduct charged, as well as what is false or misleading about the

7   purportedly fraudulent statement, and why it is false.  *Davidson v. Kimberly-Clark Corp.*, 899 F. 3d

8   956, 964 (9th Cir. 2018).  The purpose of the heightened pleading standard of FRCP 9(b) is to

9   provide a defendant with adequate notice to allow it to defend the allegations.  *Kearns v. Ford*

10  *Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Here, the FAC puts Walmart on notice by

11  identifying four specific categories of Products by plastic type and labeling claim, by identifying

12  the specific misrepresentations for each category, and by detailing the reasons each of those

13  misrepresentations are unlawful, unfair, and fraudulent.  FAC, ¶¶ 52-63, 76-95.  And for good

14  measure, the FAC provides even more details as to Greenpeace's purchase of particular Products

15  on a specific date at an identified Walmart location.  FAC, ¶¶ 18-19.  Notably, Greenpeace

16  provides much more detail than required since Walmart's deceptive labeling is part of an extensive

17  and long-term advertising campaign.  *See*, *e.g.*, *In Re Tobacco II Cases*, 46 Cal. 4th 298, 328 (Cal.

18  2009); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976-977 (N.D. Cal. 2015).  Accordingly,

19  Greenpeace has given Walmart adequate notice to defend the charges against it.

20         Third, Greenpeace has alleged facts showing that it has a right to injunctive relief.  FAC, ¶¶

21  4, 25, 68, 72, 82, 93.  Walmart's arguments to the contrary ignore those allegations.  Absent such

22  relief from this Court, Walmart will continue to misrepresent the Products as recyclable in violation

23  of California law, thereby forcing Greenpeace to continue to divert its resources to counter

24  Walmart's deception.

25                            **II.    <u>LEGAL BACKGROUND</u>**

26         The Legislature of California has declared "it is the public policy of the state that

27  environmental marketing claims, whether explicit or implied, should be substantiated by competent

28  and reliable evidence to prevent deceiving or misleading consumers about the environmental

impact of plastic products."  Cal. Pub. Res. Code § 42355.5.  The policy is based on the

Legislature's finding that "littered plastic products have caused and continue to cause significant

environmental harm and have burdened local governments with significant environmental cleanup

costs."  *Id*. § 42355; FAC, ¶ 32.

The Environmental Marketing Claims Act ("EMCA"), B&P § 17580.5, makes it "unlawful

for any person to make any untruthful, deceptive, or misleading environmental marketing claim,

whether explicit or implied."  Pursuant to that section, the term "environmental marketing claim"

includes any claim contained in the Guides for use of Environmental Marketing Claims published

by the FTC (the "Green Guides").  *Id.*; *see also* 16 C.F.R. § 260.1, *et seq*.

Under the Green Guides, "[i]t is deceptive to misrepresent, directly or by implication, that a

product or package is recyclable.  A product or package shall not be marketed as recyclable unless

it can be collected, separated, or otherwise recovered from the waste stream through an established

recycling program for reuse or use in manufacturing or assembling another item."  16 C.F.R. §

260.12(a).  This definition encompasses the three prongs of recyclability that are commonly used in

the solid waste industry: (1) accessibility of recycling programs ("through an established recycling

program"); (2) sortability for recovery ("collected, separated, or otherwise recovered from the

waste stream"); and (3) end markets ("for reuse or use in manufacturing or assembling another

item").  FAC, ¶ 34.  The California Public Resources Code similarly defines recycling as "the

process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise

become solid waste, and returning them to the economic mainstream in the form of raw material for

new, reused, or reconstituted products which meet the quality standards necessary to be used in the

marketplace."  Cal. Pub. Res. Code § 40180; FAC, ¶ 34.

These definitions are consistent with reasonable consumer expectations.  FAC, ¶ 35.  For

instance, the dictionary defines the term "recycle" as: (1) convert (waste) into reusable material, (2)

return (material) to a previous stage in a cyclic process, or (3) use again.  Oxford Dictionary,

Oxford University Press 2020.  Walmart has published its own Recycling Playbook that defines

recyclability in a similar manner.  The Playbook defines recyclability as a system of stages: (1)

Collection; (2) Sortation; (3) Processing; (4) End-Market; and (5) Recycling Rate.  FAC, ¶ 36.

1   Thus, Walmart's own interpretation of recyclability requires access to recycling programs,

2   sortability, and end markets.  *Id.*

3          As reflected in the Green Guides' language and regulatory history, the FTC does not

4   consider a product to be recyclable unless it is actually recycled in practice.  For instance, the

5   Green Guides provide that: (1) "[i]f any component significantly limits the ability to recycle the

6   item, any recyclable claim would be deceptive;" and (2) "an item that is made from recyclable

7   material, but, because of its shape, size, or some other attribute, is not accepted in recycling

8   programs, should not be marketed as recyclable."  16 C.F.R. §§ 260.12(a) and (d); *see also id.*, §

9   260.12(d), Examples 2 and 6.  The Green Guides provide an example that specifically addresses

10  theoretical recyclability regarding environmental marketing claims:

11         A trash bag is labeled "recyclable" without qualification. Because trash bags
           ordinarily are not separated from other trash at the landfill or incinerator for
           recycling, they are highly unlikely to be used again for any purpose.  Even if the
12         bag is technically capable of being recycled, the claim is deceptive since it asserts
           an environmental benefit where no meaningful benefit exists.

13  16 C.F.R. § 260.3(c), Example 2; *see also* 57 Fed. Reg. 157, 36365 (August 13, 1992).  And, in

14  promulgating the current recycling definition, FTC clarified that "[f]or a product to be called

15  'recyclable,' there must be an established recycling program, municipal or private, through which

16  the product *will be* converted into, or used in, another product or package."  *See* 63 Fed. Reg. 84,

17  24247 (May 1, 1998) (emphasis added).  *See*, *e.g.*, *Smith*, 393 F. Supp. 3d at 846 (*citing* 16 C.F.R. §

18  260.12(d)) ("the Green Guides state that if a product is rendered non-recyclable because of its size

19  or components—even if the product's composite materials are recyclable—then labeling the

20  product as recyclable would constitute deceptive marketing.").

21         The FTC has also recognized that facilities may accept Products for recycling even though

22  they end up in a landfill because of pressure from local authorities to meet solid waste diversion

23  goals.  FAC, ¶ 54.  In promulgating the most recent version of the Green Guides, the FTC stated

24  (under the heading "Packages Collected for Public Policy Reasons but Not Recycled"), "The

25  Commission agrees that unqualified recyclable claims for categories of products that municipal

26  recycling programs collect, but do not actually recycle, may be deceptive.  To make a non-

27  deceptive unqualified claim, a marketer should substantiate that a substantial majority of consumers

28

- 4 -

1    or communities have access to facilities that will actually recycle, not accept and ultimately

2    discard, the product.  As part of this analysis, a marketer should not assume that consumers or

3    communities have access to a particular recycling program merely because the program will accept

4    a product."[1]  *Id*.

