Patrick L. Oot (*pro hac vice* granted)
SHOOK, HARDY & BACON L.L.P.
1800 K Street, N.W., Suite 1000
Washington, DC  20006
Tel: 202.783.8400 | Fax: 202.783.4211
oot@shb.com

Eva M. Weiler (SBN:  233942)
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California  92614-2546
Tel: 949.475.1600 | Fax: 949.475.0016
eweiler@shb.com

M. Kevin Underhill (SBN:  208211)
Steve Vieux (SBN:  315133)
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, California  94105
Tel: 415.544.1900 | Fax: 415.391.0281
kunderhill@shb.com
svieux@shb.com

Attorneys for Defendant Walmart Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND

| | |
|---|---|
| GREENPEACE, INC.,<br><br>             Plaintiff,<br><br>     vs.<br><br>WALMART INC.,<br><br>             Defendant. | Case No.:  3:21-cv-00754 MMC<br><br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7<br><br>**WALMART INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date:   July 2, 2021<br>Time:  9:00 a.m.<br><br>Complaint filed Dec. 16, 2020<br>First Am. Compl. filed Mar. 29, 2021 |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

I.    The UCL Does Not Allow Greenpeace to Bring Fraud Claims Based on Allegations of Harm to Third Parties. .................................................................................................. 2

    A.    *ALDF* and *CMA* do not authorize Greenpeace's action here. ................................ 3

    B.    Greenpeace has not pleaded the necessary facts in any event. ............................... 6

II.    The FAC Violates Rule 8 and Rule 9(b). ............................................................................ 6

    A.    The FAC violates Rule 8 because it fails to provide fair notice. ............................ 7

    B.    The FAC violates Rule 9(b), and no exception to the rule applies. ........................ 8

III.    Greenpeace Has Not Alleged Facts Showing It Is Entitled to Injunctive Relief. .............. 12

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                           **Page(s)**

*Animal Legal Def. Fund v. LT Napa Partners LLC*,
   234 Cal. App. 4th 1270 (2015) .................................................................................3, 4, 5, 15

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*,
   46 Cal. 4th 993 (2009) ...................................................................................................2, 3, 4, 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................................2

*Ballard v. Bhang Corp.*,
   No. EDCV 19-2329-JGB, 2020 WL 6018939 (C.D. Cal. Sept. 25, 2020)...................................7

*Beasley v. Lucky Stores, Inc.*,
   400 F. Supp. 3d 942, 954–56 (N.D. Cal. 2019) .........................................................................9

*Becton, Dickinson and Co. v. Cytek Biosciences Inc.*,
   No. 18-cv-00933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020).........................................8

*California Med. Assoc. v. Aetna Health of Cal., Inc.*,
   63 Cal. App. 5th 660, 2021 WL 1660614 (Apr. 28, 2021)................................................3, 4, 5, 15

*Chie v. Reed Elsevier, Inc.*,
   No. C-11-1784 EMC, 2011 WL 3879495 (N.D. Cal. Sept. 2, 2011) ............................................8

*Clark v. Am. Honda Motor Co., Inc.*,
   No. CV 20-03147-AB-MRWx, 2021 WL 1186338 (C.D. Cal. Mar. 25, 2021)............................13

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ....................................................................................................14

*Drake v. Toyota Motor Corp.*,
   No. 2:20-cv-01421-SB-PLA, 2021 WL 2024860 (C.D. Cal. May 17, 2021)...............................13

*Friends of the Earth v. Sanderson Farms, Inc.*,
   992 F.3d 939 (9th Cir. 2021) ......................................................................................................6

*Garrison v. Oracle Corp.*,
   159 F. Supp. 3d 1044, 1076 (N.D. Cal. 2016) ............................................................................2

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008) .....................................................................................................3

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) *as amended on denial of reh'g and reh'g en banc*
   (July 8, 2013) ............................................................................................................................10

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
   No. 20-CV-03131-JSC, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ......................................13

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ...............................................................................................1, 9, 10, 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..........................................................................................8, 9, 11

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) .........................................................................................................3, 4, 10

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
   114 F. Supp. 3d 852, 866–67 (N.D. Cal. 2015) ..........................................................................10

*La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ......................................................................................................6

*LegalForce RAPC Worldwide P.C. v. DeMassa*,
   No. 18-cv-00043-MMC, 2020 WL 4747909 (N.D. Cal. Aug. 17, 2020) ....................................10

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ....................................................................................................................13

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962 (N.D. Cal. 2015) ...........................................................................................11

*Pelayo v. Hyundai Motor Am., Inc.*,
   No. 8:20-cv-01503-JLS-ADS, 2021 WL 1808628 (C.D. Cal. May 5, 2021) ..............................13

*Schertzer v. Samsonite Co. Stores, LLC*,
   No. 19-CV-639-JLS-MSB, 2020 WL 4281990 (S.D. Cal. Feb. 25, 2020) ..................................14

