LEXINGTON LAW GROUP
Howard Hirsch, State Bar No. 213209
Ryan Berghoff, State Bar No. 308812
Meredyth Merrow, State Bar No. 328337
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
hhirsch@lexlawgroup.com
rberghoff@lexlawgroup.com
mmerrow@lexlawgroup.com

LAW OFFICE OF GIDEON KRACOV
Gideon Kracov, State Bar No. 179815
801 S. Grand Ave., 11th Floor
Los Angeles, CA 90017
Telephone: (213) 629-2071
Facsimile: (213) 623-7755
gk@gideonlaw.net

Attorneys for Plaintiff
GREENPEACE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

GREENPEACE, INC.,

Plaintiff,

v.

WALMART INC.,

Defendant.

Case No. 3:21-cv-00754-MMC
Assigned to Hon. Maxine M. Chesney

**PLAINTIFF GREENPEACE, INC.'S OPPOSITION TO DEFENDANT WALMART INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Date: January 14, 2022
Time: 9:00 a.m.

Complaint Filed: December 16, 2020
First Am. Compl. Filed: March 29, 2021
Second Am. Compl. Filed: October 15, 2021

**TABLE OF CONTENTS**


I. INTRODUCTION……………………………………………………………………...1

II. LEGAL BACKGROUND……………………………………..…………………….3

III. FACTS……………………………………………………………………..……...6

IV. PROCEDURAL BACKGROUND………………………………………………..7

V. PLEADING STANDARD………………………………………………………...8

VI. ARGUMENT……………………………………………………………………...8

A. Greenpeace Has Standing Under the UCL………………………………...…..8

1. The Challenged Conduct Is An Unlawful And Unfair Failure To Substantiate That Is Not Tied To Consumer Misrepresentations And Thus Does Not Require Reliance……………………………………………....8

2. Greenpeace Adequately Alleges That It Lost Money Due To Walmart's Failure To Substantiate Its Recyclability Claims. ………………………11

3. The UCL Allows Organizational Standing And Greenpeace Has Organizational Standing To Bring Claims Under The UCL……………..…15

B. Walmart Is Required To Substantiate Its Recyclability Claims Under EMCA…………………………………………………………………....17

C. Private Parties Can Enforce EMCA's Substantiation Mandate Under The UCL.………………………………………………...………………..….21

D. Greenpeace Has Adequately Pled Claims Under The Unlawful And Unfair Prongs Of The UCL..……...…………………………...………………..….22

E. Greenpeace Has Adequately Alleged Entitlement To Injunctive Relief…...24

VII. CONCLUSION…………………………………………………………………..26

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Superior Court*, 9 Cal. 5th 642 (2020) ....... - 2 -, - 21 -

*Allen v. Hylands, Inc.*, 773 Fed. Appx. 870 (9th Cir. 2019) ....... - 21 -

*Amalgamated Transit Union, Loc. 1756, ALF-CIO v. Sup. Ct.*, 46 Cal. 4th 993 (2009) ....... - 16 -

*Animal Legal Defense Fund v. Great Bull Run, LLC*, No. 14-cv-01171-MEJ, 2014 U.S. Dist. LEXIS 78367 (N.D. Cal. June 6, 2014) ....... - 15 -, - 16 -

*Animal Legal Defense Fund v. LT NAPA Partners LLC*, 234 Cal. App. 4th 1270 (2015) ....... - 7 -, - 14 -

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....... - 6 -, - 8 -

*Bailey v. United States*, 516 U.S. 137 (1995) ....... - 18 -

*California Med. Assoc. v. Aetna Health of Cal., Inc.*, 63 Cal. App. 5th 660 (2021) ....... - 17 -

*Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394 (2006) ....... - 3 -

*Capello v. Walmart Inc.*, 394 F.Supp.3d 1015 (N.D. Cal. 2019) ....... - 8 -, - 9 -

*Capello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 U.S. Dist. LEXIS 237326 (N.D. Cal., Apr. 5, 2019) ....... - 9 -

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ....... - 2 -

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 S. Ct. 1302, 149 L. Ed. 2d 234 (2001) ....... - 18 -

*Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247 (2010) ....... - 3 -

*Ely Holdings Ltd v. O'Keeffe's, Inc.*, No. 18-cv-06721-JCS, 2019 U.S. Dist. LEXIS 135805 (N.D. Cal. Aug. 12, 2019) ....... - 10 -

*Friends of the Earth v. Sanderson Farms, Inc.*, 2021 U.S. App. LEXIS 9384 (9th Cir. 2021) ....... - 12 -

*Fournier v. Sebelius*,
718 F.3d 110, 1123 (9th Cir. 2013) ............ - 19 -

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ............ - 18 -

*In Defense of Animals v. Sanderson Farms, Inc.*,
No. 20-cv-05293-RS, 2021 U.S. Dist. LEXIS 177626 (N.D. Cal. Sept 17, 2021) ............ - 12 -, - 13 -

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ............ - 9 -

*Jiles v. US Bank NA*,
No. CV 12-10397-SJO, 2013 WL 12134143 (C.D. Cal. Feb. 11, 2013) ............ - 10 -

*Kasky v. Nike, Inc.*,
27 Cal.4th 939 (2002) ............ - 21 -

*Kissel v. Code 42 Software, Inc.*,
No. 8:15-cv-01936, 2016 U.S. Dist. LEXIS 184368 (C.D. Cal. Apr. 14, 2016) ............ - 9 -

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310, 322 (Cal. 2011) ............ - 8 -, - 14 -, - 16 -

*LegalForce RAPC Worldwide P.C. v. DeMassa*,
No. 18-cv-00043-MMC, 2020 U.S. Dist. LEXIS 148021 (N.D. Cal. Aug. 17, 2020) ............ - 10 -

*Mayron v. Google LLC*,
54 Cal. App. 5th 566 (2020) ............ - 13 -

*Moore v. Mars PetCare US, Inc.*,
966 F.3d 1007, 1016 (9th Cir. 2020) ............ - 21 -

*National Council Against Health Fraud Inc. v. King Bio Pharmaceuticals, Inc.*,
107 Cal. App. 4th 1336 (2003) ............ - 21 -

*Organic Consumers Ass'n v. Sanderson Farms, Inc.*,
284 F. Supp. 3d 1005 (N.D. Cal. 2018) ............ - 12 -

*People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*,
No. 15-cv-04301, 2016 U.S. Dist. LEXIS 11006 (N.D. Cal. Jan. 29, 2016) ............ - 15 -

*Rizo v. Yovino*,
950 F.3d 1217 (9th Cir. 2020) ............ - 18 -

*S. Cal. Hous. Rights Ctr. v. Ass'n & Los Feliz Towers Homeowners Ass'n Bd. Of Dirs*,
426 F. Supp. 2d 1061 (2005) ............ - 15 -, - 16 -

*Smith v. Keurig Green Mt., Inc.*,
393 F. Supp. 3d 837 (N.D. Cal. 2019) ............ - 23 -

*Svenson v. Google, Inc.*,
No. 13-cv-04080-BLF, 2015 U.S. Dist. LEXIS 43902 (N.D. Cal. April 1, 2015)........ - 9 -

**Statutes**

**Cal. Bus. & Prof. Code**

§ 17200........ - 21 -

§ 17203........ - 1 -

§ 17580(a)........ passim

§ 17580(a)(5)........ - 2 -, - 4 -, - 18 -, - 19 -

§ 17580(a)(6)........ - 19 -

§ 17580(b)........ - 4 -, - 21 -, - 22 -

§ 17580(d)........ - 4 -

§17580(e)........ - 19 -

§17580.5........ - 19 -

**Pub. Res. Code**

§ 40180........ - 5 -

§ 42355.5........ - 3 -, - 21 -, - 24 -

§ 42355........ - 3 -

§ 42355.5(b)........ - 5 -

§ 42355.51........ - 19 -

§ 42355.51(b)(1)........ - 5 -

§ 42355.51(d)(4)........ - 5 -

§42355.51(d)(2)........ - 5 -

**Regulations**

16 C.F.R.

§ 260.12(d) ........................................................................................................ - 23 -

