Patrick L. Oot (*pro hac vice* granted)
SHOOK, HARDY & BACON L.L.P.
1800 K Street, N.W., Suite 1000
Washington, DC 20006
Tel: 202.783.8400 | Fax: 202.783.4211
oot@shb.com

Eva M. Weiler (SBN: 233942)
SHOOK, HARDY & BACON L.L.P.
Jamboree Center
5 Park Plaza, Suite 1600
Irvine, California 92614-2546
Tel: 949.475.1600 | Fax: 949.475.0016
eweiler@shb.com

M. Kevin Underhill (SBN: 208211)
Steve Vieux (SBN: 315133)
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, California 94105
Tel: 415.544.1900 | Fax: 415.391.0281
kunderhill@shb.com
svieux@shb.com

Attorneys for Defendant Walmart Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| GREENPEACE, INC.,<br><br>    Plaintiff,<br><br>    vs.<br><br>WALMART INC.,<br><br>    Defendant. | Case No.: 3:21-cv-00754 MMC<br><br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7<br><br>**WALMART INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date: Jan. 14, 2022<br>Time: 9:00 a.m.<br><br>Complaint filed Dec. 16, 2020<br>First Am. Compl. filed Mar. 29, 2021<br>Second Am. Compl. filed Oct. 15, 2021 |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

FACTS ............................................................................................................................................ 2

ARGUMENT .................................................................................................................................. 2

I.  Greenpeace lacks standing because it did not "lose money or property as a result of" anything it claims Walmart did or did not do. ................................................................ 2

   A. Greenpeace cannot base its UCL claims to any extent on allegations that some third party was deceived. ....................................................................................... 3

   B. Greenpeace does not allege it "lost money or property as a result of" any action or inaction by Walmart. .................................................................................. 4

      1. The allegations do not describe a loss that resulted from a lack of substantiation. ............................................................................................... 5

      2. Greenpeace does not and should not have "organizational standing." ........ 5

      3. Greenpeace has not alleged organizational standing in any event because it has not alleged it was *required* to spend the money it allegedly "lost." ............................................................................................. 7

II. Even if Greenpeace had standing, it would still not have stated a claim for "unlawful" or "unfair" practices. ...................................................................................................... 9

   A. Greenpeace's interpretation of current law is incorrect. ......................................... 9

   B. A private plaintiff such as Greenpeace cannot enforce substantiation requirements in any event. ..................................................................................... 10

   C. Greenpeace has not shown that Walmart has been doing anything "unlawful" or "unfair." ............................................................................................................ 11

III. Greenpeace has no remedy because it has not shown an entitlement to injunctive relief. ............................................................................................................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Animal Legal Defense Fund v. LT Napa Partners LLC*,
　234 Cal. App. 4th 1270 (2015) ...................................................................................................6

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)....................................................................................................................2

*California Med. Assoc. v. Aetna Health of Cal. Inc.*,
　63 Cal. App. 5th 660 (2021), *rev. granted*, 281 Cal. Rptr. 3d 662 (July 28, 2021).........................6

*Cappello v. Walmart Inc.*,
　394 F. Supp. 3d 1015 (N.D. Cal. 2019) ......................................................................................4

*Clemens v. DaimlerChrysler Corp.*,
　534 F.3d 1017 (9th Cir. 2008) ....................................................................................................7

*Corbett v. Pharmacare U.S., Inc.*,
　No. 21-cv-137-GPC, 2021 WL 2473950 (S.D. Cal. June 17, 2021) .........................................10

*Davidson v. Apple, Inc.*,
　No. 16-CV-4942-LHK, 2017 WL 3149305 (N.D. Cal. July 25, 2017) ......................................7

*Engel v. Novex Biotech, LLC*,
　689 F. App'x 510 (9th Cir. 2017) .............................................................................................10

*Espineli v. Toyota Motor Sales, U.S.A., Inc.*,
　No. 2:17-cv-00698-KJM, 2019 WL 2249605 (E.D. Cal. May 24, 2019)...................................4

*Friends of the Earth v. Sanderson Farms, Inc.*,
　992 F.3d 939 (9th Cir. 2021) ......................................................................................................7

*Great Pac. Secur. v. Barclays Capital, Inc.*,
　743 F. App'x 780 (9th Cir. 2018) ...............................................................................................3

*Hill v. Roll Int'l Corp.*,
　195 Cal. App. 4th 1295 (2011) ...........................................................................................9, 13

*In Defense of Animals v. Sanderson Farms, Inc.*,
　20-cv-05293-RS, 2021 WL 4243391 (N.D. Cal. Sept. 17, 2021)...........................................7, 8