5         The FTC's focus on whether an item is likely to be recycled (as opposed to being

6    theoretically recyclable) also makes sense from a consumer and environmental standpoint.  As the

7    FTC has stated, "while a product may be technically recyclable, if a program is not available

8    allowing consumers to recycle the product, there is no real value to consumers."  63 Fed. Reg. 84,

9    24243 (May 1, 1998).

10        The Green Guides also provide specific examples of recycling claims that the FTC

11   considers deceptive, as well as examples of ways in which marketers can qualify those claims.[2]

12   Compliance with the examples provided by the FTC qualifies as a defense to a claim under the

13   EMCA.  B&P § 17580.5(b).  As an initial matter, the Green Guides require that any qualifications

14   must be "clear and prominent," in "plain language and sufficiently large type," and placed in "close

15   proximity to the qualified claim."  16 C.F.R. § 260.3(a).  Under the Green Guides, a marketer may

16   make an unqualified recyclable claim if a substantial majority of consumers or communities have

17   access to recycling facilities for that item.  16 C.F.R. § 260.12(b)(1).  A "substantial majority"

18   means at least 60 percent of consumers or communities where the item is sold.  *Id*.  Absent such

19   evidence, marketers are required to use qualifications that vary in strength depending on the degree

20   of consumer access to recycling for an item.  *Id.*, § 260.12(b)(2).  For instance, if recycling

21   facilities are available to slightly less than 60 percent of consumers or communities, the Green

22   Guides recommend that a marketer should qualify the recyclable claim by stating "this product may

23   not be recyclable in your area," or "recycling facilities for this product may not exist in your area."

24   *Id*.  If recycling facilities are available only to a few consumers, the Green Guides recommend that

25

26        [1] FED. TRADE COMM'N, The Green Guides Statement of Basis and Purpose, (2012) available at:
     https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-
27   guides/greenguidesstatement.pdf (referenced in 77 Fed. Reg. 197, 62122 (Oct. 11, 2012)), at pp.
     174-175.
28        [2] The examples in the Green Guides are specifically provided by the FTC as its "views on how
     reasonable consumers likely interpret certain claims."  16 C.F.R. § 260.1(d).

1   a marketer should qualify its recyclable claim by stating "this product is recyclable only in a few

2   communities that have appropriate recycling facilities." *Id*.

3          The Green Guides explicitly identify qualifications that may be misleading or deceptive to a

4   reasonable consumer.  For instance, a "check locally" disclaimer is presumptively deceptive.  *See*

5   16 C.F.R. § 260.12, Example 4.  The FTC made this determination based on a survey it conducted

6   in which it determined that "there was no statistical difference" between a consumer's perception

7   of an unqualified recyclable claim and a "check locally" disclaimer.  *See* 63 Fed. Reg. 84, 24244

8   (May 1, 1998).  Accordingly, the FTC concluded that a "check locally" disclaimer is deceptive

9   because it does not "adequately disclose the limited availability of recycling programs," and

10  removed the disclaimer as an example of a permissible qualification.  *See* 16 C.F.R. § 260.12,

11  Example 4; 63 Fed. Reg. 84, 24244 (May 1, 1998).  Finally, underscoring the notion that actual and

12  not theoretical recyclability is what matters, the FTC states that "marketers may always qualify

13  recyclable claims by stating the percentage of consumers or communities that have access to

14  facilities *that recycle the item*."  16 C.F.R. § 260.12(b)(2) (emphasis added).

15                          **III.    FACTS**

16         All of the following facts are presumed true for purposes of the MTD.  *See Ashcroft v.*

17  *Iqbal*, 556 U.S. 662, 678 (2009).  Walmart advertises, markets, and sells the Products as recyclable.

18  FAC, ¶ 2.  Walmart uses the alleged recyclability of the Products as a means of marketing itself as

19  an environmentally responsible company by, for instance, announcing a sustainability goal of

20  achieving 100% recyclable, reusable, or compostable packaging for the Products by 2025.  *Id.,* ¶

21  50.  However, the Products cannot be recycled because consumers do not have access to recycling

22  programs that accept the Products, the Products cannot be separated or recovered from the general

23  waste stream and sorted into correct material bales for recovery, and there are no end markets to

24  reuse to Products or convert the Products into a material that can be reused or used in

25  manufacturing or assembling another item.  *Id*., ¶ 2.

26         Greenpeace is a non-profit public interest organization that works to combat plastic

27  pollution and other environmental harms, to protect California coasts from harms related to plastic

28  pollution, and to ensure that consumers are not misled by environmental marketing claims.  *Id*., ¶ 5.

Greenpeace was formed in 1971 as a global, independent campaigning organization that uses peaceful protest and creative communication to expose global environmental problems and promote solutions that are essential to a green and peaceful future. *Id.*, ¶ 6.

In August 2019, Greenpeace hired a recycling consultant for its Truth in Recycling Labels initiative to determine whether Walmart was misrepresenting the recyclability of its Products. *Id.*, ¶ 16. Greenpeace paid the consultant $25,000 for her work. *Id.* On October 6, 2019, as part of the work for Greenpeace under the contract, the consultant visited one of Walmart's stores in Rancho Santa Margarita, California and took numerous photographs of specific Product labels that included examples of misrepresentations with respect to the recyclability of the Products. *Id.*, ¶ 18. Shortly thereafter, the consultant prepared a 20-page PowerPoint report for Greenpeace that described Walmart's deceptive recycling representations. *Id.* ¶ 19. Due to Walmart's egregious labeling practices, the consultant devoted 15% of her time to investigate Walmart. *Id.*, ¶ 16. Greenpeace's staff then diverted resources from other projects to further investigate Walmart based on the report prepared by the consultant. *Id.*, ¶ 19.

Based on the consultant's work and the time spent by Greenpeace's staff members investigating the representations on Walmart's Products, Greenpeace determined that Walmart should be included in its Truth in Recyclable Labels initiative. *Id.*, 20. That project seeks to ensure that corporate marketing efforts aimed at representing the recyclability of products and packaging to consumers are accurate and legal. *Id.*, ¶ 15. But for Greenpeace's investigation of Walmart's labels and discovery of Walmart's deceptive conduct, Greenpeace would not have included Walmart in its Truth in Recyclable Labels initiative and would have instead focused its time on other projects, including Greenpeace's other projects related to plastic pollution. *Id.*, ¶ 20. Greenpeace's continued investigation revealed that Walmart had an extensive and long-term campaign misrepresenting the recyclability of the Products in California, including at most of its 320 California locations. *Id.*, ¶¶ 21, 29.