*Shay v. Apple Inc.*,
   No. 20-cv-1629-GPC(BLM), 2021 WL 1733385 (S.D. Cal. May 3, 2021) ................................13

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .................................................................................................12, 13

*Teresa Adams v. Cole Haan, LLC*,
   No. SACV 20-913-JVS-DFMx, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ...........................14

*Weinstein v. Saturn Corp.*,
   No. C-07-0348-MMC, 2007 WL 735708 (N.D. Cal. Mar. 7, 2007) .............................................8

*Yastrab v. Apple Inc.*,
   173 F. Supp. 3d 972, 978–80 (N.D. Cal. Mar. 25, 2016) ............................................................11

*Zaback v. Kellogg Sales Co.*,
   No. 20-00268-BEN-MSB, 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ...................................13

**Statutes**

Cal. Code Civ. Proc. § 382 ........................................................................................................... 3

**Rules**

Fed. R. Civ. P. Rule 8 .................................................................................................. 1, 6, 7, 8, 15

Fed. R. Civ. P. Rule 9(b) .............................................................................................. 1, 6, 8, 9, 12

## INTRODUCTION

This is a fraud case brought by a plaintiff that concedes it was not defrauded. Greenpeace claims that *other* people were defrauded, but if that were true, those people could bring their own lawsuits, presumably offering direct evidence in support of their claims. To allow Greenpeace to pursue this lawsuit on behalf of third parties would largely undo the Proposition 64 amendments that voters passed to eliminate use of the UCL in exactly this situation—uninjured parties claiming to act on behalf of others. A ruling in Greenpeace's favor would embolden other organizations to bring UCL lawsuits claiming third parties had been deceived, alleging that the same conduct frustrates their missions and seeking to recover attorneys' fees as "private attorney generals"—which is precisely what happened in many UCL cases before Prop 64 passed. The California Supreme Court has rejected "associational standing" as flatly inconsistent with Prop 64, and no California court has ever permitted "organizational standing" in a case like this one. The recent *California Medical Association* case does not support Greenpeace's position.

Even if the UCL authorized this action, Greenpeace's complaint would still fail to meet the Rule 8 and 9(b) federal pleading standards. Greenpeace argues that it has complied with Rule 8 by defining "four specific categories" of products, but that argument makes Walmart's point: neither the opposition nor the FAC defines these "four specific categories," or any others, in a way that allows Walmart to fairly respond. Even if Rule 8 were satisfied, the FAC would still fail the Rule 9(b) test, the only result possible for a complaint grounded in fraud that does not allege a single fact based on the actual experience of any consumer. In Greenpeace's effort to avoid this result, it misstates the pleading standard in significant ways, seeking exceptions to which it is not entitled. Nor does the *Tobacco II* standard apply on these facts; even if the dicta Greenpeace cites did define a state pleading standard, that standard would not apply in federal court. Under the required particularity standard, Greenpeace's complaint fails.

Finally, Greenpeace has not alleged facts showing it is entitled to injunctive relief or any other equitable remedy, an independent reason why its UCL claims all fail. For this reason as well, the Court should dismiss the complaint.

# ARGUMENT

While properly pleaded facts must be taken as true for purposes of a motion to dismiss, that does not apply to labels, conclusions, blanket assertions, and recitations of legal elements, which are not "facts." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Nor does it apply to legal argument, such as Greenpeace's contention that the products it is targeting are not "recyclable." *See* Opp. at 6:18–25 (asserting this as if it were a fact the Court must accept as true). Further, Greenpeace's blanket assertions that "the Products cannot be recycled," that consumers "do not have access" to recycling programs, and that "there are no end markets" for recycled materials, all contradict its own more specific allegations in which it admits that these assertions are not true. That is, Greenpeace admits, as it must, that the products *are* literally "recyclable"—it only complains that they are not recycled often enough. *See, e.g.*, FAC ¶¶ 23, 24, 50. Whether that is true in a sense that matters here is a disputed legal issue, not a fact the Court must accept. *See, e.g.*, *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1076 (N.D. Cal. 2016) (dismissing fraud claims partly because plaintiffs' general allegations that Oracle concealed information were contradicted by their own more specific allegations showing it did not).

## I. The UCL Does Not Allow Greenpeace to Bring Fraud Claims Based on Allegations of Harm to Third Parties.

Greenpeace concedes that under the amended UCL, an organization cannot sue on behalf of its members. *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 998 (2009) (rejecting "associational standing" as incompatible with amended UCL). But it contends that an organization *can* bring a UCL action on behalf of complete strangers. According to Greenpeace, it is "seeking to redress harm to itself, not others," and under "well-settled jurisprudence" an organization may use the UCL if it has "directly suffered an injury in fact due to a defendant's unfair, unlawful, and fraudulent conduct." Opp. at 10:5–11. But that ignores the nature of this case, which assumes theoretical injuries to other people—the consumers Greenpeace claims are being misled. No California court has ever accepted an "organizational standing" theory of that kind for purposes of a UCL claim.