§ 260.2 ..........................................................................................................- 2 -, - 4 -

**Other Authorities**

2021 Cal. Legis. Serv. Ch. 507 (SB 343) ...................................................................... - 20 -

SB 343 Senate Bill Analysis, August 31, 2021 ........................................................... - 23 -

## I. INTRODUCTION

Plaintiff Greenpeace, Inc.'s ("Greenpeace") Second Amended Complaint ("SAC") alleges that Walmart Inc. ("Walmart") advertises and labels a variety of single-use plastic products as recyclable (the "Products"), without maintaining records that substantiate that the Products are actually recyclable. SAC at ¶ 1.[1] Walmart's conduct violates California's Environmental Marketing Claims Act ("EMCA"), which requires companies to maintain adequate substantiation of environmental marketing claims and to provide that substantiation to any member of the public upon request. Cal. Business & Professions Code ("B&P") § 17580(a). Walmart's unlawful and unfair business practices have frustrated Greenpeace's mission and caused Greenpeace to spend money and staff time investigating and counteracting Walmart's unsubstantiated recycling claims. SAC, ¶¶ 7, 14-26, 64, 72-73, 82-83. By alleging that it has diverted resources due to Walmart's unlawful and unfair conduct, Greenpeace has adequately alleged that it lost money or property as a result of Walmart's violations of law and has thus satisfied the standing requirements of California's Unfair Competition Law ("UCL"). *See* B&P § 17203.

In its Order granting Walmart's Motion to Dismiss the First Amended Complaint ("FAC"), the Court acknowledged that an organization can have standing under the UCL based on a diversion of resources where such a claim "is not based on a misrepresentation to a consumer." Order, p. 3 [ECF No. 40]. However, finding that the claims in the FAC were "based solely on Walmart's alleged misrepresentations to consumers," the Court ruled that Greenpeace lacked standing under the UCL since it had not pled that it had relied on those representations. *Ibid.* The SAC cures the standing deficiency identified by the Court by divorcing Greenpeace's claims from any misrepresentation to any third party. The causal link between Walmart's unlawful and unfair failure to substantiate its recycling claims and the organizational harm to Greenpeace is direct: had Walmart maintained in written form information that substantiates its recycling claims and provided such information to Greenpeace as required by law, Greenpeace would not have been

[1] The SAC defines the Products as plastic products or plastic packaging that are: (A) sold under Defendant's own private label brands; (B) labeled as "recyclable"; and (C) either made from plastic #3-7, unidentified plastic, or packaged in a plastic shrink sleeve. SAC, ¶ 2. The SAC also provides numerous specific examples and pictures of the Products. *Id.*, fn. 3. and ¶¶ 21, 51, 56, 58, and 60.

forced to divert time and money toward additional efforts to obtain such substantiation. Because Greenpeace does not allege misrepresentation under the fraudulent prong of the UCL or otherwise, Greenpeace is not required to show that it, or any third party, was deceived or relied on Walmart's recycling labels. Walmart's standing arguments to the contrary disregard this key distinction that differentiates the SAC from the FAC. *See* MTD, Sec. I.

Walmart is also wrong that "recyclability" claims are not subject to the substantiation requirement of EMCA. *See* MTD at 20:2–21:2. The plain language of EMCA requires such substantiation for any claim that a consumer good "is not harmful to, or is beneficial to, the natural environment." B&P § 17580(a). By definition, a recyclable claim meets this standard since the entire point of recycling is to ensure that products and packaging become part of a closed loop, or circular economy, so that such products and packaging are made into new raw materials and do not end up in the environment (hence the "chasing arrows" symbol that is commonly used to denote recyclability). Lest there be any doubt, EMCA specifically requires the substantiation to include, if applicable, whether the consumer good conforms with applicable standards for the use of the terms "recycled" or "recyclable." *Id*. § 17580(a)(5). Had the Legislature viewed recyclability claims outside the purview of the statute, it surely would not have specifically enumerated such claims as being within the scope of the substantiation obligation. Walmart's effort to contradict this plain language with legislative history reflecting the California Legislature's intent to make California law consistent with the Federal Trade Commission's ("FTC") environmental marketing guidelines (the "Green Guides") is unconvincing, particularly given that the Green Guides themselves have always required that recycling claims be substantiated. 16 C.F.R. § 260.2.

Walmart also argues that private parties like Greenpeace cannot enforce EMCA's substantiation requirements. MTD at 21:3–22:2. However, the UCL "borrows" violations of other laws and treats them as "unlawful" practices independently actionable under the UCL. *See Abbott Laboratories v. Superior Court*, 9 Cal.5th 642, 651 (2020). The unfair prong of the UCL prohibits business practices that are against public policy (*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (Cal. 1999)), that are "immoral, unethical, oppressive, unscrupulous, or substantially injurious," (*Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257

(2010)), or that cause injuries to consumers that are not outweighed by countervailing benefits (*Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394, 1405 (2006)). Walmart offers no authority for the proposition that EMCA is somehow exempt from a UCL unlawful claim, or that the public policies underlying EMCA and the other laws cited by Greenpeace cannot form the basis for a UCL unfair claim.

Finally, Walmart re-hashes arguments from its last motion to dismiss that Greenpeace has not alleged facts showing that it has a right to injunctive relief. Walmart's arguments ignore the allegations of the SAC, which establish that injunctive relief is necessary to prevent Greenpeace from suffering ongoing harm to combat Walmart's unsubstantiated representations that the Products are recyclable in California. SAC, ¶¶ 6, 27, 65, 72, 82.

## II. <u>LEGAL BACKGROUND</u>

The Legislature of California has declared "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." Cal. Pub. Res. Code § 42355.5. The policy is based on the Legislature's finding that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs." *Id*. § 42355; SAC, ¶ 34.

Similarly, EMCA and the Green Guides require companies to substantiate environmental marketing claims. Pursuant to EMCA, "[a]ny person who represents in advertising or on the label or container of a consumer good that the consumer good that it manufactures or distributes is not harmful to, or is beneficial to, the natural environment, through use of such terms as 'environmental choice,' 'ecologically friendly,' 'earth friendly,' 'environmentally friendly,' 'ecologically sound,' 'environmentally sound,' 'environmentally safe,' 'ecologically safe,' 'environmentally lite,' 'green product,' or any other like term, shall maintain in written form in its records…information and documentation supporting the validity of the representation." B&P § 17580(a). EMCA specifically requires companies to maintain information and documentation as to whether such products or packaging conform with the uniform standards contained in the Green

Guides for use of the terms "recycled" or "recyclable." *Id*. § 17580(a)(5). EMCA also requires that companies making environmental claims like recyclability maintain the following records in written form: (1) the reasons why a company believes the representation to be true; (2) any significant adverse environmental impacts directly associated with the production, distribution, use, and disposal of the consumer good; (3) any measures that are taken by the company to reduce the environmental impacts directly associated with the production, distribution, and disposal of the consumer good; and (4) violations of any federal, state, or local permits directly associated with the production or distribution of the consumer good. *Id*., § 17580(a)(1)-(4). Greenpeace collectively refers to all of this required documentation as "substantiation" throughout the SAC and herein.

The California Legislature declared its intent that the information and documentation supporting the validity of any environmental marketing claims shall be fully disclosed to the public. B&P § 17580(d). To that end, EMCA requires that companies making environmental claims provide all the information and documentation that must be maintained pursuant B&P § 17580 to any member of the public upon request. *Id*., § 17580(b); *see also* SAC, ¶¶ 35, 68.