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*,
　467 F. Supp. 3d 849, 861 (N.D. Cal. 2020) ................................................................................4

*Kearns v. Ford Motor Co.*,
　567 F.3d 1120 (9th Cir. 2009) ...................................................................................................3

*Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927-RMW, 2010 WL 94265 (N.D. Cal.
　Jan. 6, 2010)................................................................................................................................9

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ..........................................................................................10, 11

*La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ...................................................................................................7

*Nat'l Council Against Health Fraud Inc. v. King Bio Pharms. Inc.*,
   107 Cal. App. 4th 1336 (2003) ................................................................................................10

*Southern Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Assoc.*,
   426 F. Supp. 2d 1061 (C.D. Cal. 2005) .....................................................................................6

*Tubbs v. AdvoCare Int'l, LP*,
   No. CV 17-4454-PSG, 2017 WL 4022397 (C.D. Cal. Sept. 12, 2017) ...................................11

*Watkins v. MGA Entertainment, Inc.*,
   No. 21-cv-00617-JCS, 2021 WL 3141218 (N.D. Cal. July 26, 2021) ......................................3

**Statutes**

Cal. Bus. & Prof. Code § 17508 ...............................................................................................10, 11

Cal. Bus. & Prof. Code § 17580 .........................................................................................................9

Cal. Bus. & Prof. Code § 17580(a) ...............................................................................................9, 10

**Rules**

Fed. R. Civ. P. 8.................................................................................................................................5

**Other Authorities**

16 C.F.R. § 260.12(a).......................................................................................................................12

16 C.F.R. § 260.12(b)(1)..................................................................................................................12

# INTRODUCTION

The Court has already held that Greenpeace's allegations fail to state a claim. Greenpeace's tortured attempt to plead around that holding does not change the result. While Greenpeace insists the amended complaint establishes standing "by divorcing [its] claims from any misrepresentation to any third party," Opp. at 1, there has been no separation, let alone a divorce. Even if there had been, it would make no difference, because Greenpeace still would not have standing to bring these claims under the UCL. Whether it claims to be targeting "deceptive," "unlawful," or "unfair" practices, Greenpeace still does not allege *it* lost money or property as a result of the practices. It was not *forced* to "divert resources" to sue Walmart, it *chose* to do so because it believed the lawsuit would help generate publicity for its concern about low recycling rates. Even if the UCL permitted "organizational standing," the pleaded allegations would not qualify. Greenpeace says it "is not trying to manufacture standing," but that is exactly what it is doing. If the Court were to allow its approach, these sorts of lawsuits would quickly become common practice for any group that could articulate a relevant "mission," encouraging frivolous lawsuits and thwarting the purpose of the amendments that limited UCL standing. This Court should not take that step.

Further, the claims would fail even if Greenpeace did have UCL standing, because it is misreading the statutory "substantiation" requirement and the Green Guides. Its claims are based on what it would like the law to be, not what it is. A private plaintiff cannot sue to enforce a "substantiation" requirement, a rule courts have enforced in a wide variety of settings, including claims brought under the FAL, UCL, CLRA, and even common-law claims. These courts, including the Ninth Circuit, have recognized that to hold otherwise would impermissibly allow plaintiffs to shift the burden of pleading and proof to the defendant. The rule does not preclude adequately pleaded claims that a statement is *false*, but Greenpeace did not and cannot plead such a claim.

Finally, Greenpeace has not alleged an entitlement to injunctive relief, or even explained exactly what its proposed injunction would entail.

As Walmart said some time ago, Greenpeace has a right to be concerned about plastic pollution. But suing retailers, especially through manufactured claims like those in the SAC, is not the right way to address the problem. The Court should dismiss without further leave to amend.

# FACTS

As it did last time around, Greenpeace begins its fact summary by asserting that everything it is about to say in the summary must be presumed true for purposes of the motion. Opp. at 6:16 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). What *Iqbal* actually held is that while a court usually must accept as true all the allegations in a complaint—not assertions made in a brief—it need not accept "legal conclusions" couched as fact, mere "assertions devoid of further factual enhancement," "threadbare recitals of the elements of a cause of action," and the like. *Iqbal*, 556 U.S. at 678 (punctuation omitted). And the facts that *are* "well pleaded" must add up to a claim that is "plausible on its face," meaning there is enough factual content to allow a court to draw the reasonable inference that, if the facts were true, the defendant would be liable for the misconduct alleged. *Id*. As Walmart explained in its motion, legal conclusions such as "not in fact recyclable" or conclusory fact assertions need not be taken as true.