After determining that Walmart's labels misrepresented the recyclability of the Products, Greenpeace published a report in February 2020 titled "Circular Claims Fall Flat," which surveyed plastic waste collection, sortation, and reprocessing in the United States. *Id.*, ¶ 22. The survey

directly evaluated Walmart's recyclability labels and Walmart's packaging design guides for recyclability. *Id.*  Greenpeace then spent additional money, staff time, and organizational resources to inform Walmart of its false and misleading recycling representations and to request that Walmart stop mislabeling its Products. *Id.*, ¶ 23.

Walmart's frustration of Greenpeace's mission forced Greenpeace to spend money, staff time, and other organizational resources investigating Walmart and pressuring Walmart to stop using misleading labels on the Products. *Id.*, ¶ 24.  Greenpeace would have used its money, staff time, and organizational resources on other campaigns related to plastic pollution, but the large number of Walmart's false recycling representations in California required Greenpeace to focus its attention on Walmart's actions in California. *Id.*

The FAC does not seek any monetary relief.  Rather, Greenpeace seeks an injunction to prohibit Walmart's ongoing false and misleading recycling representations.  FAC, Prayer for Relief.  Absent such relief, Greenpeace will suffer irreparable harm because it will be forced to continue to spend money, staff time, and other organizational resources to combat Walmart's misrepresentations and to inform the public that the Products are not recyclable. *Id.*, ¶¶ 4, 25, 68, 72, 82, 93.  And, to the extent Greenpeace's efforts are unsuccessful, Walmart will continue to tout the Products as recyclable, and the plastic pollution caused by Walmart's sale of the Products in California will continue to negatively impact Greenpeace's efforts to protect natural resources and to promote legitimate recycling. *Id.,* ¶¶ 25, 65.

## IV.   **PLEADING STANDARD**

To survive a motion to dismiss, the FAC must contain sufficient factual matter, accepted as true, to "state a claim of relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678.  "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In reviewing the plausibility of a complaint, courts must accept the factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)

1

## V.   ARGUMENT

2

### A.  Greenpeace Has Organizational Standing to Bring Claims Under The UCL.

3      Walmart argues California law does not support organizational standing for purposes of a

4 UCL "deceptive-practice claim" and that Greenpeace has not adequately alleged organizational

5 standing.  MTD, at 7:11–11:23.  Walmart is wrong.  As an initial matter, Greenpeace alleges a

6 claim under each prong of the UCL—fraudulent, unlawful, and unfair (FAC, ¶¶ 69-95)—and it is

7 improper for Walmart to lump Greenpeace's claims together as a "deceptive-practice claim" for

8 purposes of standing.  In any event, California and federal courts have ruled that organizations

9 bringing claims under the UCL have standing, including cases involving UCL fraudulent claims.

10 Here, Greenpeace has alleged it directly lost money or property as a result of Walmart's unlawful,

11 unfair, and fraudulent practices in connection with its sale of the Products labeled as recyclable,

12 thereby giving Greenpeace standing under the UCL.  FAC, ¶¶ 13-25.

13      **1.  California and Federal Courts Recognize UCL Organizational Standing.**

14      Walmart argues that California law does not support organizational standing for a

15 "deceptive-practice claim" under the UCL (MTD, at 7:9-10), but the weight of authority belies

16 Walmart's position.  Both California and federal courts have affirmed that organizations have

17 standing to pursue UCL claims on their own behalf, including claims under UCL's fraudulent

18 business practices prong.

19      Prior to 2004, any person acting for the interests of the public could bring suit under the

20 UCL. Now, standing under the UCL is limited to any person who has suffered injury in fact and

21 has lost money or property as a result of unfair competition.  *Kwikset*, 51 Cal. 4th at 320-321.  Put

22 simply, standing under the UCL has two requirements: "(1) establish a loss or deprivation of

23 money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the

24 economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising

25 that is the gravamen of the claim."  *Id.*, at 322 (emphasis in original).  The intent of this change was

26 to confine standing to those actually injured by a defendant's business practice.  *Id.*, at 321.

27      Walmart argues that because the California Supreme Court held that associational standing

28 is incompatible with Proposition 64, an organization may not file a claim under the UCL since it is

still "derivative of the alleged economic harm to someone else, namely consumers."  MTD, at 8:10-12); *see*, *e.g.*, *Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*, 46 Cal. 4th 993, 998 (Cal. 2009).  Walmart reasons that if an organization cannot use the UCL to redress harm to its own members, then it should not be able to use it to redress harm to consumers at large.  *Id.*, 8:14-16.  However, as Walmart itself acknowledges elsewhere in its motion (MTD, at 6:7-9 and 19:15-16), Greenpeace is seeking to redress harm to itself, not others.  FAC, ¶¶ 4-25.  *Amalgamated Transit* did not foreclose organizational standing where, as here, Greenpeace alleges that it lost money as a direct result of Walmart's unlawful, unfair, and fraudulent business practices.

Walmart's argument also conflicts with well settled jurisprudence that an organization may bring a UCL claim when it has directly suffered an injury in fact due to a defendant's unfair, unlawful, and fraudulent conduct.  *See*, *e.g.*, *Animal Legal Defense Fund v. LT NAPA Partners LLC*, 234 Cal. App. 4th 1270 (Cal. Ct. App. 2015) ("*ALDF I*") (organization had standing to bring a UCL claim for violation of a foie gras ban); *Animal Legal Defense Fund v. Great Bull Run, LLC*, No. 14-cv-01171-MEJ, 2014 U.S. Dist. LEXIS 78367 (N.D. Cal. June 6, 2014) ("*ALDF II*") (organization had standing to bring a UCL claim for violation of animal cruelty laws); *People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-04301, 2016 U.S. Dist. LEXIS 11006 (N.D. Cal. Jan. 29, 2016) (organization had standing to bring a claim under the UCL fraudulent prong); *S. Cal. Hous. Rights Ctr. v. Ass'n & Los Feliz Towers Homeowners Ass'n Bd. of Dirs.*, 426 F. Supp. 2d 1061 (C.D. Cal 2005) (organization had standing to bring a UCL claim for violation of housing laws).

Walmart ignores all these cases besides *ALDF I*, which Walmart argues was wrongly decided (MTD, at 8:22); however, the California Court of Appeal recently affirmed the holding in *ALDF I.  See California Medical Assn. v. Aetna Health of California, Inc.*, 63 Cal. App. 5th 660, 667-669 (Cal. Ct. App. 2021).  In *ALDF I*, the court held that an organizational plaintiff had standing when it sued a restaurant for serving foie gras in violation of the law.  234 Cal. App. 4th at 1283-84.  Relying on *Kwikset*,[3] the court determined that the plaintiff had standing because it lost

---

[3] Contrary to Defendant's claim that the *ALDF I* Court did not apply *Kwikset* (MTD, at 9:7), the Court relied heavily on *Kwikset* in its analysis.  *ALDF I*, 234 Cal. App. 4th at 1284.

money to counteract defendant's violation of law, which frustrated the organization's mission of prohibiting the sale of foie gras.  *Id.*  Specifically, the plaintiff suspected that the defendant was selling foie gras, hired an investigator to determine whether that was true, diverted staff resources to evaluate the results of the investigation, and attempted to persuade authorities to enforce the foie gras ban on defendant.  *Id.*, at 1280.  The Court found that, although the plaintiff's expenditure of resources was wholly consistent with its mission, this did not mean that the resources were not diverted from other activities as a result of defendant's conduct.  *Id.*, at 1283.