**A.     *ALDF* and *CMA* do not authorize Greenpeace's action here.**

As expected, Greenpeace relies almost exclusively on *ALDF*. *Animal Legal Def. Fund v. LT Napa Partners LLC*, 234 Cal. App. 4th 1270 (2015). Greenpeace says little about *ALDF*, however, apart from reciting the facts of the case. *See* Opp. at 10:9–11:7. It does not explain, for example, the contentions that it is relying on "well-settled jurisprudence" or that *ALDF* "relied heavily on *Kwikset* in its analysis." *See* Opp. at 10:26 & n.3. *ALDF* cited *Kwikset* for general principles, but its holding was based on federal precedent. *See ALDF*, 234 Cal. App. 4th at 1280–84. *ALDF* conceded *Kwikset* did not actually *hold* that a diversion of resources could constitute injury for purposes of a UCL claim. *Id*. at 1281. *ALDF* suggested only that *Kwikset* had "express[ed] some approval for that proposition through its approving citation to *Hall*...." *Id*. at 1280–81 (referring to *Hall v. Time Inc.*, 158 Cal. App. 4th 847 (2008)). The suggestion, in other words, is that because *Kwikset* cited *Hall*, and *Hall* cited the federal *Housing Rights* case, *Kwikset* necessarily incorporated the federal doctrine of organizational standing into California law—even though neither *Kwikset* nor *Hall* had anything to do with that doctrine. Had the California Supreme Court meant to do that, it would have said so clearly, especially in view of its decision just two years before in *Amalgamated Transit*. In short, neither *ALDF* nor Greenpeace's proposed extension of it is based on "well-settled jurisprudence" or a careful application of *Kwikset*.

But there is better and more recent evidence in support of Walmart's position: the *California Medical Association* case, decided after Walmart filed its opening brief. *California Med. Assoc. v. Aetna Health of Cal., Inc.*, 63 Cal. App. 5th 660, 2021 WL 1660614 (Apr. 28, 2021) (official reporter cites not yet available). In *CMA*, the association brought a UCL claim against Aetna, seeking to enjoin a policy that allegedly restricted referrals to out-of-network providers. 2021 WL 1660614, at *1. CMA alleged that Aetna marketed its insurance plans as allowing unrestricted use of out-of-network providers, but then tried to deter member physicians from making referrals to those providers. *Id*. at *2. Because CMA did not itself have any contract with Aetna, it could not allege it was directly harmed by this conduct. It therefore needed some other basis to justify its UCL action.

CMA argued that it had associational standing to bring a "nonclass representative action" seeking injunctive relief, citing California cases that had allowed this under Code of Civil Procedure

1  section 382. *Id*. at *1. The Court of Appeal made short work of that argument, pointing out that the
2  case law that CMA relied on had "developed many years before the electorate passed Proposition 64
3  in 2004, which changed the requirements for standing to bring a UCL claim." *Id*. And in
4  *Amalgamated Transit*, it noted, the California Supreme Court had held that associational standing
5  was inconsistent with the amended UCL, so that following the amendments, "all unfair competition
6  law actions seeking relief on behalf of others ... must be brought as class actions." *Id*. at *3 (quoting
7  *Amalgamated Transit*, 46 Cal. 4th at 1005). The *CMA* court also noted that two years later, *Kwikset*
8  had emphasized the new requirement that a UCL plaintiff must be able to show personal, direct
9  economic harm caused by the alleged misconduct. *Id*. These cases meant CMA's argument failed:
10 "We find the decisions in *Amalgamated Transit* and *Kwikset* require an association such as CMA to
11 produce evidence that CMA itself, and not just its members, lost money or property" to bring a UCL
12 action, and that "the cases recognizing an association may have standing to assert its members' *non-*
13 *UCL* claims do not apply here." *Id*. at *4.
14      In response, CMA argued—just as Greenpeace does here—that it was actually suing on its
15 *own* behalf, citing *ALDF* for the proposition that "diversion of its resources is a sufficient injury to
16 confer standing under the UCL." *Id*. CMA had alleged that it advocates on behalf of physicians
17 throughout California, "and carries out its mission through legislative, legal, regulatory, economic,
18 and social advocacy." *Id*. at *2. It alleged it had been "forced to expend significant time and
19 resources" on an "investigation and review of [Aetna's] wrongdoing," planning a strategy to counter
20 it, and responding to public inquiries about it. *Id*. It provided a declaration in which a senior vice-
21 president testified that "'preventing conduct that interferes with the physician-patient relationship' is
22 part of CMA's core mission," and that it had been "especially active in advocacy and education on
23 issues" like those described in its complaint. *Id*. After learning about and investigating Aetna's
24 conduct, he testified CMA had determined that the conduct was "frustrating CMA's purpose of
25 protecting physicians and the public." *Id*. He estimated that CMA had "diverted" 200 to 250 hours of
26 staff time to addressing Aetna's conduct. *Id*. Citing this and *ALDF*, CMA argued this was sufficient.
27      The Court of Appeal disagreed. *Id*. at *5–6. It said *ALDF* was "distinguishable" because that
28 case did not involve a "representative action," saying that *ALDF* did not purport to be advocating on