The Green Guides likewise require marketers to ensure that their recyclability claims are supported by competent and reliable scientific evidence that substantiate that the claims are true. 16 C.F.R. § 260.2. The Green Guides state "[s]uch evidence should be sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that each of the marketing claims is true." *Ibid.*

California and federal law establish clear metrics to determine whether a product is recyclable. According to the Green Guides, "[a] product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a). This definition encompasses the three prongs of recyclability that are commonly used in the solid waste industry: (1) accessibility of recycling programs ("through an established recycling program"); (2) sortability for recovery ("collected, separated, or otherwise recovered from the waste stream"); and (3) end markets ("for reuse or use in manufacturing or

assembling another item”). SAC, ¶ 37. The California Public Resources Code similarly defines recycling as “the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace.” Cal. Pub. Res. Code § 40180; SAC, ¶¶ 37, 70.

The Governor of California signed Senate Bill 343 into law on October 5, 2021. SB 343 confirms that what matters in California for labeling purposes is whether products and packaging are actually recycled in practice. *See, e.g.*, Cal. Pub. Res. Code § 42355.5(b) (“it is the public policy of the state that claims related to the recyclability of a product or packaging be truthful *in practice* and accurate.”) (emphasis added); *id.* § 42355.51(b) (1) (recycling representation is deceptive unless the product or packaging both satisfies anticipated future regulations and “is of a material type and form that routinely becomes feedstock used in the production of new products or packaging”); *id.* § 42355.51(d)(2) (product or packaging is not considered recyclable unless made of a “material type and form” that is collected for recycling, and “sorted into defined streams for recycling . . . with the defined streams sent to and reclaimed at a reclaiming facility,” for at least 60 percent of the population); *id.* § 42355.51(d)(4) (product or packaging recyclable if “not less than 75 percent of the product or packaging sorted and aggregated in the state is reprocessed into new products or packaging.”). SB 343 also amended EMCA by: (1) adding “through the use of a chasing arrows symbol or by otherwise directing a consumer to recycle a consumer good” to the enumerated examples of representations that a consumer good is “not harmful to, or is beneficial to, the natural environment” and must therefore be substantiated, and (2) adding whether a consumer good conforms to California’s new recycling guidelines as an enumerated item that must be included in a company’s substantiation.[2]

[2] Walmart contends that much of SB 343 does not apply until January 2024 at the earliest. MTD at 2:21. SB 343 does contemplate future rulemaking that will delay some of its implementation. However, many of the law’s provisions – including its expression of a legislative policy that recycling claims be truthful in practice, its confirmation that recyclability is tied to the actual production of new products or packaging, and its clarification regarding EMCA’s substantiation obligations – take effect immediately.

## III. FACTS

All of the following facts are presumed true for purposes of the MTD. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Walmart advertises, markets, and sells the Products as recyclable without maintaining written records that substantiate its claims. SAC, ¶¶ 1, 31.

Greenpeace is a non-profit public interest organization that works to combat plastic pollution and other environmental harms, to protect California coasts from harms related to plastic pollution, and to ensure that companies do not falsely tout the environmental benefits of their products. *Id*., ¶ 7. In late 2018, Greenpeace began research on the plastic and recycling policies and practices of Walmart and other retailers. *Id*., ¶¶ 14-24. Greenpeace spent money, staff time, and other resources organizing its supporters to raise awareness of Walmart's contribution to the proliferation of plastic pollution. *Id*., ¶14. Greenpeace's California staff specifically investigated Walmart and sought substantiation that the Products are recyclable. *Id*., ¶¶ 15-26. When Walmart failed to provide such substantiation, Greenpeace staff continued to spend time, money, and other organizational resources to convince Walmart to provide such substantiation and to discourage Walmart from labeling the Products as recyclable without substantiation. *Id*., ¶¶ 15-26, 64, 73. Greenpeace expended significant time and resources contacting Walmart and imploring it to substantiate its recycling claims and comply with its own public commitments and legal obligations. *Id*., ¶¶ 14-16, 25, 70. Walmart failed to do so.

As a result of Walmart's failure to substantiate its recycling claims, Greenpeace is forced to divert time and resources it would have spent engaging with other corporations or on other policy initiatives. *Id*., ¶¶ 17-26. The resources that Greenpeace diverted to specifically investigate and communicate with Walmart came at the expense of spending money, staff time and other organizational resources on its California and federal legislative initiatives, such as the national bottle deposit program and its work to pass the Break Free From Plastic Pollution Act. *Id*.

The SAC does not seek any monetary relief. Rather, Greenpeace seeks an injunction to require Walmart to substantiate its recycling representations or to prohibit Walmart from marketing its Products as recyclable without providing substantiation. SAC, Prayer for Relief. Absent such relief, Greenpeace will suffer irreparable harm because it will be forced to continue to spend

money, staff time, and other organizational resources to combat Walmart's unsubstantiated recycling claims. *Id.*, ¶¶ 6, 7, 14-20, 22-23, 26-27, 31, 65, 72-73, 83. If Greenpeace is unsuccessful, Walmart will be allowed to continue marketing Products as recyclable without maintaining records to substantiate those claims. This failure will continue to negatively impact Greenpeace's efforts to protect natural resources and to promote legitimate recycling. *Id.*, ¶¶ 27, 65, 72, 82.

## IV. PROCEDURAL BACKGROUND

On April 28, 2021, Walmart filed its motion to dismiss the FAC alleging that (1) Greenpeace lacked standing to bring a UCL claim; (2) the FAC failed to satisfy Rule 8(a) and Rule 9(b); and (3) Greenpeace failed to allege a basis for injunctive relief. ECF No. 26. On September 20, 2021, this Court granted Walmart's motion to dismiss the FAC with leave to amend, finding that Greenpeace did not have standing to bring a UCL claim for misrepresentation because Greenpeace did not rely on Walmart's representations and was not deceived by them. ECF No. 40. The Court based its ruling on its finding that Greenpeace's claims were "based solely on Walmart's alleged misrepresentations to consumers," finding that "[u]nder such circumstances" Greenpeace must plead reliance on those statements to establish standing under the UCL. However, the Court recognized that an organization like Greenpeace can have standing under the UCL based on its diversion of resources to counter unlawful conduct that is "not based on a misrepresentation to a consumer." *Id.*, p. 3 (*citing Animal Legal Defense Fund v. LT Napa Partners* LLC, 234 Cal.App.4th 1270, 1279-80 (2015)).

Greenpeace filed the SAC on October 15, 2021. ECF No. 41. The SAC addresses the Court's Order by alleging violations of only the unfair and unlawful prongs of the UCL on the ground that Walmart failed to substantiate its recyclable claims as required by EMCA. Because Greenpeace is no longer pleading a deceptive practices claim, reliance is not required.[3]

[3] By quoting selectively from the SAC, Walmart seeks to portray it as a slight re-framing of the FAC. *See, e.g.*, MTD, pp. 3:4-10 and 6:10-17. Attached as Exhibit 1 to the Declaration of Howard Hirsch in support of Plaintiff's Opposition to Walmart's Motion to Dismiss ("Hirsch Decl.") is a redlined version of the SAC demonstrating the extensive changes made from the FAC.

## V. PLEADING STANDARD

To survive a motion to dismiss, the SAC must contain sufficient factual matter, accepted as true, to "state a claim of relief that is plausible on its face." *See Ashcroft*, 556 U.S. at 678. "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In reviewing the plausibility of a complaint, courts must accept the factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

## VI. ARGUMENT

### A. Greenpeace Has Standing Under the UCL.

To have standing under the UCL, an organization must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (Cal. 2011) (emphasis in original). California courts have recognized that there are "innumerable ways" to demonstrate economic injury from unfair competition. *Capello v. Walmart Inc*., 394 F.Supp.3d 1015, 1019 (N.D. Cal. 2019). Greenpeace has met these requirements by alleging that it diverted resources and spent organizational time and money to investigate and counter Walmart's unlawful and unfair failure to substantiate its recycling claims. Walmart's arguments to the contrary ignore the allegations of the SAC and UCL standing jurisprudence.

#### 1. The Challenged Conduct Is An Unlawful And Unfair Failure To Substantiate That Is Not Tied To Consumer Misrepresentations And Thus Does Not Require Reliance.