Greenpeace has also attached a redlined document showing what it calls the "extensive changes" reflected in the Second Amended Complaint. *See* Opp. at 7 n.3 (citing Greenpeace's Ex. 1). Walmart encourages the Court to review that document, because even if the changes were numerous enough to qualify as "extensive," they are not substantive enough to qualify. The example Walmart gave in its opening brief—that Greenpeace has replaced the term "consumers" with "people"—is not just "selective quoting," as Greenpeace now says, but a fair representation of what Greenpeace has done in its effort to avoid the Court's prior ruling.

# ARGUMENT

**I.   Greenpeace lacks standing because it did not "lose money or property as a result of" anything it claims Walmart did or did not do.**

Greenpeace's three-page discussion of the purported "divorce" between its claims and the concept of reliance (Opp. at 8:21–10:22) is misleading, but it is also a red herring. The continued references to fraud (*see* MTD at 9:14–10:23) show its claims are still based in large part on allegations that Walmart has deceived some third party, and it cannot base a UCL claim on those allegations. But no matter how it characterizes or mischaracterizes its UCL claims, it lacks standing because it has not alleged it "lost money or property as a result of" the alleged misconduct.

A.  **Greenpeace cannot base its UCL claims to any extent on allegations that some third party was deceived.**

Greenpeace never disputes (because it cannot) that if a UCL claim is based on allegations of deception, the plaintiff must allege actual reliance. *See* Opp. at 8:21–10:22. It appears to be arguing, however, that this only applies if the deceptive conduct was a *misrepresentation*. *See, e.g.*, *id.* at 8:27–28 ("Because the SAC no longer alleges a UCL claim based on fraud, it does not need to allege reliance on any *misrepresentation*."); 9:1–2 ("Reliance is only required where a plaintiff's claims are based on *misrepresentation* under the UCL."); 9:23–24 ("Imposing a reliance requirement is nonsensical where, as here, a UCL claim is not tethered to any *misrepresentation*."); *id.* at 10:2–3 (asserting Greenpeace is not aware of "a single case in which a court has imposed a reliance requirement for a UCL claim that is not tied to a *misrepresentation* claim....") (all emphases added). There are two problems with this position.

First, it misrepresents the complaint. Greenpeace never explains why, if its claims now have nothing to do with misrepresentations, the SAC still repeatedly accuses Walmart of making them. *See* SAC ¶¶ 2 (alleging the products are "advertised or labeled as recyclable" but are not recyclable); 15 (alleging Greenpeace seeks to expose Walmart's "practice of misrepresenting the recyclability of the Products"); 18 (alleging Greenpeace seeks to police "corporate marketing efforts aimed at representing the recyclability of the products"). Obviously, Greenpeace is not seeking to police these corporate representations because it believes they are *true*.

Second, the actual-reliance requirement—like the particularity requirement—*does* apply to fraud claims that have nothing to do with misrepresentations, such as those based on alleged omissions. *See Great Pac. Secur. v. Barclays Capital, Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) ("Plaintiffs alleging claims under the ... UCL are required to plead and prove actual reliance on the misrepresentations *or omissions* at issue"; emphasis added); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009) ("Kearns's contention that his nondisclosure claims need not be pleaded with particularity is unavailing."); *see also, e.g.*, *Watkins v. MGA Entertainment, Inc.*, No. 21-cv-00617-JCS, 2021 WL 3141218, at *13–14 (N.D. Cal. July 26, 2021) (citing cases; dismissing UCL omission claim "alleging that a family member, and not the plaintiff, relied" on the alleged

failure to disclose). More to the point, these requirements also apply to fraud claims based on *partial* misrepresentations, those that are true but allegedly misleading because the defendant omitted other facts it had a duty to disclose. *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liab. Litig.*, 467 F. Supp. 3d 849, 861 (N.D. Cal. 2020) (dismissing because partial-representation theory was not pleaded with particularity); *Espineli v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00698-KJM, 2019 WL 2249605, at *4–5 (E.D. Cal. May 24, 2019) (same, including as to reliance requirement). Or, put another way, Greenpeace alleges that Walmart has been misleading consumers by making a claim it cannot substantiate. Denials notwithstanding, it continues to allege this theory with regard to Walmart's use of the term "recyclable." *See, e.g.*, SAC ¶¶ 2, 45–50.

Thus, the SAC still alleges fraud, and is still defective for that reason because Greenpeace does not and cannot allege actual reliance or anything else about the circumstances of the alleged fraud with particularity.[1] The redlined SAC shows the extent to which Greenpeace has simply shuffled words around or tried to redefine them to avoid this defect. Changing "consumers" to "people" is only one example of this. As discussed in the opening brief (and further below), Greenpeace has not alleged UCL standing under any theory. But it is not accurately describing its SAC when it contends that it no longer alleges fraud.