Walmart also seeks to distinguish *ALDF I* on the grounds that the case involved an unlawful claim under the UCL instead of a "deceptive-practice claim."  MTD, at 9:16.  However, Greenpeace is also bringing claims under the unlawful and unfair prongs of the UCL and it is improper for Walmart to include each claim together as a "deceptive-practice claim" for purposes of standing.  And, under the fraudulent prong of the UCL, Greenpeace "must show that the misrepresentation was an immediate cause of the injury-producing conduct."  *Kwikset*, at 326-27 (*citing In re Tobacco II Cases*, 46 Cal. 4th at 326).  Here, Walmart's false recycling statements were the immediate cause of Greenpeace's loss of money, staff time, and other organizational resources.  FAC, ¶¶ 13-25.

Walmart will likely rely on *California Medical Assn.* on reply, but that recent decision also affirms that an organization may have standing under the UCL if it suffers its own injury as a result of the conduct at issue.  63 Cal. App. 5th at 667.  In *California Medical Assn.*, plaintiff CMA argued that defendant Aetna's insurance plans interfered with its members' exercise of their sound medical judgment, and that Aetna's conduct thus frustrated CMA's purpose of protecting physicians and the public.  *Id.*, at 664.  The Court ruled that CMA did not have standing because there is no associational standing for a UCL claim and because, under the specific facts of the case, the harm to CMA was based exclusively on the harm to its members.  *Id.*, 669.  The court specifically distinguished *ALDF I* on the ground that the plaintiff in that case did not bring a representative action and was not advocating on behalf of or providing services to help its members deal with their loss of money or property, as CMA was doing.  *Id.*, 668.  Here, similar to the plaintiff in *ALDF I*, Greenpeace is not bringing a representative action, nor is it advocating on

1   behalf of its members with regard to lost money or property; rather, Greenpeace is bringing this

2   action on its own behalf because Walmart's misrepresentations regarding the recyclability of the

3   Products frustrate Greenpeace's mission to protect the environment from plastic pollution, which

4   has caused it to spend money, staff time, and organizational resources in response.

5       While Walmart seeks to create a distinction between federal and state courts' treatment of

6   UCL standing, federal courts sitting in diversity jurisdiction are obliged to apply state substantive

7   law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  And the federal courts have done so by

8   recognizing that an organization has standing to pursue UCL fraudulent claims where the

9   organization has suffered an economic loss as a result of the defendant's deceptive business

10  practices.  For instance, in *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d

11  1005 (N.D. Cal. 2018), the district court initially found at the pleading stage that the organizations

12  had standing for a UCL fraudulent claim because they diverted resources from their government

13  watchdog work to respond to the advertising at issue.  *Id.* at 1010-12.  The case was ultimately

14  dismissed for lack of standing after extensive discovery revealed that the plaintiffs' allegations did

15  not comport with the facts.  *Friends of the Earth v. Sanderson Farms, Inc.*, 2021 U.S. App. LEXIS

16  9384, at *6 (9th Cir. 2021).  However, the district court properly concluded that California law

17  supports organizational standing for a UCL fraudulent claim where the facts support the

18  allegations.  *Id.*[4]

19      The ultimate import of Walmart's argument would be that an organization may never bring

20  a UCL claim on behalf of itself.  Walmart cannot point to any authority supporting such an

21  outcome, which would conflict with the plain language of the UCL and authorities cited herein.

22          **2.  Greenpeace Has Properly Pled Standing To Pursue Its UCL Claims.**

23      Walmart also argues that Greenpeace has not alleged facts sufficient to confer standing

24  under the UCL (MTD, at 10:2-3), but Walmart is mistaken.  Under the UCL, a plaintiff can

25

26      [4] *See also People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-04301, 2016 U.S. Dist. LEXIS 11006, at *8 (N.D. Cal. Jan. 29, 2016) (organization had

27  standing to bring a claim under the UCL fraudulent prong); *Cf People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-04301, 2016 U.S. Dist. LEXIS 55601, at *5-8

28  (N.D. Cal. April 26, 2016) (confirmed standing for UCL fraudulent claim but dismissed because no reasonable consumer would be deceived by the misrepresentations at issue).

1  establish standing by showing a loss or deprivation of money or property that "was the result of,

2  i.e., *caused by*" the unfair business practice.  *Kwikset*, 51 Cal. 4th at 320.  When an organization is

3  forced to divert its resources to identify and counteract unlawful activity that frustrates its mission,

4  the organization has suffered an injury in fact sufficient to warrant standing.  *ALDF II,* 2014 U.S.

5  Dist. LEXIS 78367, at *12.  The proper focus of the inquiry is whether the plaintiff undertook the

6  expenditures in response to, and to counteract, the effects of the defendant's alleged misconduct.

7  *ALDF I*, 234 Cal. App. 4th at 1283.  Here, Walmart's act of misrepresenting the recyclability of its

8  Products has directly injured Greenpeace because it has spent a significant amount of money, staff

9  time, and other organizational resources investigating and counteracting Walmart's violations of

10 California law.  Similar to the plaintiff in *ALDF I*, Greenpeace established its advocacy against

11 plastic pollution (FAC, ¶¶ 6-11), investigated the plastic pollution caused by Walmart (*id*., ¶ 12),

12 hired a consultant to investigate the recycling labels on Walmart's Products (*id*., ¶ 16), expended

13 significant staff time and resources to evaluate the results of the investigation (*id*., ¶¶ 13-21),

14 published a report to publicize Walmart's misrepresentations (*id*., ¶ 22), and then diverted time to

15 urge Walmart to stop its mislabeling practices (*id*., ¶ 23).