behalf of or providing services to members, if it even had members. *Id*. It had been arguing, the court suggested, only that it was directly injured by the restaurant's violation of the ban on sales of foie gras. *Id*. CMA, on the other hand, was admittedly advocating on behalf of others, and the staff time and resources it allegedly "diverted" to dealing with Aetna were typical of its normal operations. *Id*. at *5. "If we were to apply *ALDF* to this case," the court held, "then any organization acting consistently with its mission to help its members through legislative, legal and regulatory advocacy could claim standing based on its efforts to address its members' injuries. The 2004 amendments to the UCL eliminated such representational standing," as *Amalgamated Transit* had confirmed. *Id*. The court went on to hold that the federal authorities that CMA had cited—the same line of authority Greenpeace relies on here—were "neither binding on this Court nor instructive" with regard to either associational or organizational standing. *Id*. at *6. Only one of them even considered a UCL claim, the court pointed out, and that one—the *Housing Rights* case mentioned in *ALDF*—predated the relevant California Supreme Court cases and so offered "little guidance." *Id*.

Greenpeace argues that like *ALDF*, it "is not bringing a representative action, nor is it advocating on behalf of its members," but is bringing the action solely on its own behalf. Opp. at 11:27–12:4. But its allegations are far more like CMA's than ALDF's. Like CMA, the claims here are necessarily founded on alleged harm to others: the consumers that Greenpeace claims are being misled. ALDF's action was not based on fraud and thus did not depend at all on establishing harm to a third party; it argued only that the defendant was violating a state law that prohibited selling foie gras. Here, Greenpeace's action, and its alleged "injury," turns on its allegations that labeling products as "recyclable" deceives other people. It alleges, to give just one example, that it has been injured "due to Defendants' actions of using false, misleading, and deceptive labels regarding the recyclability of its Products in California." FAC ¶ 5. If *ALDF* applied to this case, then any organization could declare a mission of protecting consumers from false, misleading, and deceptive labels, and then bring a UCL action arguing that this injury was its own. That would be functionally indistinguishable from the situation before Prop 64 passed, and there is no reason to believe the California Supreme Court would agree with that result.

**B.     Greenpeace has not pleaded the necessary facts in any event.**

Even if Greenpeace could assert a UCL claim on behalf of others, it has not pleaded the facts necessary to state such a claim. *See* Motion at 10–11. Again, under the federal authority that Greenpeace relies on, organizations may have standing if they "alter their resource allocation to combat the challenged practices, but not when they go about their business as usual." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942–43 (9th Cir. 2021) (punctuation omitted). They must have "expended additional resources that they would not otherwise have expended, and in ways they would not have expended them." *Id.* at 942. They cannot simply allege they chose to spend money trying to fix a problem that otherwise would not have affected them. *La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). As Greenpeace itself describes the standard, an organization may have standing if it "is *forced* to divert its resources" to address activity that frustrates its mission. Opp. at 13:2–4 (emphasis added). Greenpeace's allegations show nothing of the kind, but rather only that it chose to target one of the many retailers that make similar label claims. *See id.* at 13:7–15. This was just business as usual. Greenpeace argues that its actions were more "immediate and specific" than in other cases (Opp. at 14:2–3), but it cites no authority for that standard, and its allegations do not support the point. *See* FAC ¶¶ 13–25.

Beyond that, Greenpeace suggests only that dismissal for this reason is not appropriate at the pleading stage because there must be a "well-developed factual record after discovery." Opp. at 13:18–20. But it does not explain why it would need discovery to plead facts about its *own* expenditure of resources. Greenpeace has the burden to plead facts that would show it has UCL standing, and cannot shift the burden to Walmart to show otherwise. For that reason as well, Greenpeace's UCL claims fail.

**II.     The FAC Violates Rule 8 and Rule 9(b).**

Rather than argue it has met the relevant pleading standards, Greenpeace focuses on trying to rewrite the standards to fit its pleading. For example, it repeatedly conflates the Rule 8 and Rule 9(b) standards, arguing it has satisfied both rules by alleging facts that provide "fair notice" of its claims. Opp. at 14:11–13, 17–19; 15:15–18. Similarly, its arguments about the UCL pleading standard

essentially ask that the particularity standard be waived. Greenpeace even argues that reliance is not an element of its fraud claims. But if Greenpeace had actually alleged the facts necessary to meet the relevant standards, it would not need to make these kinds of arguments.