Walmart mischaracterizes the SAC by alleging that Greenpeace's claims are tied to deception and that Greenpeace is thus required to plead reliance. MTD at 9:3-11, 9:16-10:14. To the contrary, the SAC alleges claims under the UCL for unlawful and unfair business practices because Walmart failed to maintain and provide the written records required under EMCA to substantiate its recycling claims. Because the SAC no longer alleges a UCL claim based on fraud, it does not need to allege reliance on any misrepresentation.

Reliance is only required where a plaintiff's claims are based on misrepresentation under the UCL. *Svenson v. Google, Inc*., No. 13-cv-04080-BLF, 2015 U.S. Dist. LEXIS 43902 at *9-10 (N.D. Cal. April 1, 2015). The Court's ruling on Walmart's motion to dismiss the FAC acknowledged this point [ECF No. 40, p. 3], which Walmart itself concedes (MTD at 10:12-14). Indeed, "[w]hen a plaintiff alleges a different type of unfair competition not based on a misrepresentation…courts have dispensed with the actual reliance requirement." *Cappello*, 394 F.Supp.3d at 1020.

In *Capello*, plaintiff customers brought a putative class action against Walmart for disclosing customers' identities to Facebook without their consent. Plaintiffs' initial complaint alleged violations of each of the three UCL prongs: unlawful, unfair and fraudulent. Walmart successfully sought dismissal of plaintiffs' UCL claims in its original complaint because the Court found that plaintiffs had failed to allege reliance. *Cappello v. Walmart Inc*., No. 18-CV-06678-RS, 2019 U.S. Dist. LEXIS 237326 at *5 (N.D. Cal., Apr. 5, 2019). In their amended complaint, plaintiffs dropped their deceptive UCL claim, and instead alleged unlawful and unfair UCL claims. The court found that "[b]ecause plaintiffs now ground their argument for UCL standing on a breach of the contractual privacy protections…this constitutes a non-misrepresentation-based argument that does not require a showing of reliance." *Id.*; *see also Kissel v. Code 42 Software, Inc.*, No. 8:15-cv-01936, 2016 U.S. Dist. LEXIS 184368, at *8 (C.D. Cal. Apr. 14, 2016) ("[T]he California Supreme Court has consistently indicated that this concept of reliance may not apply to UCL claims that do not sound in fraud."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 n. 9 (Cal. 2009) (noting in a UCL deceptive case that the court "need express no views concerning the proper construction of the cause requirement in other types of cases.").

Imposing a reliance requirement is nonsensical where, as here, a UCL claim is not tethered to any misrepresentation. Simply put, Greenpeace need not allege that it relied to its detriment on Walmart's alleged misrepresentations, or that any consumer did, because those misrepresentations are no longer an element of Greenpeace's claims. Instead, standing is satisfied by alleging a causal connection between a loss of money or property (Greenpeace's diversion of resources) and the unlawful conduct (Walmart's failure to maintain in written form records that substantiate its

recycling claims and its refusal to provide that information to Greenpeace upon request).

Walmart does not cite to a single case in which a court has imposed a reliance requirement for a UCL claim that is not tied to a misrepresentation claim, and Greenpeace is aware of none. Instead, Walmart relies upon cases that are easily distinguishable. For instance, Walmart cites *LegalForce RAPC Worldwide P.C. v. DeMassa* (MTD at 10:10-12), but in that case the court found that reliance was only required to the extent plaintiff's claims were based on alleged misrepresentations that the defendant employed attorneys. No. 18-cv-00043-MMC, 2020 U.S. Dist. LEXIS 148021, at *11-12 (N.D. Cal. Aug. 17, 2020). The court explicitly acknowledged that, to the extent plaintiff's unlawful claim under the UCL was based on an unlawful practice—specifically, the unauthorized practice of law—plaintiff was not barred from pursuing such claims, "given that defendant can engage in the unauthorized practice of law irrespective of whether a consumer is misled as to the defendant's lack of status as an attorney." *Id.* at *12. Likewise, absent relief from the Court, Walmart will be permitted to continue to make unsubstantiated recycling claims regardless of whether any consumer is misled by those labels. Thus, *LegalForce* supports Greenpeace's standing here.

Because the SAC does not contain any cause of action based on Walmart's misrepresentations, Greenpeace does not need to plead or prove actual reliance. Greenpeace brings straightforward unlawful and unfair claims based on Walmart's failure to maintain and provide written records that substantiate its recycling claims and has adequately alleged that Greenpeace itself suffered economic harm as a result of that failure to substantiate. This economic harm to Greenpeace caused by Walmart's violations of California law has nothing to do with deception and confers standing on Greenpeace under the UCL.[4]

[4] For this same reason, Walmart's claim that the SAC should be dismissed for failing to satisfy the heightened pleading standard of Rule 9(b) is misplaced. MTD at 10:15-23. Because the SAC does not allege any claims grounded in fraud, this standard and the cases cited by Walmart are inapplicable. *See Ely Holdings Ltd v. O'Keeffe's, Inc.*, No. 18-cv-06721-JCS, 2019 U.S. Dist. LEXIS 135805 (N.D. Cal. Aug. 12, 2019) (claims of knowing and intentional misrepresentations required heightened Rule 9(b) pleading standard) and *Jiles v. US Bank NA*, No. CV 12-10397-SJO, 2013 WL 12134143, at *4 (C.D. Cal. Feb. 11, 2013) (holding averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged).

**2. Greenpeace Adequately Alleges That It Lost Money Due To Walmart's Failure To Substantiate Its Recyclability Claims.**

Walmart further argues that the SAC fails because Greenpeace has not alleged that it lost money or property due to Walmart's failure to substantiate, but this argument disregards the detailed allegations in the SAC. *See* MTD at 10:26 – 13:14 and 17:18 – 19:26.

First, Walmart argues that the SAC is "virtually devoid of facts" to support Greenpeace's claim that Walmart has failed to substantiate its recycling claims. MTD at 11:4-5. For instance, while conceding multiple times that the law does not establish a formal procedure for requesting substantiation, Walmart faults Greenpeace for failing to allege that it complied with this non-existent procedural requirement. MTD at 6:20-21 and 11:6-8. As Walmart acknowledges, the SAC alleges that Greenpeace requested such substantiation on numerous occasions (MTD at 11:5-6), and the SAC goes on to detail numerous examples of such substantiation requests. SAC, ¶¶ 15-25, 64, 70, 73, 83. Nothing more is required under either EMCA or UCL pleading standards.

Next, Walmart argues that, to the extent Greenpeace spent resources seeking substantiation from Walmart, those expenditures could not have been caused by Walmart's failure to substantiate since they happened before Greenpeace learned that Walmart refused to provide substantiation. MTD at 11:21–12:5. Had Walmart complied with its obligation under EMCA by maintain written records substantiating its recycling claims and promptly providing those records to Greenpeace upon request, Greenpeace would lack standing to sue Walmart for its time and expenses incurred seeking such substantiation (nor would any such claim have merit). However, having refused to provide such substantiation, Walmart's efforts to parse time spent by Greenpeace before and after Greenpeace initially requested such substantiation are irrelevant. In any event, Walmart concedes (as it must) that Greenpeace has alleged a loss of organizational time and money after requesting substantiation from Walmart (MTD at 12:6-28), which suffices to confer standing on Greenpeace under the UCL.

Walmart also argues that the time and expenses incurred by Greenpeace were not caused by Walmart's refusal to substantiate its recycling claims since Greenpeace would have spent those organizational resources anyway as part of Greenpeace's overall mission of addressing plastic pollution. MTD at 12:6–28 and 17:19–19:26. To be sure, Greenpeace would have spent time and

money combatting the proliferation of plastic irrespective of how Walmart responded to Greenpeace's substantiation request. However, Walmart's failure to maintain and provide such substantiation forced Greenpeace to divert resources from its other efforts in order to address Walmart's violations of California law. SAC, ¶¶ 16-31. In fact, the SAC provides specific examples of Greenpeace's other programmatic efforts that suffered from the diversion of resources caused by Walmart's failure to substantiate its recycling claims. *Id*., ¶¶ 17, 23-26, 73, 83.