### B. Greenpeace does not allege it "lost money or property as a result of" any action or inaction by Walmart.

Even assuming fraud allegations had been purged from the SAC, Greenpeace still would not have alleged standing. The opposition asserts that Walmart "concedes (as it must) that Greenpeace has alleged a loss of organizational time and money after requesting substantiation ..., which suffices to confer standing on Greenpeace under the UCL." Opp. at 11:21–24 (citing MTD at 12:6–28). Walmart did not concede that. *See* MTD at 12:1–13:14. Greenpeace has tried to allege it *spent* "organizational time and money" to pursue Walmart, by *choice*. As shown below, that is not a "loss" that can support UCL standing.

---

[1] The case Greenpeace relies on does not show otherwise, because (as its own quotation shows) there the UCL claim was based on a breach of contract that allegedly also involved unlawful conduct—it did not involve fraud at all. *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1021 (N.D. Cal. 2019).

### 1. The allegations do not describe a loss that resulted from a lack of substantiation.

To begin, Greenpeace says little to defend the SAC's ambiguity as to what money it spent or even what it did in its purported effort to ask Walmart to substantiate its recyclability claims. *See* Opp. at 11:5–12 (citing but not discussing SAC ¶¶ 15–25, 64, 70, 73, 83). It seeks to turn that ambiguity into a virtue by agreeing that the statute "does not establish a formal procedure for requesting substantiation" (*id*. at 11:7–8), but that does not excuse the conclusory nature of Greenpeace's allegations as to the informal procedure it followed. The cited paragraphs do repeatedly use words like "time," "money," and "resources," but without supporting facts those are only conclusory allegations that cannot suffice. *See* Fed. R. Civ. P. 8.

In any event, the UCL standing requirement requires "lost *money or property*"; lost time alone does not count, and "resources" would count only if the resources actually constituted "money" or "property." The only concrete reference to any *money* Greenpeace spent has to do with a consultant it allegedly paid in 2019 to create some PowerPoints and "identify three companies to investigate based on egregious and unsubstantiated labeling practices on plastic products that are not recyclable." SAC ¶¶ 19–23. But as that language itself shows, and as Walmart has already pointed out, this expenditure was not "a result of" any alleged failure to substantiate by Walmart. *See* MTD at 12:6–28. It was a function of Greenpeace's effort to target Walmart and numerous other retailers for making claims Greenpeace had already *decided* were "egregious and unsubstantiated"—a position it took well before it ever hired this consultant. *See* SAC at ¶ 14 (noting that Greenpeace had targeted Walmart and other retailers in 2018 and 2019, including in its "Packaging Away the Planet" report). In short, this is an example of how Greenpeace has tried to repackage its earlier fraud allegations (such as those noting this same consultant took pictures of allegedly misleading labels) to fit its new theory, not an example of money it lost as a result of the alleged failure to substantiate. And it is the only example of any actual expenditure that Greenpeace offers.

### 2. Greenpeace does not and should not have "organizational standing."

Ultimately Greenpeace must resort to the theory of "organizational standing," hoping to proceed based on the fiction that the "time" or "resources" it devoted to pursuing Walmart, including

1  the salaries it was paying its staff members, could constitute "money or property" it "lost" for UCL
2  purposes. Opp. at 15:12–17:17. Greenpeace suggests that Walmart is asking the Court to "depart
3  from UCL jurisprudence" here. To the contrary, Greenpeace is asking the Court to expand UCL
4  standing to a degree that would largely undo the Prop 64 amendments that have been in place for
5  almost 20 years. If Greenpeace can bring UCL claims based on allegations like these, then virtually
6  anyone could. That is exactly what the UCL was amended to prevent.