16      Relying on *Friends of the Earth,* Walmart argues that Greenpeace's allegations do not

17 suffice since, according to Walmart, Greenpeace's expenditure of resources were no different than

18 the organization's ongoing, ordinary lobbying activities.  MTD, at 10:2–11:23.  However, the

19 court's ruling in *Friends of the Earth* was based on a well-developed factual record after discovery,

20 whereas here the Court must presume the allegations in the FAC are true.  In that case, three

21 organizations sued Sanderson's for labeling its products as "100% Natural."  *Friends of the Earth*,

22 2021 U.S. App. LEXIS 9384, at *3.  As explained above and of most relevance here at the pleading

23 stage, the district court initially found that the organizations had standing.  *Organic Consumers*

24 *Ass'n*, 284 F. Supp. 3d at 1010-12.  After written discovery and depositions, the record revealed

25 that prior to August 2016, when the organizations learned of the advertising, they spent resources

26 encouraging purchasers to avoid Sanderson's due to the use of antibiotics by sending action alerts

27 and other blog posts.  *Friends of the Earth*, 2021 U.S. App. LEXIS 9384, at *6.  After learning of

28 the advertisements at issue, the plaintiffs did not take any further action as a result of the alleged

- 13 -

1    misrepresentations.[5]  *Id.*

2        Here, on the other hand, the pleading sets forth that Greenpeace took immediate and

3    specific steps to counteract Walmart's particular misrepresentations.  FAC, ¶¶ 13-25.  Thus, even

4    though part of Greenpeace's mission is to reduce plastic pollution, the actions Greenpeace took

5    would not have been taken and were a direct result of, and specifically related to, Walmart's

6    misrepresentations.  Accordingly, Plaintiff has alleged facts to establish standing under the UCL.

7        **B.   The FAC Satisfies Federal Pleading Standards.**

8        Walmart argues that the FAC does not meet federal pleading standards because (1) not a

9    single consumer is a party to the case; and (2) Greenpeace does not allege that it was misled.

10   MTD, at 12:13 – 13:26.  Walmart's arguments are not well taken.  First, Greenpeace is not required

11   to be a consumer to meet federal pleading standards.  Here, the FAC satisfies FRCP 8(a) and 9(b)

12   because it gives Walmart fair notice of the misconduct alleged so that it can defend against

13   Greenpeace's claims.  Second, Greenpeace is not required to plead that it was misled.  Rather,

14   Greenpeace is required to plead reliance in accordance with the UCL, which the FAC does.

15       **1.   The FAC Satisfies FRCP 8(a) and 9(b).**

16       Walmart argues that Greenpeace's claims do not provide fair notice under FRCP 8(a)

17   (MTD, at 12:11-12) and do not comply with FRCP 9(b) (MTD, at 13:10-11).  Walmart is wrong on

18   both accounts because the allegations in the FAC are sufficiently specific to provide Walmart fair

19   notice to defend against Greenpeace's claims.  FAC, ¶¶ 18, 52-63; *see also Kearns*, 567 F.3d at

20   1124 (purpose of the heightened pleading standard is to "give defendants notice of the particular

21   misconduct . . . so that they can defend against the charge and not just deny that they have done

22   anything wrong.").  FRCP 8(a)(2) requires only "a short and plain statement of the claim showing

23   that the pleader is entitled to relief," for the purpose of giving the defendant "fair notice" of what

24   the claim is.  *Twombly*, 550 U.S. at 555.  Under FRCP 9(b), a pleading must identify the who, what,

25

26   _____
     [5] The other cases cited by Defendant are likewise distinguishable.  In *Am. Diabetes Assoc. v.
     *United States Dept. of the Army*, 938 F.3d 1147, 1154-55 (9th Cir. 2019), the only resource
27   diverted was staff time of one staff member for one intake call. In *Ctr. for Biological Diversity v.*
     *Bernhardt*, No. 19-cv-05206-JST, 2020 U.S. Dist. LEXIS 129941, at *14 (N.D. Cal. 2020), which
28   did not involve a UCL claim, the organization only identified time and effort to prepare notices and
     petitions to the government, which it was already doing.

1   when, where, and how of the misconduct charged, what is false or misleading about the purportedly

2   fraudulent statement, and why it is false.  *Davidson*, 889 F. 3d at 964; *see also Beasley v. Lucky*

3   *Stores, Inc.*, No. 18-cv-07144-MMC, 2020 U.S. Dist. LEXIS 13211, at * 16 (N.D. Cal. Jan. 24,

4   2020).  The FAC satisfies both standards.

5        Greenpeace has put Walmart on notice of its claims by identifying the four specific

6   categories of Products at issue by plastic type and label claim, and, for each category, quoting the

7   specific misrepresentations at issue, detailing the reasons why those misrepresentations violate

8   California law, and providing specific examples and label images.  FAC, ¶ 52-63.  The FAC

9   therefore identifies the Products and explains why they are labeled in a manner that is unlawful,

10   unfair, and fraudulent.  *Id.*, ¶¶ 61-63, 69-95.  While this more than satisfies pleading standards,

11   Greenpeace goes still further by providing the details of its purchase (through a consultant) of

12   specific Products at a particular Walmart location on a particular date.  FAC, ¶ 18-19.

13        In each case cited by Walmart, the plaintiff either did not identify the products or

14   misrepresentations at issue, did not explain the who, what, when, where, and how, or failed to

15   describe why the misrepresentations were false or misleading.[6]   Here, on the other hand, the FAC

16   meets the standards of FRCP 8(a) and 9(b) because it has described with particularity the Products

17   and misrepresentations at issue to give Walmart notice so that it can defend against the charges and

18   not just deny that it has done anything wrong.

19        [6] *See Ballard v. Bhang Corp.*, No. EDCV 19-2329-JGB, 2020 U.S. Dist. LEXIS 188626, at *19

20   (C.D. Cal. Sept. 25, 2020) (stated that chocolate contained less CBD than advertised, but did not
     explain how it came to that conclusion); *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 135 (N.D.

21   Cal. 2020) (did not identify the dates it relied on the misrepresentation); *Becton, Dickinson and Co.*
     *v. Cytek Biosciences Inc.*, No. 18-cv-009933-MMC, 2020 U.S. Dist. LEXIS 66423, at *8 (N.D.

22   Cal. Apr. 15, 2020) (alleged breach of contract but did not identify the breach); *Johnson v. United*
     *Cont'l Holdings, Inc.*, No. C-12-2730-MMC, 2013 U.S. Dist. LEXIS 171805, at *38 (N.D. Cal.

23   Dec. 5, 2013) (some plaintiffs failed to identify the particular employment positions they would
     have applied, the location of the position, and or the time frame in which the position was

24   available); *Becerra v. Dr. pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228-31 (9th Cir. 2019)
     (determined that no reasonable person would believe that diet soda helped with weight loss);

25   *Hairston v. South Beach Bev. Co., Inc.*, No. cv 12-1429-JFW, 2012 U.S. Dist. LEXIS 74279, at *13
     (C.D. Cal. May 18, 2012) (no fraud for a single out of context phrase that water is natural when it

26   elaborated with language that said "with vitamins"); *Walker v. Nestle USA, Inc.*, No. 3:19-cv-723-
     L, 2021 U.S. Dist. LEXIS 61210, at *5 (S.D. Cal. Mar. 30, 2021) (plaintiff did not identify any

27   specific products with the misrepresentation that she relied on, nor when and where she saw the
     misrepresentations); *Gross v. Vilore Foods*, Co., No. 20-cv-0894-DMS, 2020 U.S. Dist. LEXIS

28   200913, at *7 (S.D. Cal. Oct. 28, 2020) (plaintiff failed to identify who engaged in the misbranding
     as to which labels, and when and where it occurred).