### A. The FAC violates Rule 8 because it fails to provide fair notice.

Greenpeace argues that it has satisfied Rule 8 by identifying the "four specific categories" of products at issue. Opp. at 15:5–12 (citing FAC ¶¶ 52–63). It cites no authority for this proposition, much less authority that would support a pleading as broad as the FAC. *Ballard v. Bhang Corp.*, No. EDCV 19-2329-JGB, 2020 WL 6018939, at *7 (C.D. Cal. Sept. 25, 2020) (dismissing labeling claims for lack of fair notice where allegations involved just 15 products during long class period). But even if pleading by category were generally acceptable, Greenpeace's FAC would still fail. It should be enough to point out that although the opposition refers to "four specific categories," it never explains what those categories might be, and this matches nothing in the FAC. The FAC can hardly provide fair notice to Walmart (or the Court) if Greenpeace itself does not know, or has not explained, which products are in which categories.

The FAC does not define any such categories, instead simply setting forth three general criteria and then listing a range of non-exclusive examples. *See* FAC ¶ 2 & nn.3–4. If "specific categories" refers to the types of plastic mentioned in the FAC, that would be at least *six* categories, not four (plastics #3–7 and "unidentified plastic"). Greenpeace concedes that these types of plastic may be recycled at different rates. *See, e.g.*, FAC ¶ 53. But it also concedes other facts showing that these six could not be treated as individual "categories." For example, whether a type of plastic product or packaging can be (in its view) called "recyclable" may depend on changing market conditions or variations in local recycling programs. *Id.* ¶¶ 38, 55 (noting Green Guides refer to whether a "substantial majority" of consumers in a community have access to recycling programs for the item); 49 & n.40 (alleging changes in "recyclability" over time due to actions by the People's Republic of China); 53–54 (admitting that the policies of local communities and material recovery facilities vary). It also concedes that whether such a claim would be misleading may depend on whether a qualification is made on a particular product label and if so, what the qualification is, what font size is used, or what information a local recycling facility might be willing to provide to

consumers. *Id*. ¶¶ 56, 58. It also may depend on whether a product is packaged in a "shrink sleeve" or plastic film. *Id*. ¶ 59–61.

Given all the conditions Greenpeace admits may be relevant, the FAC does not provide fair notice even about the few specific products it does mention. *See, e.g.*, FAC ¶¶ 2 n.4, 18. For example, Greenpeace says its consultant took pictures of a 4-ounce package of Great Value Diced Mangos In 100% Juice that was on sale in Rancho Santa Margarita. *Id*. ¶ 18. But the FAC says nothing about (for example) the recycling programs in Rancho Santa Margarita, or the state of the overall market for recycled materials at the time. There would therefore be no way to tell which category, if any, this product would fall into, even if those categories had been adequately defined. Walmart therefore could not fairly respond to the FAC's allegations about this product (other than by simply denying it did anything wrong), and this is only one of the hundreds if not thousands of products at issue. Greenpeace has not complied with Rule 8. *See, e.g.*, *Becton, Dickinson and Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2020 WL 1877707, at *4–5 (N.D. Cal. Apr. 15, 2020) (holding reference to certain products failed to provide fair notice because of "years-long timeframe" of product development); *Chie v. Reed Elsevier, Inc.*, No. C-11-1784 EMC, 2011 WL 3879495, at *4 (N.D. Cal. Sept. 2, 2011) (holding complaint that referred to all California employees and alleged that company's records would show which ones were aggrieved did not provide fair notice); *Weinstein v. Saturn Corp.*, No. C-07-0348-MMC, 2007 WL 735708, at *1 (N.D. Cal. Mar. 7, 2007) (holding complaint's conditional allegations about OnStar system did not provide fair notice regarding plaintiff's belief that car had desired features).

**B.     The FAC violates Rule 9(b), and no exception to the rule applies.**

Even if the FAC satisfied Rule 8, it still would not satisfy the Rule 9(b) test. It is no coincidence that Greenpeace devotes almost all of its argument to contending not that the FAC satisfies Rule 9(b), but that Greenpeace is entitled to various exceptions to the rule. *See* Opp. at 14:15–21:4. Greenpeace has misstated the law in several ways.

First, Greenpeace asserts that "the purpose of the heightened pleading standard of FRCP 9(b) is to provide a defendant with adequate notice to allow it to defend the allegations." Opp. at 2:8-10 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–26 (9th Cir. 2009). That is the Rule 8

standard. The Ninth Circuit was stating only that this is the bare minimum for a complaint grounded in fraud (or any other). *See Kearns,* 567 F.3d at 1124–25. In fact, *Kearns* then says, on the same pages Greenpeace cites, that Rule 9(b) also serves other important purposes: (1) deterring plaintiffs from filing complaints as a pretext for discovery, (2) protecting a defendant's reputation from being harmed by the charges themselves, and (3) to prohibit plaintiffs from unilaterally imposing on "the court, the parties and society" the "enormous social and economic costs" of weak and potentially frivolous claims. *Id.* at 1125. For those reasons, Rule 9(b) requires a plaintiff to go well beyond simply providing "adequate notice" that might allow the filing of a general answer.