In support of its argument that Greenpeace has not expended additional resources beyond its ordinary work in combatting plastic pollution, Walmart cites to a line of cases involving multiple litigation efforts against Sanderson Farms' use of antibiotics. MTD at 17:19-19:26. The Sanderson Farms cases are distinguishable as they involved serial attempts by the same organizational plaintiffs to challenge alleged misrepresentations that had not caused them harm.

In the first of these related decisions, the district court initially found at the pleading stage that the organizations had standing for a UCL fraudulent claim because they had alleged that they diverted resources from their government watchdog work to respond to the advertising at issue. *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1010-12 (N.D. Cal. 2018). However, the case was ultimately dismissed for lack of standing after extensive discovery revealed that the plaintiffs' allegations did not comport with the facts. *Friends of the Earth v. Sanderson Farms, Inc.*, 2021 U.S. App. LEXIS 9384, at *6 (9th Cir. 2021). In particular, written discovery and depositions revealed that, contrary to the allegations in the pleadings, the organizations had spent resources encouraging purchasers to avoid Sanderson's products due to the use of antibiotics by sending action alerts and other blog posts *prior to* learning of the advertisements at issue. *Id*. Worse yet for the plaintiffs, they did not take *any* further action as a result of the advertisements *after* learning of them. *Id*.

Having failed at their first attempt, the same plaintiffs' lawyers enlisted the same and other organizational plaintiffs to pursue the same claims against Sanderson Farms in a subsequent lawsuit. *See In Defense of Animals v. Sanderson Farms, Inc.*, No. 20-cv-05293-RS, 2021 U.S. Dist. LEXIS 177626 (N.D. Cal. Sept 17, 2021). However, the plaintiffs' claims in *In Defense of Animals* suffered from the same problems as *Friends of the Earth*—mainly, that the organizations

lacked standing because they did not divert resources as a result of Sanderson's advertising. *Id*. at *2. In addition, because plaintiffs' claims were duplicative of the claims brought in *Friends of the Earth*, the plaintiffs' claims in *In Defense of Animals* were precluded. *Id*. The Court also found that the new plaintiff IDA "[did] not adequately plead any concrete ways in which its mission has been frustrated. It only pleads facts showing the abstract interests it fights for have been set back by Sanderson's misleading advertising." *Id*. at *5. Further, the complaint did not aver any frustration of IDA's mission, which did not permit a logical conclusion that diversion was required to prevent some other injury to IDA's activities. *Id*. The Court ultimately found that IDA's claims to standing "were plainly manufactured for this suit." *Id*. at *7.

Here, by contrast, Greenpeace is not trying to manufacture standing, is not pursuing duplicative claims that were already dismissed in another case and is not alleging a misrepresentation claim. The SAC sets forth precisely how Greenpeace took specific steps to investigate and address Walmart's unlawful failure to substantiate. SAC, ¶¶ 5, 15-26, 66-83. Although a part of Greenpeace's mission is to reduce plastic pollution, Greenpeace took actions it otherwise would not have taken to investigate Walmart's failure to maintain written records supporting its recycling claims, including diverting resources it would have spent elsewhere requesting Walmart's records that substantiate its recycling claims and continuing to engage with Walmart on these issues. *Ibid*. *Cf. In Defense of Animals*, 2021 U.S. Dist. LEXIS 177626 at *5 (plaintiff failed to include "specific averments about what it would have done with its time and money otherwise"). Greenpeace has thus alleged facts to establish standing under the UCL.

Walmart also cites *Mayron v. Google LLC*, 54 Cal. App. 5th 566 (2020) in support of its standing argument (MTD at 11 and 12), but *Mayron* is easily distinguishable. In that putative class action, plaintiff challenged Google's data storage charges under the UCL based on a California law requiring disclosures for automatic renewal charges. *Mayron*, 54 Cal. App. 5th at 571. The Court found that, to establish standing, plaintiff would have needed to allege that he would not have ordered Google storage had the disclosures been provided, or that he would have canceled the storage if it had been easier to do so. *Id*. However, Plaintiff made no such allegations, which the Court found "suggests he would have purchased and maintained the added Google Drive capacity

even if Google had complied with the automatic renewal law." *Id*. Essentially, the court in *Mayron* found that there was no causal connection between the injury and the unlawful business practice because the plaintiff would have paid the same amount whether or not Google complied with the automatic renewal law. *Id*. at 575.[5] By contrast, the SAC details Greenpeace's expenditures as a result of Walmart's failure to substantiate—steps that it would not have needed to take absent Walmart's violation of the law. SAC, ¶¶ 15--26, 51-65, 70-73, 82-83. This harm suffered by Greenpeace and caused by Walmart's violations of law suffices for UCL standing.

Finally, Walmart suggests that Greenpeace's expenditures could not have been caused by Walmart's failure to maintain and provide substantiation of its recycling claims because Greenpeace already suspected those claims to be false. MTD at 12:6-28. This is another red herring since, irrespective of Greenpeace's suspicions, Greenpeace would not have been forced to spend time and money pursuing Walmart to obtain legally required substantiation had Walmart simply complied with EMCA in the first place.

Notably, all of the arguments raised by Walmart would apply equally to the plaintiff in *Animal Legal Defense Fund v. LT NAPA Partners LLC*, 234 Cal. App. 4th 1270 (2015) ("*ALDF I*"), a case Walmart is unable to distinguish. In *ALDF I*, the California Court of Appeal held that an organizational plaintiff had standing to pursue a restaurant under the UCL for serving foie gras in violation of the law. 234 Cal. App. 4th at 1283-84. The Court found that plaintiff's expenditure of time and money qualified for purposes of UCL standing even though, as here: (1) the organization spent time and money both before and after suspecting defendant's unlawful conduct (as will be the case in virtually every UCL case), (2) the expenditure of time and money was consistent with the organization's longstanding animal protection mission, and (3) the investigation was prompted by the plaintiff's suspicions that the defendant was violating the law. Nevertheless, relying on *Kwikset*, the court determined that the plaintiff had standing because it lost money to counteract defendant's violation of law, which frustrated the organization's mission of prohibiting the sale of

---

[5] Notably, *Mayron* is also one of a line of cases that have split as to the proper application of the UCL's standing requirement in the context of automatic subscription renewal laws. *See Myron*, 54 Cal. App. 4th at 576 (discussing and disagreeing with two federal district court cases and an unpublished Ninth Circuit case).

foie gras. *Id*.

Just as in *ALDF I*, Greenpeace brings claims under the unlawful and unfair prongs of the UCL, and the SAC provides detailed accounts of the money and time it has spent engaging with Walmart as a direct result of Walmart's continued failure to substantiate its recycling claims. Similar to the plaintiff in *ALDF I,* Greenpeace suspected that defendant was selling products as recyclable without the ability to substantiate such claims in violation of a statute, hired an investigator to determine whether that was true, diverted staff resources to evaluate the results of the investigation, and directly contacted Defendant seeking substantiation of its recycling claims. SAC, ¶¶ 13-25. Thus, Greenpeace has alleged it lost money, staff time, and other organizational resources to counteract Walmart's failure to maintain and provide written substantiation for its recycling claims. SAC, ¶¶ 13-25.

**3. The UCL Allows Organizational Standing And Greenpeace Has Organizational Standing To Bring Claims Under The UCL.**

Ultimately, Walmart's standing arguments all depend on its contention that there is no such thing as organizational standing under the UCL. *See* MTD at 13:16 – 17:17. To prevail, Walmart must convince the Court to overturn the doctrine of organizational standing altogether, as this case is indistinguishable from other cases in which courts have found UCL standing for an organization pursuing a defendant for violating laws in a manner that harms the organization's mission. The Court should decline Walmart's invitation to depart from UCL jurisprudence in this fashion.