7  As Walmart has already explained at length, no California court has *ever* approved
8  "organizational standing" for a UCL claim in a situation like this one. MTD at 13:15–17:17. The
9  only California decision Greenpeace cites (as before) is the *ALDF* case. Opp. at 14:14–16:13 (citing
10 *Animal Legal Defense Fund v. LT Napa Partners LLC*, 234 Cal. App. 4th 1270 (2015)). That case is
11 distinguishable because, unlike in this case, *ALDF* did not involve fraud allegations of any kind.
12 Greenpeace makes no attempt to argue that its broader interpretation of *ALDF* is consistent with
13 Prop 64 or the reasoning in cases like *Amalgamated Transit* or *California Medical Association.* Nor
14 could it. It tries to distinguish *CMA* as a decision limited to associational standing, not organizational
15 standing, but the court's reasoning went beyond that distinction. *See California Med. Assoc. v. Aetna
16 Health of Cal. Inc.*, 63 Cal. App. 5th 660, 669 (2021), *rev. granted*, 281 Cal. Rptr. 3d 662 (July 28,
17 2021). Indeed, the plaintiff in *CMA* relied on *ALDF* and the same line of federal cases on which
18 Greenpeace relies here (on which the *ALDF* court also relied); the *CMA* court addressed and rejected
19 the entire argument. *CMA*, 63 Cal. App. 5th at 669–70. It specifically noted, in fact, that CMA's
20 federal authorities addressed *both* associational and organizational standing. *Id*. at 670. But "[n]one
21 of these cases is helpful," it held, "as they do not consider the stringent requirements for UCL
22 standing after the Proposition 64 amendments became effective in 2004." *Id*. Only one of the cases
23 even involved the UCL, it pointed out, and that case is neither current nor binding. *Id*. (discussing
24 *Southern Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Assoc.*, 426 F. Supp. 2d 1061
25 (C.D. Cal. 2005)). Because the case significantly predated both *Amalgamated Transit* and *Kwikset*,
26 the court held, it "offers little guidance" today.

27 Thus, Greenpeace's position that "organizational" standing is consistent with the amended
28 UCL rests on one distinguishable Court of Appeal decision that in turn rests on a line of nonbinding

federal authority. The reasoning of that decision has already been questioned by another state appellate court, and Greenpeace offers no reason to believe that the California Supreme Court would agree with it. Federal courts must be reluctant to expand liability when state law is unclear. *See, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023–24 (9th Cir. 2008) (holding that even if state privity requirement were an "archaism," federal court was not free to expand liability by broadly construing exception to it); *Davidson v. Apple, Inc.*, No. 16-CV-4942-LHK, 2017 WL 3149305, at *18 (N.D. Cal. July 25, 2017) (holding that to extent state law is unclear, "a federal court sitting in diversity should opt for the interpretation that restricts liability, rather than expands it"). It is Greenpeace, not Walmart, that is inviting this Court to depart from existing law, and its approach would expand UCL standing dramatically. The Court should decline that invitation.

### 3. Greenpeace has not alleged organizational standing in any event because it has not alleged it was *required* to spend the money it allegedly "lost."

Greenpeace also cannot benefit from the organizational-standing doctrine because it has not alleged the necessary facts. As Walmart explained, the federal cases applying this doctrine make clear that simply choosing to take a particular action that costs money or resources is not enough. *See* MTD at 17:18–19:26. The organization must be *required* to expend resources it would not otherwise have expended because "it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Picking a particular target or targets for the sort of advocacy in which the organization routinely engages is not sufficient. *See, e.g.*, *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942–43 (9th Cir. 2021). That is just "business as usual" and not an injury that can support standing. *Id.* at 942; *In Defense of Animals v. Sanderson Farms, Inc.*, 20-cv-05293-RS, 2021 WL 4243391, at *4 (N.D. Cal. Sept. 17, 2021).

The opposition largely ignores this limitation (and a number of Walmart's authorities), instead dismissing the *Sanderson Farms* cases as merely examples of "serial attempts by the same organizational plaintiffs to challenge alleged misrepresentations that had not caused them harm." Opp. at 12:9–11; *see id.* at 12:7–13:20 (discussing these cases); 13:10–11 (noting that Greenpeace is not bringing "duplicative claims that were already dismissed in another case"). But the "serial"

nature of the attempts were not the problem. *In Defense of Animals*, 2021 WL 4243391, at *3. True, one of the plaintiffs was a "serial" litigant and was subject to issue preclusion, but the issue it was precluded from relitigating was its lack of organizational standing. *Id*. Judge Seeborg fully discussed standing requirements as to the plaintiff that had not been involved in the earlier case, and that discussion is directly applicable here. *Id*. at *3–4; *see* MTD at 18:27–19:26. In particular, he emphasized the requirement that an organization must be "forced" into acting because the defendant's actions would have caused it some other injury if it had not diverted resources to prevent that. *In Defense of Animals*, 2021 WL 4243391, at *3–4. (citing *Trabajadores* among other cases). The plaintiffs suing Sanderson Farms had not been forced to do anything; they voluntarily chose to target Sanderson Farms as part of a campaign to advocate for animals and the environment. *Id*. at *2, 4–5. If that was an injury, it was "self-inflicted." *Id*. at *4–5; *see id.* at *6 (saying such a plaintiff "resembles a soccer player who falls to the ground but stops writhing when the referee looks away.")