- 15 -

## 2.   Greenpeace Has Sufficiently Pled Reliance Under The UCL Fraudulent Prong.

Walmart also argues that the FAC should be dismissed because Greenpeace does not allege that it was deceived (MTD, at 13:11-13), but Greenpeace is not required to do so in order to meet the pleading standard for a UCL fraudulent claim. S*ee, e.g.*, *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1256 (Cal. Ct. Ap. 2009) (explaining the difference between deception under common law fraud and reliance under the UCL); *see also Clorox v. Reckit Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 646-647 (N.D. Cal. 2019) (explaining that under UCL a plaintiff need not prove deception, only that a misrepresentation is "either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public"); *Smith*, 393 F. Supp.3d at 846 (for claim under UCL a plaintiff must "show potential deception of consumers acting reasonably in the circumstances").  To have standing to bring a claim under the UCL fraudulent prong, Greenpeace is only required to plead reliance.  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (*citing In re Tobacco II Cases*, 46 Cal. 4th 298).  The California Supreme Court has explained that "reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th at 326.  Moreover, reliance is inferred from the misrepresentation of a material fact.  *Id*.  And whether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage.  *Id.*; *see also Williams v. Gerber Prods., Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Here, Greenpeace has adequately alleged reliance by averring that: (1) Walmart's misrepresentation was an immediate cause of Greenpeace's actions to further investigate and thwart Walmart's mislabeling practices (FAC, ¶ 13-25); and (2) a reasonable person would attach importance to a recycling representation (FAC, ¶ 51, 64, 66).

In fact, by enacting the EMCA, the California Legislature has effectively determined that Walmart's representations are material and likely to induce reliance.  *See, e.g., Kwikset*, 51 Cal. 4th at 329; *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013); *Brown v. Hain Celestial Group, Inc.*, 11-CV-03082-LB, 2015 U.S. Dist. LEXIS 67912, at *17-22 (N.D. Cal. May 26, 2015).  Thus, similar to *Kwikset*, "[t]he Legislature has recognized the materiality of this representation by

- 16 -

1    specifically outlawing deceptive and fraudulent [recyclable] representations." *Id.*[7]

2          Walmart also argues that the FAC should be dismissed because Greenpeace does not

3    identify all the Products it is targeting.  MTD, at 12:20-22.  However, Greenpeace is not required to

4    identify every single Product at issue.  The California Supreme Court has explained that where a

5    plaintiff alleges exposure to an extensive and long-term advertising campaign, "the plaintiff is not

6    required to plead with an unrealistic degree of specificity that the plaintiff relied on particular

7    advertisements or statements." *In re Tobacco II Cases*, 46 Cal. 4th at 328.  Accordingly, a plaintiff

8    challenging such a practice is not required to plead individualized reliance on each specific

9    misrepresentation.  *Id.*; *Opperman*, 84 F. Supp. 3d at 976-977; *Morgan*, 177 Cal. App. 4th at 1258.

10   The Northern District of California has identified six factors to determine whether a plaintiff has

11   pled an extensive and long-term advertising campaign: (1) plaintiff must allege that it actually saw

12   or heard the advertising campaign; (2) the advertising campaign must be sufficiently lengthy in

13   duration, and widespread in dissemination, such that it would be unrealistic to require the plaintiff

14   to plead each misrepresentation; (3) the plaintiff must describe in the Complaint, and preferably

15   attach to it, a representative sample of the advertisements at issue so as to adequately notify the

16   defendant of the precise nature of the misrepresentation claim; (4) the plaintiff must allege the

17   degree to which the alleged misrepresentations contained within the advertising campaign are

18   similar to each other; (5) each plaintiff must plead with particularity, and separately, when and how

19   they were exposed to the advertising campaign so as to ensure the advertisements were

20   representations consumers were likely to have viewed; and (6) the court must be able to determine

21   when a plaintiff made his or her purchase or otherwise relied on defendant's advertising campaign.

22   *Opperman*, 84 F. Supp. 3d at 976-977.

23         Greenpeace's allegations meet this standard because the pleading alleges that Walmart

24   engaged in a long-term and extensive advertising campaign with respect to misrepresenting the

25   Products as recyclable.  *See*, *e.g.*, FAC, ¶ 21, 51.  First, Greenpeace alleges that it actually saw the

26

27         [7] Walmart also argues that Greenpeace does not satisfy FRCP 9(b) for a claim based on
     nondisclosure (MTD, at 14:11-12), but Greenpeace does not raise such a claim.  Accordingly, the
28   cases referenced by Defendant for claims based on nondisclosure are inapplicable to this case.

advertising campaign.  FAC, ¶¶ 16-19.  Second, Greenpeace alleges that the advertising campaign was lengthy in duration and widespread in dissemination.  *Id*., ¶¶ 21, 29.  Third, Greenpeace describes the particular misrepresentations at issue and includes specific examples and label images in the FAC.  *Id*., ¶¶ 52-63.  Fourth, each misrepresentation similarly pertains to the recyclability of the Products.  *Id*.  Fifth, Greenpeace pled with particularly when and how it was exposed to the advertising campaign.  *Id*., ¶ 18-19.  Sixth, Greenpeace has provided a detailed explanation of the actions it took and when it took them in reliance on Walmart's representations.  *Id*., ¶¶ 13-25.

In sum, Greenpeace has alleged that Walmart's misleading recycling claims were an immediate cause of Greenpeace's economic injuries and that these recycling claims are material. These allegations suffice for purposes of establishing reliance.  Greenpeace has also alleged that Walmart engaged in an extensive and long-term advertising campaign, which obviates the need to prove reliance.

### 3. Greenpeace Has Adequately Pled a Claim Under The UCL's Unlawful Prong.

Independent of its claim under the UCL fraudulent prong, Greenpeace also alleges a claim under UCL's unlawful prong.  While Walmart seeks to lump Greenpeace's unlawful claim with its fraudulent business practices claim (MTD, at 15:23 – 18:9), the UCL "borrows" violations of other laws and treats them as "unlawful" practices independently actionable under the UCL.  *See Abbott Laboratories v. Superior Court*, 9 Cal.5th 642, 651 (Cal. 2020).  In effect, the "unlawful" prong of the UCL makes a violation of the underlying law a *per se* violation of B&P § 17200.  *See Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (Cal. 2002); *Moore*, 966 F.3d at 1016.  Greenpeace's UCL claim under the unlawful prong is based on: (1) Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45;[8] (2) B&P Code § 17500; and (3) the EMCA.  Greenpeace has adequately alleged a UCL unlawful claim based on Walmart's violation of each of these laws.  *See* FAC, ¶¶ 76-84.