Second, Greenpeace argues, in various ways, that Rule 9(b) should not apply to its claims for "unlawful" or "unfair" practices under the UCL. *See* Opp. at 18:13–21:4. But the rule *does* apply to such claims whenever they are "grounded in fraud," regardless of the label a plaintiff may attach to them. *Kearns*, 567 F.3d at 1125–27. Walmart is not somehow improperly "lumping together" Greenpeace's claims under the three prongs of the statute, as Greenpeace suggests, any more than the court in *Kearns* was doing so. It is arguing simply that because all three prongs here are grounded in fraud, they all fail for the same reason (among others)--none of them are pleaded with particularity. There is no shortage of cases reaching this result, partly because almost all UCL plaintiffs assert claims under all three prongs of the statute even if the heart of the case is fraud. *See, e.g.*, *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 954–56 (N.D. Cal. 2019) (dismissing labeling claims under all three prongs for failure to comply with Rule 9(b)). That is all the more true of Greenpeace's claims here, because the statutory and regulatory provisions it says underlie its "unlawful" and "unfair" claims are all aimed at preventing consumers from being misled. *See* Opp. at 18:13–24, 20:18–24. Greenpeace cannot avoid Rule 9(b) this way.

Third, Greenpeace argues that it is not required to allege it was deceived "in order to meet the pleading standard for a UCL fraudulent[-practice] claim"—though it concedes it must allege reliance. Opp. at 16:1–23. Its argument that it can plead reliance without deception is not entirely clear, but it seems to be saying it is enough to plead that Greenpeace was harmed because *someone else* was deceived. Again, this is the sort of thing Prop 64 was meant to eliminate. Greenpeace cites *Tobacco II* in support, but that case held "there is no doubt that reliance is the causal mechanism of

fraud," and so the causation language added by Prop 64 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). While the court then suggested—in dicta—various ways that a plaintiff might plead and prove actual reliance, it did not say a plaintiff could do so by making allegations about *someone else*.[1] *See id*. at 326–28. As this Court recently recognized, in fact, and as many other courts have held, the UCL no longer allows such "third-party fraud" claims. *See LegalForce RAPC Worldwide P.C. v. DeMassa*, No. 18-cv-00043-MMC, 2020 WL 4747909, at *4–5 (N.D. Cal. Aug. 17, 2020) (dismissing UCL fraud and "unfair-practice" claims alleging that competitor was deceiving consumers; citing, *e.g.*, *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866–67 (N.D. Cal. 2015) (applying *Tobacco II* to UCL claim; holding that "a fraud action cannot be maintained based on a third-party's reliance")).

Fourth, Greenpeace appears to suggest that the Court must *presume* reliance on the alleged misrepresentations because, by enacting the EMCA, which refers in turn to the Green Guides, "the California Legislature has effectively determined that Walmart's representations are material and likely to induce reliance." Opp. at 16:24–17:1. It appears to be referring to the discussion in *Kwikset* of the state law that specifically outlawed deceptive "Made in America" representations. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011). But Greenpeace's point is still not clear. Setting aside the fact that the laws and regulations Greenpeace cites here are less specific than the "Made in America" law, *Kwikset* did not relieve any plaintiff of the need to allege (for example) individual reliance or causation of harm. It held only that to allege "economic injury," a plaintiff did not necessarily have to allege that the product received was functionally defective—*i.e.*, that a lock not made in the USA did not function as a lock. *Id*. at 332; *see Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) *as amended on denial of reh'g and reh'g en banc* (July 8, 2013)(citing *Kwikset*'s discussion of materiality in this context). Again, courts have held that an inference (not a

---

[1] Similarly, the *Tobacco II* court stated that California courts had repeatedly held that "relief under the UCL is available without individualized proof of deception, reliance and injury." 46 Cal. 4th at 320, 326. But this was dicta in the context of its reliance discussion, where it plainly stated that this was the law "before Proposition 64" and exactly what Prop 64 had eliminated. *Id*. at 326. In other words, *Tobacco II* may have held that a *class* could be certified under the UCL without such individualized proof, but it did *not* hold that a UCL plaintiff did not have to prove these things individually. It held just the opposite.

presumption) of reliance may apply to *class members* for purposes of certification, but that does not relieve a plaintiff (class representative or otherwise) of the need to allege and prove his or her own personal reliance, rather than the reliance of some third party.

Finally, even if California courts did apply a relaxed pleading rule for UCL fraud claims, that would make no difference in federal court. *Kearns*, 567 F.3d at 1125–27. This is one of the reasons Greenpeace's final *Tobacco II* argument fails. *See* Opp. at 17:2–18:12. In *Tobacco II*, the court stated—in dicta—that plaintiffs who alleged they were subjected to an "extensive and long-term advertising campaign" might not be "required to plead with an unrealistic degree of specificity that [they] relied on particular advertisements or statements." *Id*. (quoting *In re Tobacco II*, 46 Cal. 4th at 328). Given the allegations of "saturation advertising" that "spanned *decades*," the court suggested it might be unfair to expect plaintiffs to remember the details of reliance many years before. 46 Cal. 4th at 307 (emphasis added). The court was not relieving plaintiffs of the need to link their own claims to particular advertising of particular products (the cigarettes they smoked); it was saying only that they need not plead the details of their *reliance*, decades in the past, "with an unrealistic degree of specificity." *Id*.