California and federal courts have affirmed that organizations have standing to pursue UCL claims on their own behalf where, as here, an organization has directly suffered an injury in fact due to a defendant's unfair or unlawful conduct. *See, e.g., ALDF I*, 234 Cal. App. 4th at 1270; *Animal Legal Defense Fund v. Great Bull Run, LLC*, No. 14-cv-01171-MEJ, 2014 U.S. Dist. LEXIS 78367 (N.D. Cal. June 6, 2014) ("*ALDF II*") (organization had standing to bring a UCL claim for violation of animal cruelty laws); *People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-04301, 2016 U.S. Dist. LEXIS 11006 (N.D. Cal. Jan. 29, 2016); *S. Cal. Hous. Rights Ctr. v. Ass'n & Los Feliz Towers Homeowners Ass'n Bd. of Dirs.*, 426 F. Supp. 2d 1061 (C.D. Cal 2005). Under the UCL, a plaintiff can establish standing by showing a

loss or deprivation of money or property that "was the result of, i.e., *caused by*" the unfair business practice. *Kwikset*, 51 Cal. 4th at 320. When an organization is forced to divert its resources to identify and counteract unlawful activity that frustrates its mission, the organization has suffered an injury in fact sufficient to warrant standing. *ALDF II*, 2014 U.S. Dist. LEXIS 78367, at *12. The proper focus of the inquiry is whether the plaintiff undertook the expenditures in response to, and to counteract, the effects of the defendant's alleged misconduct. *ALDF I*, 234 Cal. App. 4th at 1283. Here, Walmart's failure to maintain and provide the required substantiation regarding the recyclability of its Products has directly injured Greenpeace because it has spent a significant amount of money, staff time, and other organizational resources investigating and counteracting Walmart's violations of California law. Ultimately, Walmart's contentions that Greenpeace cannot have standing under the UCL boils down to Walmart's belief that an organization may never bring a UCL claim on behalf of itself. Walmart cannot point to any authority supporting such an outcome, which would conflict with the plain language of the UCL and authorities cited herein.

In seeking to overturn organizational standing under the UCL, Walmart notes that the California Supreme Court has expressly held that the federal doctrine of "associational standing" conflicts with the amended UCL. MTD at 13:19 (*citing Amalgamated Transit Union, Loc. 1756, ALF-CIO v. Sup. Ct.*, 46 Cal. 4th 993 (2009)). This finding is immaterial to the present case. Greenpeace is not bringing this case on behalf of its members, nor on behalf of any third parties, despite Walmart's claims to the contrary. Thus, Walmart's continued reliance on *Amalgamated Transit* is unavailing. The UCL requires that a plaintiff lost money or property as a result of the defendant's conduct. The UCL does not expressly forbid an organization from bringing a UCL claim on behalf of itself, and the idea that an organization is barred from bringing an unlawful or unfair claim when the organization itself has suffered an injury in fact runs contrary to both law and public policy. *See S. Cal. Hous. Rights Ctr.*, 426 F. Supp. 2d 1061 (2005) (finding that the plaintiff organization has standing "because it presents evidence of actual injury based on loss of financial resources in investigating this claim and diversion of staff time from other cases to investigate the allegations here...(which) frustrates (plaintiff organization's) goals.").

Relying on *California Med. Assoc. v. Aetna Health of Cal., Inc.*, 63 Cal. App. 5th 660

(2021) ("*CMA*"), Walmart claims that Greenpeace lacks standing because it was not directly harmed by Walmart's conduct. MTD at 15:7-17:17. In *CMA*, an organization brought a UCL claim on behalf of its members, despite the explicit prohibition on doing so established by *Amalgamated Transit*. The Court held that, in order to have standing to bring a UCL claim, an organization must allege that the organization itself, and not just its members, lost money or property. *CMA*, 63 Cal. App. 5th at 667. The Court in *CMA* distinguished *ALDF* for the same reasons Greenpeace's case is distinguishable from both *Amalgamed Transit* and *CMA*: "[t]he key factual and procedural distinction is that the plaintiff in [ALDF] did not bring a representative action, as CMA did in this case." *Id*. at 669.

The same is true here. The claims in the SAC are not based upon deception, and are not based on an injury to consumers, recycling facilities, or Walmart's competitors. To be sure, the SAC alleges facts about injuries to each of those constituents to highlight the downstream impacts of Walmart's practice of making false and unsubstantiated recycling claims. *See, e.g.*, SAC, ¶¶ 27, 63, 65, 72 and 81. However, for standing purposes, Greenpeace has alleged it suffered an *economic injury* because it has been forced to continue expending financial resources and staff time *as a result of* Walmart's failure to maintain and provide written records that substantiate its recyclability claims. *Id.*, ¶¶15-27.

**B. Walmart Is Required To Substantiate Its Recyclability Claims Under EMCA.**

By its plain language, EMCA requires companies like Walmart to maintain substantiation of their recycling claims and to provide that substantiation to any member of the public upon request. B&P § 17580(a). Nevertheless, citing to legislative history that does not support its position, Walmart argues that EMCA's substantiation obligation does not apply to recycling claims. The Court should reject Walmart's effort to rewrite the statute.

Since at least 1990, EMCA has required substantiation with respect to any representation that a consumer good "is not harmful to, or is beneficial to, the natural environment . . . ." B&P § 17580(a). By any reasonable interpretation, a representation that a product is recyclable qualifies under this standard since the only benefit to recycling is to minimize a product's impact on the environment by re-using that product's raw materials to make new products instead of disposing of

them in the natural environment. EMCA enumerates examples of the types of terms that are covered by its substantiation obligation: "'environmental choice,' 'ecologically friendly,' 'earth friendly,' 'environmentally friendly,' 'ecologically sound,' 'environmentally sound,' 'environmentally safe,' 'ecologically safe,' 'environmentally lite,' [and] 'green product.'" *Ibid.* While recyclability is not listed, the statute makes it clear that the list is non-exhaustive and that the obligation to substantiate applies to "any other like term." *Ibid.*

What is more, since at least 1990 the statute has also specified that the documentation to be maintained must include whether or not the consumer good is recyclable. B&P § 17580(a)(5). Taken together, the plain language of these statutory provisions evinces a clear intent by the Legislature to require substantiation of recycling claims such as those at issue here.

Well-settled principles of statutory construction support this interpretation. According to the doctrine of *ejusdem generis,* when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include those items of the same class as those listed. *See e.g*., *Rizo v. Yovino*, 950 F.3d 1217, 1225 (9th Cir. 2020) (employing *ejusdem generis* to Equal Pay Act list of specific exceptions related to discrimination to find that "any other factor other than sex" to refer to job-related factors). Here, EMCA sets forth examples of the types of terms that require substantiation. All these terms relate to environmental claims representing that a product is beneficial to, or not harmful to, the environment. By culminating the list of specific examples of terms associated with positive environmental impacts with the general phrase or "any other like term," the Legislature clearly meant to embrace "objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001). If the Legislature had meant only to include the specific terms listed, it would not have included the final phrase "or any other like term." *See, e.g.*, *Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning."); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995). The term "recyclable" is a term that represents that a product or packaging is not harmful to, or is beneficial to, the natural environment, and is therefore covered under B&P § 17580(a). This is further exemplified by the fact that the Legislature specifically included a subsection that requires

substantiation for use of the terms "recycled" and "recyclable." B&P § 17580(a)(5).

Walmart's argument that EMCA's substantiation obligation does not extend to recyclability claims is based on its convoluted interpretation of legislative history. *See* MTD at 20:2–21:2. However, since the plain language of the statute is clear, there is no need to resort to legislative history to resolve this dispute. *See, e.g., Fournier v. Sebelius*, 718 F.3d 110, 1123 (9th Cir. 2013) ("When a statute is plain on its face, 'we ordinarily do not look to legislative history as a guide to its meaning.'"). In any event, Walmart mis-reads the legislative record.