Here, just as in that case, the SAC contains only conclusory allegations as to why Greenpeace was "forced" to sue Walmart. The opposition brief is just as conclusory; it never actually discusses the issue, instead merely asserting that Greenpeace was "forced" to act and then citing a string of paragraphs from the SAC. *See* Opp. at 6:19–24; 12:2–6; 17:14–17; 25:11–13. Compiling the paragraphs Greenpeace cites to support those assertions shows it is relying on paragraphs 6, 15–31, 65, 72, 73, 82, and 83. Not one of those paragraphs (or any others) contains any facts showing Greenpeace was forced to expend resources to avoid some other injury to *Greenpeace*, not just to the more abstract "values or interests" it fights for. *In Defense of Animals*, 2021 WL 4243391, at *4–5. At best some of these paragraphs describe actions Greenpeace has taken, but that falls well short of showing Greenpeace was *forced* to take them.

In short, even if Greenpeace had purged allegations of deception from the SAC, and even if organizational standing were consistent with the amended UCL, the SAC would still fail because it does not allege the facts that this standing theory requires.

8   WALMART'S REPLY ISO MTN TO DISMISS SAC
Case No. 3:21-cv-00754-MMC

II. **Even if Greenpeace had standing, it would still not have stated a claim for "unlawful" or "unfair" practices.**

A. **Greenpeace's interpretation of current law is incorrect.**

Greenpeace argues, first, that the "plain language" of the EMCA requires substantiation for "recyclable" claims—even though the statute does not use the word "recyclable." Opp. at 17:18–19:1 (discussing Cal. Bus. & Prof. Code § 17580). Its argument is that "recyclable" claims are necessarily included because the list of examples set forth in the statute ends with "any other like term." But that is hardly as clear as Greenpeace contends. To begin, the statute defines covered representations as those stating that a consumer good "is not harmful to, or is beneficial to, the natural environment...." Cal. Bus. & Prof. Code § 17580(a). Greenpeace argues that "the only benefit to recycling is to minimize a product's impact on the environment by re-using that product's raw materials" rather than disposing of them. Opp. at 17:24–18:1. But saying a product's impact will be *minimized* because it is "recyclable" is different from saying the product *itself* "is not harmful to, or is beneficial to" the environment. For example, the statutory language might cover a claim that a cleaning product is "environmentally friendly" when in fact it includes potentially harmful chemicals. *See, e.g.*, *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1305–06 (2011) (discussing *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927-RMW, 2010 WL 94265, at *1–2 (N.D. Cal. Jan. 6, 2010) (involving claims that Windex was "environmentally superior")). But representing that product as "environmentally friendly" and saying it can be "recycled" in whole or in part, minimizing its impact, would not be the same thing. In short, the "plain language" of the statute is not plain.

The Legislature could, of course, have simply included the word "recyclable" in the list, but it did not. It *did* use that word in a related statute—until 1995, when that provision was repealed. See MTD at 20:20–21:2. Greenpeace argues that the intent was to move California toward a nationwide standard based on the Green Guides, but section 17580(a) does not use the word "recyclable," and the Legislature specifically removed that language from a related section because California's standard was too vague to be enforceable. This also fits with the Legislature's recent passage of SB 343, which *does* specifically address "recyclable" claims as triggering the substantiation

requirement. Greenpeace argues that the Legislature "merely wanted to clarify" that recyclable claims are covered, but here the language *is* plain: before SB 343, section 17580(a) did not expressly refer to recycling; now it does. That is more than a clarification, as Greenpeace in fact concedes. *See* Opp. at 20:2 (stating that SB 343 "clarifies *and expands* the current law"; emphasis added). The better interpretation is therefore that at least until SB 343 takes effect, a "recyclable" claim does not trigger the substantiation requirement, and because the new law is not retroactive, it cannot help Greenpeace here.

### B. A private plaintiff such as Greenpeace cannot enforce substantiation requirements in any event.

As Walmart has already shown, Greenpeace lacks standing to use the UCL to pursue these claims. But even if it did, the Court should still reject its claims because the law does not allow private plaintiffs—whether they are consumers or organizations—to sue to enforce "required substantiation" provisions. *Nat'l Council Against Health Fraud Inc. v. King Bio Pharms. Inc.*, 107 Cal. App. 4th 1336, 1345 (2003). Greenpeace contends that the policy reasons for this are "vague and uncompelling," but the California Court of Appeal does not agree. In *King Bio*, it recognized that allowing private plaintiffs to bring lawsuits demanding "substantiation" would lead to "undue harassment of advertisers," making this an inefficient and burdensome method of policing allegedly misleading claims, and would risk disclosure of trade secrets that public prosecutors are obligated to protect. *Id*. Those reasons are not just compelling, but controlling.