First, Walmart argues that Greenpeace has not satisfied FRCP 8(a) and 9(b) with respect to

---

[8] Walmart argues that it is "questionable" whether a private plaintiff can use the FTC Act as a predicate for a UCL unlawful claim, but then undermines its own argument by citing to a recent Ninth Circuit decision holding in favor of the enforceability of the FTC Act under the UCL.  MTD, at 16:3-13 (*citing Rubenstein v. Neiman Marcus Group LLC*, 667 F. App'x 564, 567 (9th Cir. 2017)).

1   its unlawful claim.  MTD, at 15:26-27.  This argument fails for the same reason stated above:

2   Greenpeace has provided sufficient details to meet federal pleading standards.

3        Second, Walmart argues that Greenpeace's unlawful UCL claim based on the EMCA fails

4   based on Walmart's misguided view on the merits of that claim.  EMCA prohibits false and

5   misleading environmental marketing claims and, by referencing the Green Guides, makes it clear

6   that recycling claims fall within the purview of the statute.  B&P § 17580.5.  Putting aside the

7   niceties of Walmart's technical arguments about the proper interpretation of the Green Guides, the

8   bottom line is this: Greenpeace alleges that Walmart labels the Products as recyclable when they

9   are not.  *See, e.g.,* FAC, ¶ 2.  Surely these allegations suffice to state a claim under EMCA.

10        Ultimately, Walmart's position seems to be that it can label the Products as recyclable if

11  they are theoretically capable of being recycled even if they are not actually recycled in practice.

12  MTD, at 17:20-21.  This "wishcycling" theory does not make sense under a reasonable consumer

13  standard or the EMCA.  *See*, *e.g.*, FAC, ¶¶ 35, 37.  Consumers do not place the Products in their

14  blue bins based on the theoretical possibility they could be recyclable; rather, consumers do so

15  because they care about the environment and want to divert as much of their waste from landfills as

16  possible.  *See* FAC, ¶¶ 64-67.  And, as explained in detail above, the FTC has made it clear that the

17  Green Guides do not permit recycling labels based on theoretical possibilities, and that such claims

18  must instead be based on reality.  *See* Section II, pp. 4-5.  Courts agree: "the Green Guides state

19  that if a product is rendered non-recyclable because of its size or components—even if the

20  product's composite materials are recyclable—then labeling the product as recyclable would

21  constitute deceptive marketing."  *Smith*, F. Supp. 3d at 846 (*citing* 16 C.F.R. § 260.12(d)).  Thus,

22  Greenpeace is not asking the Court to rewrite the Green Guides as Walmart suggests (MTD, at

23  17:20), but to enforce the standards required by the EMCA, which encompasses the Green Guides.

24        Walmart also argues that Greenpeace has not alleged facts sufficient to show that recycling

25  facilities are not available to 60 percent of consumers per the Green Guides' standard (MTD, at

26  17:17-19), but Greenpeace has taken pains to explain in detail why that standard is not met (FAC,

27  ¶¶ 45-49, 52-63).  And Walmart argues that regardless of whether the standard is met, it should not

28  be required to comply with it because of the burden it places on retailers.  MTD, at 17:24-26.

1    However, the Products at issue are all sold under Walmart's own private label brands; thus,

2    Walmart is essentially the manufacturer of these items.  In any event, while Walmart may not be

3    responsible for the poor state of plastics recycling, Walmart is responsible for labeling its Products

4    truthfully.  *See*, *e.g.*, *Kwikset*, 51 Cal. 4th at 328-332.  While the Court need not determine the

5    merits of Greenpeace's claims at this juncture, Greenpeace has adequately pled a UCL unlawful

6    claim.

7              **4.  Greenpeace Has Adequately Pled a Claim Under The UCL's Unfair Prong.**

8              The unfair prong of the UCL prohibits business practices that are against public policy (*Cel-*

9    *Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (Cal. 1999)), that are "immoral,

10   unethical, oppressive, unscrupulous, or substantially injurious," (*Drum v. San Fernando Valley Bar*

11   *Ass'n*, 182 Cal. App. 4th 247, 257 (Ct. App. 2010), or that cause injuries to consumers that are not

12   outweighed by countervailing benefits (*Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394,

13   1405 (Ct. App. 2006)).  *Allen v. Hylands, Inc.*, 773 Fed. Appx. 870, 874 (9th Cir. 2019).  Here,

14   Greenpeace has adequately alleged a claim under the UCL's unfair prong by averring that

15   Walmart's labeling practices violate several legislatively declared policies and are immoral,

16   unethical, oppressive, unscrupulous, and substantially injurious, and by detailing why those injuries

17   are not outweighed by any countervailing benefits.   FAC, ¶¶ 85-95.

18             Walmart does not bother to address Greenpeace's unfair claim separately, instead lumping

19   it together with the unlawful claim.  MTD, at 15:23 – 18:9.  By doing so, Walmart ignores the

20   import of Cal. Pub. Res. Code § 42355.5, which Greenpeace does not cite as a predicate for its

21   UCL unlawful claim.  Rather, this statute is significant as it reflects a legislative policy against

22   misleading consumers about the environmental impact of plastic products.  FAC, ¶ 88.  By

23   mislabeling the Products as recyclable when they are not, Walmart engages in conduct that runs

24   afoul of this policy in violation of UCL's unfair business practices prong.

25             Falsely touting the Products as recyclable is fundamentally unfair.  Walmart argues that

26   removing the false label could lead to more plastic ending up in landfills (MTD, at 18:2-5), but the

27   opposite is true.  The irony is that consumers are trying to do the right thing by placing the Products

28   in their recycling bins, but such actions may actually prevent legitimately recyclable material from

being recycled.  FAC, ¶¶ 4, 65, 90.  And, as long as Walmart continues to include the supposed

recyclability of the Products as part of its long-term sustainability initiatives (FAC, ¶ 50), Walmart

will have no incentive to take actions that will truly reduce the environmental impact of its plastic

footprint.

### C.  Greenpeace Has Adequately Alleged Entitlement To Injunctive Relief.

Walmart argues that Greenpeace has failed to allege a basis for injunctive relief.  Walmart

is wrong.