Greenpeace does not allege national saturation advertising over a period of decades, but only that Walmart has misrepresented recyclability on certain product labels in California "since at least 2019." *See* Opp. at 18:1–2; FAC ¶ 21. Nor does it allege facts connecting any particular person's reliance to the label of any particular product. It alleges only the possibility that "consumers" relied on the labels of one or more of the thousands of products it is targeting. Its allegations thus bear no resemblance to those in *Tobacco II*. Even if they did, it would make no difference, because no *state* pleading standard could control what is required in *federal* court. Partly for that reason, virtually no courts have followed the *Opperman* decision on which Greenpeace relies. *See, e.g.*, *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978–80 (N.D. Cal. Mar. 25, 2016) (rejecting *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962 (N.D. Cal. 2015); collecting cases and holding *Tobacco II* "does not, and indeed could not, supplant a federal plaintiff's obligation" to plead with particularity).

In short, none of Greenpeace's arguments show that it has pleaded its fraud claims with particularity, which is unsurprising given that those claims turn on allegations that Walmart

defrauded other unidentified people who are not parties here. Greenpeace admits, as it must, that "there is a link between Greenpeace's injury and the harm to consumers...." Opp. at 22:19–21. It describes the link this way:

> So long as Walmart continues to misrepresent the Products as recyclable, consumers will continue to be duped into buying the Products under the mistaken impression that they are recyclable; the environment will continue to be degraded by Walmart's contribution to the plastic waste crisis; and the Products will continue to act as a contaminant in a manner that hinders recycling of other items.

*Id*. This is exactly the point: as Greenpeace effectively concedes, if it cannot prove consumers are being "duped into buying the Products under the mistaken impression that they are recyclable," it cannot prove it has been injured. And it cannot prove consumers are being duped, or even meet the relevant pleading standard, when not one consumer has joined its lawsuit, much less made the necessary allegations with particularity. As argued above, to allow Greenpeace to proceed with a UCL fraud claim based only on speculation about how other people may have been injured would turn the clock back to the situation before the Prop 64 amendments and would effectively dispense with the federal Rule 9(b) standard. The Court should reject Greenpeace's arguments.

**III.     Greenpeace Has Not Alleged Facts Showing It Is Entitled to Injunctive Relief.**

Greenpeace's arguments about injunctive relief also rely, in part, on an effort to rewrite the applicable standards. In particular, it suggests *Sonner* does not even apply at the pleading stage because of that case's "unique procedural posture." Opp. at 21:18–19 & n.10 (addressing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)). The posture was unusual, but as virtually every district court to consider the issue has held, it was irrelevant to the Ninth Circuit's holding.

*Sonner* affirmed the district court's decision to grant a motion to dismiss equitable claims because the plaintiff failed to allege facts showing she lacked an adequate legal remedy. 971 F.3d at 838. The unique procedural posture of the case mattered only in that the district court also held it was too late for Sonner to reinstate her CLRA damages claim, which she had dropped for tactical reasons; this meant she had no claims left and judgment was entered. *Id*. On appeal, the Ninth Circuit held that a federal court must apply traditional equitable principles to UCL and CLRA claims no matter how state law might modify those principles. *Id*. at 841–42. Having held Sonner had to establish she lacked an adequate remedy at law, the court agreed she had not done so, because "the

1  operative complaint" did not allege the necessary facts. *Id*. at 844. In support, the Ninth Circuit cited
2  a Supreme Court decision that affirmed a dismissal *at the pleading stage*. *See id.* (citing *O'Shea v.*
3  *Littleton*, 414 U.S. 488, 502 (1974)); *see also O'Shea* at 495 (criticizing the "conclusory allegations"
4  of injury in plaintiffs' complaint); 499 ("firmly disagree[ing]" with court of appeal's conclusion that
5  "an adequate basis for equitable relief ... had been stated" in the complaint). In fact, the Ninth Circuit
6  only mentioned the procedural posture of the case in a footnote addressing Sonner's argument that a
7  damages remedy would not have been sufficiently "prompt" in that case. *Sonner*, 971 F.3d at 844
8  n.8. It is not reasonable to conclude the Ninth Circuit felt that it was somehow "premature" to decide
9  this issue on the pleadings when it affirmed a decision to do exactly that. If it felt the procedural
10 posture of the case was significant, it presumably would have said so.