First, Walmart cites to the Legislature's 2021 passage of SB 343 to support its argument that EMCA did not previously require companies to substantiate their recycling claims. SB 343 creates new statewide criteria for recyclability labels and directs CalRecycle (the state agency responsible for overseeing California's recycling programs) to establish regulations implementing those criteria. B&P Code §§ 17580(a)(6), 17580(e), 17580.5, Cal. Pub. Res. Code § 42355.51. Most pertinent here, SB 343 amended EMCA by adding the use of a chasing arrows symbol or recycling instructions as specific examples of representations that a consumer good is "not harmful to, or is beneficial to, the natural environment" and must therefore be substantiated, and by adding whether a consumer good conforms to California's new recycling guidelines as an enumerated item that must be included in a company's substantiation.

Contrary to Walmart's argument, these amendments do not mean that the Legislature previously did not view a recycling label as a representation that a product is not harmful to the environment. Rather, as evidenced by the legislative history of SB 343, the Legislature merely wanted to clarify that the new recycling labeling requirements it was establishing are within the purview of EMCA's substantiation obligation. According to the California Legislature, "[u]nder *existing law*, a person who represents in advertising or on the label of container of a consumer good that the consumer good that it manufactures or distributes is not harmful to, or is beneficial to, the natural environment, through the use of environmental terms, is required to maintain in its records specified information and documentation supporting the validity of the representation, including, if applicable, whether the consumer good conforms with the uniform standards contained in the Federal Trade Commission Guidelines for Environmental Marketing Claims for the use of the term

"recyclable," among other terms." *See* 2021 Cal. Legis. Serv. Ch. 507 (SB 343) at p. 3, emphasis added. SB 343 clarifies and expands the current law by confirming that the substantiation obligation applies to the use of the chasing arrows symbol or any other recycling instructions, and by requiring that marketers maintain information consistent with the new statewide recyclability criteria. However, current law already provided that recyclable claims are subject to the substantiation requirement at the time of SB 343's passage.

Second, Walmart points to the legislation from the mid-1990s as somehow supporting its argument that recyclability claims are not covered by EMCA's substantiation requirement. MTD at 20:20–21:2. However, the 1995 amendment Walmart cites is largely irrelevant since it involved the Legislature's decision to eliminate a separate prohibition on representing consumer goods as recyclable unless those goods met a California-specific definition of recyclability. That definition was deemed unwieldy, particularly in light of the intervening promulgation of the FTC's Green Guides and its own definition of recyclability in 1992. As the 1995 legislative history notes, "when California enacted its law, it was the first in the nation and there were no enforceable federal standards in place. However, such standards were subsequently developed in 1992 by the [FTC]." *See* MTD, Exh. A at p. 2. The history goes on to state that adhering to the Green Guides is preferable and that it is more reasonable to have one nationwide standard to meet, rather than to require that marketers follow California's unique definitions and standards. *Id*. In doing so, the Legislature also amended EMCA's substantiation obligation, but only to clarify that the required documentation should pertain to whether a product complies with the Green Guides' definition of recyclability instead of the now repealed California standard. Thus, the 1995 amendment cited by Walmart merely reflected an effort to make California environmental marketing laws consistent with the FTC's Green Guides, including its definition of recyclability. In other words, the recyclability language was not *removed* in 1995, but instead was amended to incorporate the Green Guides' recyclability standard.

In sum, the plain language of EMCA's substantiation obligation has always applied to any claim that a product is "not harmful to, or is beneficial to, the natural environment" or "any other like term," and this has always specifically encompassed recyclability claims. Walmart's

alternative reading of the statute based on a misreading of legislative history should be rejected.[6]

**C. Private Parties Can Enforce EMCA's Substantiation Mandate Under The UCL.**

Citing vague and uncompelling public policy reasons, Walmart next argues that it is "unclear" whether any private party can enforce EMCA's substantiation obligation, even if that party has UCL standing. MTD at 21:5 – 22:2. Walmart is wrong.

The violation of any law can serve as a predicate for a claim for a UCL unlawful claim. *See Abbott Laboratories*, 9 Cal.5th at 651. In effect, the "unlawful" prong of the UCL makes a violation of the underlying law a *per se* violation of B&P § 17200. *See Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002); *Moore v. Mars PetCare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). The unfair prong of the UCL prohibits business practices that are against public policy, that are "immoral, unethical, oppressive, unscrupulous, or substantially injurious," or that cause injuries to consumers that are not outweighed by countervailing benefits. *Allen v. Hylands, Inc.*, 773 Fed. Appx. 870, 874 (9th Cir. 2019).

Here, EMCA establishes a clear mandate for Walmart to maintain records substantiating its recycling claims, and to provide those records to any member of the public upon request. B&P §§ 17580(a) and (b). The Legislature has also expressed numerous public policies in favor of companies maintaining adequate support for their environmental marketing claims and to provide that support to the public. Cal. Pub. Res. Code § 42355.5 and B&P § 17580(d). Walmart's violations of these legal obligations and public policies are actionable under the UCL's unlawful and unfair prongs.

The only authority Walmart offers to the contrary is *National Council Against Health Fraud Inc. v. King Bio Pharmaceuticals, Inc*. 107 Cal. App. 4th 1336 (2003), a case which does not even address the relevant provisions of California law at issue here. MTD at 21:5-22:2. Instead, the *King Bio* case involved a private party's attempt to enforce the substantiation obligation of California's False Advertising Law ("FAL"), B&P section 17508. As Walmart acknowledges (MTD at 21:11), that statute expressly limits the authority to request substantiation, and the ability

[6] Even if the substantiation obligation did not apply to recyclability claims until the recent passage of SB 343, this would not impact Greenpeace's unfair claim since the public policies cited in the SAC as a basis for that claim have been in effect for years.

to enforce the substantiation obligation, to public prosecutors. B&P §§ 17508(b) and (c); *see also King Bio*, 107 Cal. App. 4th at 1343 ("This [substantiation] procedure is limited to prosecuting authorities and may not be utilized by private persons."). Here, by contrast, EMCA explicitly authorizes "any member of the public" to request substantiation, obligates companies to furnish substantiation in response to any such request, and expresses a legislative intent that such substantiation "be fully disclosed to the public." B&P §§ 17580(b) and (d). Therefore, *King Bio*'s discussion of the very different substantiation provisions of the FAL are irrelevant.[7]

Ultimately, Walmart's argument boils down to its misguided view of the merits of Greenpeace's case and to a vague public policy plea. MTD at 21:24–22:2. However, limiting enforcement of EMCA's substantiation obligation to public prosecutors would run contrary to well-established case law interpreting the UCL's unlawful and unfair prongs, and undermine the public policy of EMCA to encourage full disclosure of environmental marketing substantiation to any member of the public. Therefore, the Court should reject Walmart's effort to carve EMCA out of the UCL's ordinary enforcement mechanisms.

**D. Greenpeace Has Adequately Pled Claims Under The Unlawful And Unfair Prongs Of The UCL.**

Walmart next argues that Greenpeace's claims fail because, according to Walmart, Greenpeace is using the wrong definition of recyclability. MTD at 22:3–23:11. As an initial matter, Walmart's theoretical discussion of the meaning of recyclability ignores that Greenpeace's claims in the SAC are based on Walmart's failure to substantiate that the Products are recyclable, and not based on whether the Products are actually recyclable. To be sure, Greenpeace's allegations that Walmart fails to maintain written records that substantiate its recycling claims and provide such records stem from its conclusion that the Products are not recyclable under any reasonable definition of that term. And the fact that the Products are not recyclable directly leads to the downstream harms to the environment, to consumers, to recycling infrastructure and to competition that are cited in the SAC. SAC, ¶¶ 6, 27, 61-65, 70. Furthermore, to the extent

[7] *King Bio* is also inapposite because the plaintiff in that case urged the court to shift the burden of proof to the defendant at trial, whereas this case is at the pleading stage and Greenpeace is not advocating for any burden-shifting.