Contrary to Greenpeace's argument, this is not limited to the False Advertising Law, in which the limitation is expressly stated. Opp. at 21:2–22:14 (discussing Bus. & Prof. Code § 17508). *King Bio* itself involved claims under the UCL as well as the FAL, and the Court of Appeal rejected the plaintiff's arguments under *both* statutes. *See* 107 Cal. App. 4th at 1340. The Ninth Circuit has reached the same conclusion as to the UCL and the CLRA. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093–96 (9th Cir. 2017); *Engel v. Novex Biotech, LLC*, 689 F. App'x 510, 510 (9th Cir. 2017); *see also, e.g.*, *Corbett v. Pharmacare U.S., Inc.*, No. 21-cv-137-GPC, 2021 WL 2473950, at *7 (S.D. Cal. June 17, 2021) (collecting cases). District courts have even extended it to claims brought under common-law theories such as negligent misrepresentation, breach of warranty, and common-law

fraud. *See, e.g.*, *Tubbs v. AdvoCare Int'l, LP*, No. CV 17-4454-PSG, 2017 WL 4022397, at *5–7 & n.1 (C.D. Cal. Sept. 12, 2017) (collecting cases; dismissing with prejudice because "[c]ourts have applied *Kwan*'s holding to *all* causes of action premised on a lack-of-substantiation theory, not only those claims raised in *Kwan*.").

The *reason* this applies more broadly is that it derives not only from the express limitation in section 17508, as Greenpeace suggests, but from the fundamental principle that—even under the UCL—a plaintiff always has the burden of pleading as well as the burden of proof. *Kwan*, 854 F.3d at 1094–96. And again, the "overriding purpose" of Prop 64 was "to impose limits on private enforcement actions." *Id*. at 1095 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)). Consumers may be able to meet their burdens by alleging and then proving particular facts showing they bought a product in reliance on labeling claims that were not true. As discussed above, Greenpeace cannot do that. But neither consumers nor organizations like Greenpeace can sue simply to demand substantiation—as Greenpeace insists it is doing now.

### C. Greenpeace has not shown that Walmart has been doing anything "unlawful" or "unfair."

Greenpeace's SAC also fails simply because there is nothing to the underlying claims that Walmart is doing something "unlawful" or "unfair." Thus, neither Greenpeace nor anyone else could have suffered an injury from relying on the label *or* from an alleged failure to maintain documents "substantiating" a claim that is *true*. According to Greenpeace, this does not matter because its claims no longer have anything to do with deception. In fact, Greenpeace now argues that it does not even matter whether the products are actually "recyclable." Opp. at 22:17–21 ("Walmart's theoretical discussion of the meaning of recyclability ignores that Greenpeace's claims in the SAC are based on Walmart's failure to substantiate that the Products are recyclable, *and not based on whether the products are actually recyclable*"; emphasis added). If so, then the Court need not reach this issue; as shown above, Greenpeace cannot sue only to demand substantiation. But, not surprisingly, Greenpeace immediately proceeds to reassert and reargue its position that the products are *not* recyclable (Opp. at 22:21–24:13), and that this is deceiving consumers (Opp. at 23:10–12), so Walmart will briefly respond.

In making this argument, Greenpeace mentions the Green Guides—supposedly fundamental to its position—only to say that the Guides "do not permit recycling labels based on theoretical possibilities, and that such claims must instead be based on reality." Opp. at 23:12–15 (citing 16 C.F.R. § 260.12(a).) That is what Greenpeace would *like* the Guides to say. What they *actually* say is that a product may be marketed as recyclable so long as "it *can be* collected, separated, or otherwise recovered from the waste stream through an established recycling program...." 16 C.F.R. § 260.12(a) (emphasis added). Similarly, they say a marketer can make recyclable claims so long as "recycling facilities *are available to* a substantial majority of consumers or communities where the item is sold." 16 C.F.R. § 260.12(b)(1). Greenpeace does not cite or discuss this language, which flatly contradicts its position: under the Guides, the issue is not what Greenpeace calls the "reality" of what the actual recycling rate turns out to be, but whether the necessary facilities are available to a substantial majority of consumers or communities in a particular area. *See* MTD at 22:3–23:11. As Walmart pointed out, Greenpeace does not allege any facts showing this standard is not being met in any particular community, or in California as a whole. Greenpeace has not responded to that point.[2]