Walmart principally relies on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th

Cir. 2020), where the Ninth Circuit affirmed that a plaintiff must demonstrate that there is no

adequate remedy at law to obtain an injunction under the UCL in federal court.  Here, Greenpeace

alleges that it lacks an adequate remedy at law, and, although not required to do so, explains

precisely why.  FAC, ¶¶ 4, 25, 65, 68, 72, 82, 93.[9]

Walmart also argues that Greenpeace has failed to allege irreparable injury and that the

balance of hardships and overall public interest weigh in favor of an injunction.  MTD, at 18:21-26

(*citing eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  To be sure, in evaluating

whether to issue permanent injunctive relief, the Court will need to weigh the classic four factor

test of irreparable injury, inadequate remedies at law, the balance of hardships, and the overall

public interest.  However, none of the cases cited by Walmart (and none that Greenpeace is aware

of) establish this four-factor equitable guidance as a pleading standard.[10]

___

[9] The other cases cited by Walmart are distinguishable.  In most of them, it was improbable that the plaintiffs would ever encounter the same conduct underlying the claims at issue, and therefore legal damages would suffice, and an injunction was unnecessary.  *See Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919 (N.D. Cal. 2012) (plaintiffs would need to go into debt again and be pursued by a debt collector that hired the same process server alleged to engage in "sewer service"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (plaintiff would need to be stopped again by a police officer, resist arrest, and then be subject to same alleged rogue practice of choke holds).  Here, Walmart is continuing to misrepresent the Products as recyclable, so the possibility of future harm to Greenpeace is certain and not speculative.  *Huynh v. Quora, Inc.*, No. 5:18-CV-07597-BLF, 2020 U.S. Dist. LEXIS 241021 (N.D. Cal. Dec. 21, 2020), also relied upon by Walmart, is distinguishable as it was decided on summary judgment and not the pleadings, the plaintiff there did not even allege the lack of an adequate remedy at law, and the plaintiff was simultaneously pursuing a claim for damages that would redress the past harm caused by a one-time data breach.

[10] Indeed, some courts have questioned whether *Sonner* establishes a pleading requirement as to the lack of an adequate remedy at law.  While *Sonner* was decided on the pleadings, that was due to

- 21 -

1    In any event, Walmart's argument once again ignores the allegations of the FAC since

2 Greenpeace alleges that it will suffer irreparable injury absent an injunction (FAC, ¶¶ 4, 25, 68, 72,

3 82, 93), and that the balance of hardships (FAC, ¶ 90) and the public interest weigh in favor of such

4 relief (FAC, ¶¶ 4, 25, 68).  Walmart's failure to acknowledge these allegations is underscored by its

5 claim that Greenpeace only refers to "injunctive relief" three times in the FAC, thereby ignoring six

6 other instances in which Greenpeace alleges the need for an injunction.  *Compare* MTD, at 18:27 –

7 19:1 (*citing* FAC, ¶¶ 75, 84, 95) *with* FAC, ¶¶ 4, 65, 68, 72, 82, 93.

8    Walmart also seeks to confuse matters by arguing that Greenpeace "seems to be trying to

9 blur the lines between its injuries and consumer injuries."  MTD, at 19:5-6.  Walmart is wrong

10 again as the FAC makes it clear that Greenpeace is suing on its own behalf and for its injuries,

11 which will continue so long as Walmart continues to misrepresent the Products as recyclable.  *See,*

12 *e.g.,* FAC, ¶ 4 ("If an injunction is not granted, Greenpeace will suffer irreparable injury because it

13 will continue to spend money, staff time and other organizational resources to combat Walmart's

14 false and misleading representations in California and to inform the public that the Products are not

15 recyclable in California.").  *See also id.,* ¶¶ 25, 68, 72, 82, 93.  Indeed, while on the one hand

16 professing confusion as to the nature of the injury, Walmart on the other hand acknowledges that

17 the "injury asserted here as a basis for UCL standing is Greenpeace's alleged diversion of

18 resources."  MTD, at 19:15-16.

19    While the harm at issue here is the harm to Greenpeace, there is a link between

20 Greenpeace's injury and the harm to consumers, the environment, and legitimate recycling efforts

21 if an injunction is not issued.  So long as Walmart continues to misrepresent the Products as

22 recyclable, consumers will continue to be duped into buying the Products under the mistaken

23 impression that they are recyclable; the environment will continue to be degraded by Walmart's

24 _____

25 the unique procedural posture of the case as the plaintiff had made a strategic request to voluntarily
   drop her claim for damages on the eve of trial and continued to press for the exact same damages as
26 restitution under the UCL.  971 F.3d at 838.  Subsequent cases have recognized that it is premature
   to evaluate a plaintiff's entitlement to equitable remedies at the pleadings stage, and have
27 distinguished *Sonner* based on its uncommon posture.  *See, e.g., Rothman v. Equinox Holdings,*
   *Inc.*, No. 2:20-cv-09760-CAS-MRWx, 2021 U.S. Dist. LEXIS 80683, at *34 (C.D. Cal. April 27,
28 2021) ("The Court finds it premature at this stage of the litigation to determine whether plaintiff's
   alleged injuries have an adequate remedy at law.").

contribution to the plastic waste crisis; and the Products will continue to act as a contaminant in a manner that hinders recycling of other items.  FAC, ¶¶ 4, 65, 90.  While Greenpeace is not relying directly on these injuries to support its standing or entitlement to injunctive relief, these harms directly undermine Greenpeace's mission and force it to divert resources to counter Walmart's ongoing deception.  Further, the severity of these underlying problems undermines Walmart's unsupported arguments (which are contradicted by the presumptively true allegations of the FAC) that any injury alleged by Greenpeace is insufficiently irreparable to qualify for injunctive relief and that the balance of hardships favors Walmart.  *See* MTD, at 19:16-24.

Finally, Walmart argues that an injunction will not affect "the market conditions that Greenpeace itself alleges are responsible for low recycling rates."  MTD, at 20:2-4.  Putting aside whether this statement is true and whether it accurately characterizes Greenpeace's allegations, an injunction will ensure that Walmart no longer misrepresents the Products as recyclable, thereby addressing the harm Walmart's practices cause to Greenpeace.

## VI.    CONCLUSION

For the reasons set forth above, Walmart's motion should be denied in its entirety.  To the extent the Court grants the motion at all, Greenpeace requests the opportunity to amend its Complaint to cure any deficiency identified by the Court.


Dated: May 26, 2021                    LEXINGTON LAW GROUP


                                       */s/   Ryan Berghoff*
                                       Howard Hirsch (State Bar No. 213209)
                                       Ryan Berghoff (State Bar No. 308812)
                                       LEXINGTON LAW GROUP
                                       503 Divisadero Street
                                       San Francisco, CA 94117
                                       Telephone: (415) 913-7800
                                       Facsimile: (415) 759-4112
                                       hhirsch@lexlawgroup.com
                                       rbergoff@lexlawgroup.com

                                       Attorneys for Plaintiff
                                       Greenpeace, Inc.

1

**CERTIFICATE OF SERVICE**

2
       I, Howard Hirsch, an attorney, hereby certify that on May 26, 2021, I caused a complete and

3
accurate copy of the foregoing document to be served via this Court's ECM/ECF notification

4
system, which will serve electronically to all participants in this case.

5

6
                        */s/   Howard Hirsch*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MTD – Case No. 3:21-cv-00754-MMC