11       For reasons like these, the vast majority of district courts considering *Sonner* have held that
12 the procedural posture of a case makes no difference to whether *Sonner* applies. *See, e.g.*, *Drake v.*
13 *Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2021 WL 2024860, at *6–7 (C.D. Cal. May 17,
14 2021) (finding it "unclear how [that] distinction[ ] would permit this Court to eschew traditional
15 equitable principles mandated by *Sonner*"; dismissing complaint with prejudice); *Pelayo v. Hyundai*
16 *Motor Am., Inc.*, No. 8:20-cv-01503-JLS-ADS, 2021 WL 1808628, at * 9 (C.D. Cal. May 5, 2021)
17 (*Sonner* "stands for the proposition that a plaintiff's failure to plead inadequate remedies at law
18 dooms the claim for equitable relief at any stage"; punctuation omitted); *Shay v. Apple Inc.*, No. 20-
19 cv-1629-GPC(BLM), 2021 WL 1733385, at *2–3 (S.D. Cal. May 3, 2021) (rejecting multiple
20 arguments seeking to distinguish *Sonner*); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-
21 03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) ("[I]t is of no moment that *Sonner*
22 was decided at a much later stage in the litigation"); *Clark v. Am. Honda Motor Co., Inc.*, No. CV
23 20-03147-AB-MRWx, 2021 WL 1186338, at *7–9 (C.D. Cal. Mar. 25, 2021) ("nothing about
24 [*Sonner*] suggests its reasoning applies *only* late in the case and not at the pleading stage"; collecting
25 cases); *Zaback v. Kellogg Sales Co.*, No. 20-00268-BEN-MSB, 2020 WL 6381987, at *4 (S.D. Cal.
26 Oct. 29, 2020) ("Nothing in *Sonner* limits its precedential value to such circumstances."). 
27 Greenpeace cites one of only two or three cases holding otherwise (Opp. at 21:19 n.10), ignoring
28 dozens that (like those above) have rejected its position.

1     Aside from this argument, Greenpeace offers little in its opposition other than repeatedly citing the same few paragraphs from the FAC and arguing that these paragraphs "explain[ ] precisely why" it lacks an adequate remedy at law. *See* Opp. at 21:10–12, 22:1–7, 12–15 (all citing FAC ¶¶ 4, 25, 65, 68, 72, 82, 93). That is hardly the case. One of them (FAC ¶ 65) does not address the issue at all, and the others all parrot the same conclusory language from the beginning of paragraph 4:

> Plaintiff has no adequate remedy at law for the injuries currently being suffered as an award of monetary damages would not prohibit Defendant's false, misleading, and deceptive statements in California. If an injunction is not granted, Plaintiff will suffer irreparable injury because it will continue to spend money, staff time and other organizational resources to combat Defendant's false and misleading representations in California and to inform the public that the Products are not recyclable in California.

*See* FAC ¶¶ 4, 25, 68, 72, 82, 93. Paragraphs 72, 82, and 93 say nothing else, in fact. Greenpeace cites no cases in which allegations like these have been found adequate.

    If the "injuries currently being suffered" are those of the consumers Greenpeace claims are being deceived, Greenpeace is missing the point. Even assuming those consumers were theoretically entitled to some sort of monetary relief, whether damages or restitution, that would not entitle them to an injunction against allegedly false labeling except in certain specific circumstances that a consumer must plausibly allege. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018); *see, e.g.*, *Schertzer v. Samsonite Co. Stores, LLC*, No. 19-CV-639-JLS-MSB, 2020 WL 4281990, at *10–11 (S.D. Cal. Feb. 25, 2020) (dismissing consumer's claim for injunctive relief for failure to comply with *Davidson*). For obvious reasons, no consumer has made any such allegations in this case. To the extent that the "injuries currently being suffered" are Greenpeace's, on the other hand, it does not explain why damages would not compensate it for whatever economic harm it has allegedly suffered. But more to the point, it does not explain why, if it loses here, it would suffer an "irreparable injury" justifying injunctive relief simply because it might *choose* to "continue to spend money, staff time, and other organizational resources" to the recyclability issue. *See Teresa Adams v. Cole Haan, LLC*, No. SACV 20-913-JVS-DFMx, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020) (dismissing injunctive-relief claim that consumer supported only with conclusory statements about irreparable injury).

Finally, Greenpeace argues that paragraphs 4, 25, and 68 also allege that without an injunction, plastic pollution will remain a problem. But that will unfortunately be the case no matter what relief Greenpeace might be awarded here, because as Greenpeace itself has conceded the problem is dependent in large part on market forces and conditions beyond Walmart's control and indeed beyond the reach of this Court. Greenpeace has not, in other words, alleged facts showing that an injunction would necessarily provide any redress for the problem it has identified.

## CONCLUSION

Greenpeace has not alleged facts showing it has organizational standing to pursue a UCL claim. There is no evidence the California Supreme Court would authorize an action like this one, and Greenpeace's allegations are far more like those rejected in *CMA* than those accepted in *ALDF*. Greenpeace has also failed to plead its UCL claims in compliance with either Rule 8(a) or 9(b), and has not alleged facts showing it is entitled to injunctive relief, the only relief it is seeking. The Court should dismiss the complaint.

Dated:  June 9, 2021

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ M. Kevin Underhill*
      Patrick Oot (*pro hac vice*)
      Eva M. Weiler
      M. Kevin Underhill
      Steve Vieux

Attorneys for Defendant Walmart Inc.