Walmart seeks to defend this case by mustering documentation that it contends substantiate its recycling claims, the Court may be asked to determine whether that substantiation satisfies the requirements of EMCA and the Green Guides. However, the meaning of "recyclable" does not impact whether Greenpeace has adequately pled that Walmart has failed to substantiate its recycling claims.

Walmart's argument is also based on a misguided interpretation of California law and the Green Guides. Ultimately, Walmart's position seems to be that it can label the Products as recyclable if they are theoretically capable of being recycled even if they are not actually recycled in practice. MTD at 22:25-27. This "wishcycling" theory does not make sense under any standard. Consumers do not place the Products in their blue bins based on the theoretical possibility they could be recyclable; rather, consumers do so because they care about the environment and want to divert as much of their waste from landfills as possible. *See* SAC, ¶¶ 49, 59. And, as alleged in the SAC, the FTC has made it clear that the Green Guides do not permit recycling labels based on theoretical possibilities, and that such claims must instead be based on reality. 16 C.F.R. § 260.12(a). Courts agree: "the Green Guides state that if a product is rendered non-recyclable because of its size or components—even if the product's composite materials are recyclable—then labeling the product as recyclable would constitute deceptive marketing." *Smith v. Keurig Green Mt., Inc.*, 393 F. Supp. 3d 837, 846 (N.D. Cal. 2019) (*citing* 16 C.F.R. § 260.12(d)). Thus, Greenpeace is not asking the Court to rewrite the Green Guides as Walmart suggests (MTD at 22:25), but instead is using the objective standards required by EMCA and the Green Guides to ensure that companies that label their Products as recyclable can substantiate that such Products are actually recycled.

Indeed, in enacting SB 343, the Legislature has made clear that a product may only be labeled recyclable if it is recyclable in reality. According to the CalRecycle Statewide Commission on Recycling, "the only plastics that would likely be allowed to be labeled with a chasing arrows symbol under the considerations of this bill would be PET #1 and HDPE #2 plastic bottles and jugs." *See* SB 343 Senate Bill Analysis, August 31, 2021, at p. 7. Notably, the Products at issue

here are largely comprised of plastic resins 3 through 7. SAC, ¶ 2.[8]

Walmart's argument also lumps Greenpeace's unfair and unlawful claims under the UCL together, even though these claims are separate and distinct. With respect to the unlawful claim, the SAC alleges facts that, when taken as true, establish that Walmart's failure to substantiate its "recyclable" claims pursuant to EMCA is an unlawful practice under the UCL. And Greenpeace has adequately alleged a claim under the UCL's unfair prong by asserting that Walmart's failure to maintain written records that support the validity of its recyclable representations violate the legislatively declared policies of EMCA and Cal. Pub. Res. Code § 42355.5, which is immoral, unethical, oppressive, unscrupulous, and substantially injurious. SAC, ¶¶ 75-81. It is unfair for Walmart to represent that the Products are recyclable without substantiation, in direct violation of the California Legislature's declared public policy. These separate and distinct allegations suffice to state a claim under the UCL's unlawful and unfair prongs, and Walmart's arguments about the meaning of recyclability are unavailing.

**E. Greenpeace Has Adequately Alleged Entitlement To Injunctive Relief.**

Walmart argues that even if Greenpeace has stated a claim, it is still not entitled to injunctive relief because (1) Greenpeace has not suffered an irreparable injury; (2) the balance of equities weighs in favor of Walmart; and (3) that an injunction is not in the public interest. MTD at 23:14-25:10. Walmart is wrong on all three counts.

First, Walmart contends that Greenpeace has failed to allege facts showing it is entitled to injunctive relief because it has not suffered an injury. MTD 24:1-24. Walmart argues that an injunction is not warranted here because the allegations will not harm Greenpeace itself. MTD at 24:6-24. As set forth in the SAC, Greenpeace alleges that it will suffer irreparable injury absent an injunction (SAC, ¶¶ 6, 65, 72, 82), and that the balance of hardships and the public interest weigh

[8] Notably, the CalRecycle Statewide Commission on Recycling, a legislatively-appointed body comprised of experts in the recycling field, has recently issued guidance indicating that: (1) "California law (Cal. Bus. & Prof. Code § 17580 and Cal. Pub. Res. Code § 42355.5) and the federal Green Guides (16 C.F.R. § 260.2) require substantiation for recycling claims," (2) "recyclable labels used on many plastic bags and films in California described below are not legal in [the] State of California," and (3) enumerating several examples of Walmart products as violating these requirements, including one of the specific types of Products depicted in the SAC. *Cf* Hirsch Decl., Exh. 2 at p. 78 and SAC, ¶ 60.

in favor of such relief (SAC, ¶¶ 27, 65, 72, 82).

The SAC makes it clear that Greenpeace's injuries will continue so long as Walmart continues failing to maintain the required substantiation necessary to make recyclable claims on the Products. *See*, *e.g.*, SAC, ¶ 6 ("If an injunction is not granted, Greenpeace will suffer irreparable injury because it will continue to spend money, staff time and other organizational resources to combat [Walmart's] unsubstantiated representations that the Products are recyclable in California and to inform the public that the Products are not recyclable in California."); *see also id.*, ¶¶ 27, 65, 72, 82. Although the injunctive relief Greenpeace seeks would also aid the State of California itself (its waters, costs, communities, and marine life) as well as California residents, such additional benefits do not negate the fact that Greenpeace itself will continue to suffer irreparable injury to combat Walmart's unsubstantiated representations. As long as Walmart fails to substantiate the recyclability of the Products, Greenpeace will be forced to continue exerting resources that could be spent elsewhere ensuring that Walmart comply with the law. SAC, ¶¶ 6, 26-27, 65, 72, 82.

Second, although Walmart argues that any injunctive relief would be far outweighed by the costs to Walmart of changing the labels of its products as well as "whatever cost might be imposed by an order directing Walmart to 'substantiate' its recyclable claims," Walmart has already conceded elsewhere that it uses uniform labels from a third-party entity "How2Recycle." MTD 24:25-25:3. This would indicate that Walmart could uniformly change its labels if this Court so required. Moreover, Walmart is already required by law to maintain written records that support its recyclable representations, so it is unclear how Walmart would incur an unreasonable burden with respect to time or money to perform a task it is already required by law to perform.

Finally, an injunction would be in the public interest because it is the legislatively declared policy of the State of California that environmental marketing claims be substantiated by competent and reliable evidence. Cal. Pub. Res. Code § 42355.5. Furthermore, enjoining Walmart's unlawful and unfair acts and practices in California serves the public interest by protecting the environment and the integrity of the recycling stream and by preventing Defendant from gaining an unfair advantage over companies that can substantiate that the products they sell are truly recyclable.

## VII. CONCLUSION

For the reasons set forth above, Walmart's motion should be denied in its entirety. To the extent the Court grants the motion at all, Greenpeace requests the opportunity to amend its Complaint to cure any deficiency identified by the Court.

Dated: December 13, 2021

LEXINGTON LAW GROUP

*/s/ Howard Hirsch*

Howard Hirsch (State Bar No. 213209)
Ryan Berghoff (State Bar No. 308812)
Meredyth Merrow (State Bar No. 328337)
LEXINGTON LAW GROUP
503 Divisadero Street
San Francisco, CA 94117
Telephone: (415) 913-7800
Facsimile: (415) 759-4112
hhirsch@lexlawgroup.com
rbergoff@lexlawgroup.com

Attorneys for Plaintiff
Greenpeace, Inc.

## CERTIFICATE OF SERVICE

I, Howard Hirsch, an attorney, hereby certify that on December 13, 2021, I caused a complete and accurate copy of the foregoing document to be served via this Court's ECM/ECF notification system, which will serve electronically to all participants in this case.

*/s/ Howard Hirsch*