Given the above, Greenpeace's continued assertions that Walmart has been doing anything unlawful or unfair (Opp. at 24:2–13) fall flat. It is no longer claiming that the labels are deceptive (or so it insists). It has not shown that the labels violate the Green Guides. It also has not explained why it believes Walmart's responses to its alleged demands for "substantiation" fell short of some statutory requirement. It concedes there is no formal procedure or requirement under the statute, so cannot contend Walmart failed to comply in that sense. It does not dispute Walmart's point that it did engage with Greenpeace on the issue of "recyclable" claims, or its point that it provides the public with extensive information about recycling and its position on recycling through its website— which the challenged labels specifically cite—and its participation in the How2Recycle program. *See* MTD at 5:3–13, 6:18–28, 11:2–16. As the Court of Appeal has noted, "it seems obvious" that

---

[2] Notably, instead of focusing on current law and the language of the Guides, Greenpeace again turns to SB 343—a law that is not yet in effect and is not retroactive—and to an informal and non-binding guidance that was not even issued until December 3, 2021, and so obviously is not mentioned in the SAC. Opp. at 23:23–24:1 & n.8; *see* Hirsch Decl., Ex. 2 to Hirsch Decl. at p. 78. Reliance on these recent authorities only supports the view that Greenpeace's position is based on what it would like the law to be, not what it is, much less what it was at the time Greenpeace filed suit.

1  such websites are relevant to any requirement that advertisers substantiate their claims. *Hill*, 195 Cal.
2  App. 4th at 1305 n.5. Greenpeace does not even argue that the information Walmart provides to the
3  public in this way is somehow insufficient to show that the claims can be substantiated. It certainly
4  has not alleged facts that come close to showing Walmart's efforts have fallen short in some way
5  that is "immoral, unethical, oppressive, unscrupulous, and substantially injurious," or violates the
6  public policy of making recycling information available to the public, as it contends when arguing
7  Walmart has acted "unfairly." Opp. at 24:2–13. There is no substance to its claims.

8  **III.    Greenpeace has no remedy because it has not shown an entitlement to injunctive relief.**

9  Finally, Greenpeace devotes little space to showing it has alleged an entitlement to injunctive
10 relief, the only remedy it is seeking. *See* MTD at 23:12–25:12; Opp. at 24:14–25:27.

11 As discussed above, Greenpeace has suffered no injury as a result of the alleged misconduct,
12 much less an injury that is somehow "irreparable." The opposition makes the same conclusory
13 arguments and cites the same conclusory paragraphs when discussing injunctive relief. For example,
14 it argues that "[t]he SAC makes it clear that Greenpeace's injuries will continue so long as Walmart
15 continues failing to maintain the required substantiation...." Opp. at 25:2–4. But the passage cited in
16 support alleges only that, absent an injunction, Greenpeace will suffer irreparable injury because it
17 will continue to expend resources "to combat [Walmart's] unsubstantiated representations that the
18 Products are recyclable in California and to inform the public that the Products are not recyclable in
19 California." *Id*. at 25:4–7 (quoting SAC ¶ 6). It does not need an injunction to "inform the public"
20 about its view of recyclability, something it is already doing (such as in the press release noted
21 above). The only other resources it claims to have expended were allegedly to investigate whether
22 Walmart can substantiate its claims. But no one is forcing it to do that, nor does Greenpeace explain
23 what sort of injunction would satisfy it and thus relieve it of the burden it has chosen to undertake.
24 Beyond that, Greenpeace does not respond to the point that, because its definition of "recyclability"
25 depends on market conditions, those conditions could change at any time—as one of its own sources
26 has pointed out. *See* MTD at 24:18–24 (quoting article cited at SAC ¶ 38 n.41). If the alleged injury
27 might vanish, it is hardly irreparable.

28

Given that Greenpeace has not explained what its proposed injunction would require, it has not shown that the balance of equities would support that injunction or that it would be in the public interest. Its assertion that the public interest would be served by preventing Walmart "from gaining an unfair advantage over companies that can substantiate that the products they sell are truly recyclable" only confirms that it is basing this action on alleged harm to third parties, not to Greenpeace itself.

## CONCLUSION

Greenpeace has again failed in its attempt to find some claim—any claim—that it can assert against Walmart in order to press its arguments about what "recyclability" should mean. The tortured drafting of the SAC underscores what is really going on here: Greenpeace wants to change the law as to what constitutes "recyclable." But this lawsuit is the wrong way to pursue this goal. Because the SAC does not allege facts showing that Greenpeace has standing to sue under the UCL, and for the other reasons set forth above, the Court should dismiss without further leave to amend.

Dated:  Dec. 20, 2021

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ M. Kevin Underhill*
Patrick Oot (*pro hac vice*)
Eva M. Weiler
M. Kevin Underhill
Steve Vieux

Attorneys for Defendant Walmart Inc.