1

LEXINGTON LAW GROUP
Howard Hirsch, State Bar No. 213209

2

Meredyth Merrow, State Bar No. 328337
503 Divisadero Street

3

San Francisco, CA 94117
Telephone: (415) 913-7800

4

Facsimile: (415) 759-4112
hhirsch@lexlawgroup.com

5

mmerrow@lexlawgroup.com

6

LAW OFFICE OF GIDEON KRACOV
Gideon Kracov, State Bar No. 179815

7

801 S. Grand Ave., 11th Floor
Los Angeles, CA 90017

8

Telephone: (213) 629-2071
Facsimile: (213) 623-7755

9

gk@gideonlaw.net

10

Attorneys for Plaintiff
GREENPEACE, INC.

11

12

**UNITED STATES DISTRICT COURT**

13

**NORTHERN DISTRICT OF CALIFORNIA**

14

15

GREENPEACE, INC.,

Case No. 3:21-cv-00754-MMC
Assigned to Hon. Maxine M. Chesney

16

Plaintiff,

**PLAINTIFF GREENPEACE, INC.'S
OPPOSITION TO DEFENDANT
WALMART INC.'S MOTION TO
DISMISS THIRD AMENDED
COMPLAINT**

17

v.

18

WALMART INC.,

19

Defendant.

20

Date: May 13, 2022
Time: 9:00 a.m.

21

22

Complaint Filed: December 16, 2020
First Am. Compl. Filed: March 29, 2021

23

Second Am. Compl. Filed: October 15, 2021

24

Third Am. Compl. Filed: Feb. 18, 2022

25

26

27

28

## TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………………...1

II.     LEGAL BACKGROUND…………………………………………..…………………3

III.    FACTS…………………………………………………………………….…..……5

IV.     ARGUMENT…………………………………………………………………...6

        A.      Greenpeace Has Standing Under the Both the UCL and Article III…………6

                1. There Are Important Differences Between UCL and Article III
                Standing…………………………………………….................................6

                2. Greenpeace Has Adequately Alleged Injury In Fact
                (UCL and Article III) …………………………………………………....7

                3.  Greenpeace Has Adequately Alleged Loss of Money or Property
                (UCL)…………………………………………………………….…..8

                4.  The UCL Allows Organizational Standing……………………………...12

                5.  Greenpeace Has Alleged Ongoing Injury In Fact Under Article III…….15

        B.      The Court Should Remand This Case If It Concludes That Greenpeace
                Lacks Article III Standing……………………………………………16

        C.      The Court Should Not Stay The Case To Await A Ruling In *California
                Medical Association*..…………………………………………………18

        D.      Walmart Is Required To Substantiate Its Recyclability Claims Under
                EMCA……..…………………………………..…………………………....19

        E.      Private Parties Can Enforce EMCA's Substantiation Mandate Under The
                UCL. ……………………………………………………………………….23

        F.      Greenpeace Has Adequately Pled Claims Under The Unlawful And Unfair
                Prongs Of The UCL……………………………………………………...24

V.      CONCLUSION………………………………………………………………......26

# TABLE OF AUTHORITIES

**CASES**

*Abbott Laboratories v. Superior Court*,
  9 Cal.5th 642 (Cal. 2020) ............................................................. - 23 -

*Advocs. for Individuals with Disabilities LLC v. MidFirst Bank*,
  279 F. Supp. 3d 891 (D. Ariz. 2017) .......................................... - 18 -

*Allen v. Hylands, Inc.*,
  773 Fed. Appx. 870 (9th Cir. 2019) ............................................ - 23 -

*Amalgamated Transit Union, Loc. 1756, ALF-CIO v. Sup. Ct.*,
  49 Cal. 4th 993 (2009) ................................................................. - 13 -

*Animal Legal Def. Fund v. United States Dep't of Agric.*,
  953 F.3d 858 (9th Cir. 2019) ......................................................... - 8 -

*Animal Legal Defense Fund v. Great Bull Run, LLC*,
  No. 14-cv-01171-MEJ, 2014 U.S. Dist. LEXIS 78367 (N.D. Cal. June 6,
  2014) .............................................................................................. - 12 -

*Animal Legal Defense Fund v. LT NAPA Partners LLC*,
  234 Cal. App. 4th 1270 (Cal. Ct. App. 2015) ............................. - 12 -

*Asbestos Disease Awareness Org. v. Wheeler*,
  508 F. Supp. 3d 707 (N.D. Cal. 2020) .......................................... - 8 -

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................... - 5 -

*Bailey v. United States*,
  516 U.S. 137 (1995) ..................................................................... - 20 -

*Baugh v. Holder*,
  No. 3-13-CV-00561-ST, 2014 U.S. Dist. LEXIS 98814 (D. Or. Apr. 21,
  2014) .............................................................................................. - 16 -

*Bell v. City of Kellogg*,
  922 F.2d 1418 (9th Cir. 1991) .................................................... - 16 -

*Brown v. Google LLC*,
  No. 20-CV-03664-LHK, 2021 U.S. Dist. LEXIS 244695 (N.D. Cal. Dec. 22,
  2021) ................................................................................................ - 7 -

*California Med. Assoc. v. Aetna Health of Cal., Inc.*,
  63 Cal. App. 5th 660 (2021) .............................................- 2 -, - 14 -

*Capello v. Walmart Inc.*,
  394 F.Supp.3d 1015 (N.D. Cal. 2019) ............................... - 8 -, - 9 -

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 S. Ct. 1302, 149 L. Ed. 2d 234 (2001) ................. - 20 -

iii

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................. - 7 -

*Envtl. Def. Fund v. EPA*,
    922 F.3d 446 (D.C. Cir. 2019) ................................................. - 8 -

*FEC v. Akins*,
    524 U.S. 11 (1998) ................................................................. - 8 -

*Fournier v. Sebelius*,
    718 F.3d 110 (9th Cir. 2013) ................................................. - 21 -

*Friends of the Earth v. Laidlaw Envtl. Servs (TOC), Inc.*
    528 U.S. 167 (2000) ................................................................ - 7 -

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995) .............................................................. - 20 -

*In re iPhone Applic. Litig.*
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) ...................................... - 9 -

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (Cal. 2009) .................................................... - 9 -

*Int'l Primate Prot. League v. Adm'rs of Tule Educ. Fund*,
    500 U.S. 72 (1991) ............................................................... - 16 -

*Jordan v. Viceroy Hotel Mgmt., LLC*,
    No. 21-cv-01338-HSG, 2021 U.S. Dist. LEXIS 110181 (N.D. Cal. June 11,
    2021)...................................................................................... - 16 -

*Kasky v. Nike, Inc.*,
    27 Cal.4th 939 (2002)........................................................... - 23 -

*Kissel v. Code 42 Software, Inc.*,
    No. 8:15-cv-01936, 2016 U.S. Dist. LEXIS 184368 (C.D. Cal. Apr. 14,
    2016).................................................................................... - 9 -

*Kwan v. SanMedica Internat'l*,
    854 F.3d 1088 (9th Cir. 2017) ............................................... - 9 -

*Landis v. North American Co.*,
    299 U.S. 248 (1936) .............................................................. - 18 -

*LegalForce RAPC Worldwide P.C. v. DeMassa*,
    No. 18-cv-00043-MMC, 2020 LEXIS 2148021 (N.D. Cal. Aug. 17, 2020) ................. - 9 -

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005)............................................... - 18 -

*Lytle v. Nutramax Laboratories, Inc.*,
    2019 U.S. LEXIS 228123 (Sept. 26, 2019)............................... - 9 -

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011)............................................... - 8 -

iv

*Mayron v. Google LLC*,
    54 Cal. App. 5th 566 (Cal. Ct. App. 2020) ................................................. - 11 -

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945 (2017)................................................... - 2 -, - 7 -, - 16 -

*Moore v. Mars PetCare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020)................................................. - 23 -

*National Council Against Health Fraud Inc. v. King Bio Pharmaceuticals, Inc.*
    107 Cal. App. 4th 1336 (2003)................................................ - 23 -

*Olosoni v. HRD Tax Grp., Inc.*,
    2019 U.S. Dist. LEXIS 224869 (November 5, 2019) ..........................- 7 -, - 16 -

*People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*,
    No. 15-cv-04301, 2016 U.S. Dist. LEXIS 11006 (N.D. Cal. Jan. 29, 2016) .............. - 12 -

*Polo v. Innovations Int'l, LLC*,
    833 F.3d 1193 (9th Cir. 2016)................................................. - 16 -

*Rizo v. Yovino*,
    950 F.3d 1217 (9th Cir. 2020)................................................. - 20 -

*Romero v. United States Postal Serv.*,
    No. CV 20-6685-PSG, 2020 U.S. Dist. LEXIS 247498 (C.D. Cal. Nov. 23,
    2020)................................................................... - 17 -

*S. Cal. Hous. Rights Ctr. v. Ass'n & Los Feliz Towers Homeowners Ass'n Bd. Of Dirs*,
    426 F. Supp. 2d 1061 (2005)..........................................- 12 -, - 14 -

*Smith v. Keurig Green Mt., Inc.*,
    393 F. Supp. 3d 837 (N.D. Cal. 2019) ....................................... - 25 -

*Stanfield v. Tawkify, Inc.*
    No C 20-07000-WHA, 2021 U.S. Dist. LEXIS 175744 (N.D. Cal., Sept. 15,
    2021)................................................................... - 17 -

*Strojnik v. Forest Villas Inn II LLC*,
    No. CV-20-08328-PCT-DWL, 2021 U.S. Dist. LEXIS 99846 (D. Ariz. May
    26, 2021)............................................................... - 17 -

*Strojnik v. Hyatt Hotels Corp.*,
    No. CV-21-00741-PHX-DWL, 2022 U.S. Dist. LEXIS 29957 (D. Ariz. Feb.
    18, 2022)............................................................... - 17 -

*Svenson v. Google, Inc.*,
    No. 13-cv-04080-BLF, 2015 U.S. Dist. LEXIS 43902 (N.D. Cal. April 1,
    2015)................................................................... - 8 -

*Torliatt v. Ocwen Loan Servicing, LLC*,
    No. 19-cv-04303-WHO, 2021 U.S. Dist. LEXIS 131349 (N.D. Cal. July 14,
    2021)................................................................... - 18 -

v

*Wilderness Soc., Inc. v. Rey,*
        622 F.3d 1251 (9th Cir. 2010) .................................................................... - 8 -

*Zhang v. Ancestry.com Operations, Inc.*
        No. 21-cv-07652-LB, 22022 U.S. Dist. LEXIS 43131 (N.D. Cal. Mar. 10,
        2022)........................................................................................................... - 19 -

**STATUTES**

28 U.S.C
        § 1447(c) .................................................................................................... - 16 -

Cal. Business & Professions Code
        § 17203 .......................................................................................................... - 1 -

        § 17204 .......................................................................................................... - 6 -

        § 17508 ........................................................................................................ - 23 -

        § 17508(b) ................................................................................................... - 23 -

        § 17508(c) ................................................................................................... - 23 -

        § 17580(b) ..................................................................................................... - 4 -

        § 17580(d) ..................................................................................................... - 4 -

        § 17580(a) ..................................................................................................... - 1 -

        § 17580(a)(6) ............................................................................................... - 21 -

        §17580(b) .......................................................................................... - 23 -, - 24 -

        §17580(e) .................................................................................................... - 21 -

        §17580.5 ...................................................................................................... - 21 -

        § 42355 ........................................................................................................... - 3 -

Cal. Pub. Res. Code
        § 42355.5(b) ................................................................................................... - 4 -

        § 42355.51 ................................................................................................... - 21 -

        § 42355.51(b)(1) ............................................................................................ - 4 -

§ 42355.51(d)(4)........................................................................................................ - 5 -

§42355.51(d)(2)........................................................................................................ - 5 -

**REGULATIONS**

16 C.F.R.
        § 260.12(d) ..................................................................................... - 25 -

16 C.F.R.
        § 260.2 ............................................................................................. - 3 -

**OTHER AUTHORITIES**

2021 Cal. Legis. Serv. Ch. 507 (SB 343) ..............................................................*passim*

1

## I.    **INTRODUCTION**

2        Greenpeace, Inc.'s ("Greenpeace") Third Amended Complaint ("TAC") alleges that

3   Walmart Inc. ("Walmart") labels a variety of single-use plastic products as recyclable (the

4   "Products"), without maintaining records to substantiate that the Products are recyclable.  TAC at ¶

5   1.  Walmart's conduct violates California's Environmental Marketing Claims Act ("EMCA"),

6   which requires companies to maintain adequate substantiation of environmental marketing claims

7   and to provide that substantiation to any member of the public upon request.  Cal. Business &

8   Professions Code ("B&P") § 17580(a).  Walmart's unlawful and unfair business practices have

9   frustrated Greenpeace's mission, deprived Greenpeace of information it is entitled to under law,

10  and caused Greenpeace to spend money and staff time investigating and counteracting Walmart's

11  unsubstantiated recycling claims.  TAC ¶¶ 6, 13, 20-32, 34, 69-70, 77-78, 87-88.  These allegations

12  suffice to establish that Greenpeace has suffered injury in fact and lost money or property as a

13  result of Walmart's violations of law and has thus satisfied the standing requirements of

14  California's Unfair Competition Law ("UCL").  *See* B&P § 17203.

15       In its Order granting Walmart's Motion to Dismiss the First Amended Complaint ("FAC"),

16  the Court acknowledged that an organization can have UCL standing based on a diversion of

17  resources where such a claim "is not based on a misrepresentation to a consumer."  Order re: FAC,

18  p. 3 [ECF No. 40].  However, finding that the claims in the FAC were "based solely on Walmart's

19  alleged misrepresentations to consumers," the Court ruled that Greenpeace lacked UCL standing

20  since it had not pled that it had relied on those representations.  *Ibid.*

21       Greenpeace then filed a Second Amended Complaint ("SAC), which cured the standing

22  deficiency identified by the Court by divorcing Greenpeace's claims from any misrepresentation to

23  any third party.  Instead, both the SAC and the TAC allege a straightforward unlawful and unfair

24  claim under the UCL based on Walmart's failure to maintain the required documentation

25  substantiating its recycling claims.  The causal link between Walmart's unlawful and unfair failure

26  to substantiate its recycling claims and the organizational harm to Greenpeace is direct: had

27  Walmart maintained in written form information that substantiates its recycling claims, and had

28  Walmart then provided such information to Greenpeace upon request as required by law,

- 1 -

Greenpeace would not have been forced to divert time and money toward additional efforts to obtain such substantiation. Because Greenpeace does not allege misrepresentation under the fraudulent prong of the UCL or otherwise, Greenpeace is not required to show that it, or any third party, was deceived or relied on Walmart's recycling labels. Walmart's standing arguments to the contrary are merely a repeat of its arguments in its motion to dismiss the FAC, and disregard this key distinction that differentiates both the SAC and the TAC from the FAC. *See* MTD, Sec. I.

Notably, after reviewing the parties' briefing on Walmart's motion to dismiss the SAC, the Court no longer expressed any concerns with Greenpeace's standing under the UCL. Instead, the Court indicated its view that Greenpeace may not have adequately alleged ongoing harm to itself as required for Article III standing. Order re: SAC, pp. 3:18 – 4:3 [ECF No. 56]. The TAC addresses this issue by alleging with specificity the types of ongoing harm Greenpeace will continue to suffer absent injunctive relief from the Court, and by enumerating particular examples of those types of harm. *See, e.g.,* TAC ¶¶ 6, 13, 24-28, 31, 34, 70. By alleging that it is suffering ongoing harm as a result of Walmart's unlawful failure to substantiate its recycling claims, Greenpeace has alleged sufficient facts to satisfy Article III standing.

In its most recent Order, the Court also indicated its inclination to remand this case to state court if Greenpeace cannot allege ongoing harm sufficient to meet the requirements of Article III. Order re: SAC, p. 5:1-2. To the extent the Court concludes that the TAC has not cured this perceived deficiency, remand to state court is the correct outcome. Walmart's argument in favor of dismissal over remand relies upon a futility exception to 28 U.S.C. § 1447(c)'s remand mandate that does not exist. *See* MTD, Sec. II. In any event, remand will not be futile since in state court Greenpeace will not need to allege or prove ongoing harm to itself in order to secure injunctive relief. *See, e.g., McGill v. Citibank, N.A.,* 2 Cal. 5th 945 (2017).

This case, which seeks to vindicate important statutory rights and to address serious public harms, has been pending for nearly 18 months. Nevertheless, Walmart argues for the first time that this case should be stayed pending the California Supreme Court's ruling in the *California Medical Association* case. MTD, Sec. III. The Court should not further delay addressing the merits in the hopes that another unrelated case may provide guidance on Walmart's state law defenses. As for

1  the merits, Walmart repeats the same merits arguments it made last time around (*see* MTD, Sec.

2  IV), which fail for the same reasons Greenpeace explained in its opposition to that motion.  *See*

3  Opp. to Motion to Dismiss SAC [ECF No. 50].[1]

4  ## II.     LEGAL BACKGROUND

5       The Legislature of California has declared "it is the public policy of the state that

6  environmental marketing claims, whether explicit or implied, should be substantiated by competent

7  and reliable evidence to prevent deceiving or misleading consumers about the environmental

8  impact of plastic products."  Cal. Pub. Res. Code § 42355.5.  The policy is based on the

9  Legislature's finding that "littered plastic products have caused and continue to cause significant

10 environmental harm and have burdened local governments with significant environmental cleanup

11 costs."  *Id*. § 42355; TAC ¶ 7.

12      Similarly, EMCA and the Green Guides require companies to substantiate environmental

13 marketing claims.  B&P § 17580(a); 16 C.F.R. § 260.2.  Pursuant to EMCA, "[a]ny person who

14 represents in advertising or on the label or container of a consumer good that the consumer good

15 that it manufactures or distributes is not harmful to, or is beneficial to, the natural environment,

16 through use of such terms as 'environmental choice,' 'ecologically friendly,' 'earth friendly,'

17 'environmentally friendly,' 'ecologically sound,' 'environmentally sound,' 'environmentally safe,'

18 'ecologically safe,' 'environmentally lite,' 'green product,' or any other like term, shall maintain in

19 written form in its records…information and documentation supporting the validity of the

20 representation."  B&P § 17580(a).  EMCA specifically requires companies to maintain information

21 and documentation as to whether such products or packaging conform with the uniform standards

22 contained in the Green Guides for use of the terms "recycled" or "recyclable."  *Id*. § 17580(a)(5).

23 EMCA also requires that companies making environmental claims like recyclability maintain the

24 following records in written form: (1) the reasons why a company believes the representation to be

25 true; (2) any significant adverse environmental impacts directly associated with the production,

26 distribution, use, and disposal of the consumer good; (3) any measures that are taken by the

27
28 [1] To the extent Walmart repeats the same standing and merits arguments as before, Greenpeace has shorthanded its discussion of those issues here.  For a more fulsome explanation, Greenpeace refers the Court to its Opposition to Walmart's last motion to dismiss.  *See* ECF No. 50.

company to reduce the environmental impacts directly associated with the production, distribution, and disposal of the consumer good; and (4) violations of any federal, state, or local permits directly associated with the production or distribution of the consumer good. *Id.* § 17580(a)(1)-(4). Greenpeace collectively refers to all of this required documentation as "substantiation" throughout the TAC and herein.

The California Legislature declared its intent that the information and documentation supporting the validity of any environmental marketing claims shall be fully disclosed to the public. B&P § 17580(d). To that end, EMCA requires companies to provide all the information and documentation that must be maintained pursuant B&P § 17580 to any member of the public upon request. *Id.* § 17580(b); *see also* TAC ¶¶ 8, 33, 35, 73.

California and federal law establish clear metrics to determine whether a product is recyclable. According to the Green Guides, "[a] product or package shall not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a). This definition encompasses the three prongs of recyclability that are commonly used in the solid waste industry: (1) accessibility of recycling programs ("through an established recycling program"); (2) sortability for recovery ("collected, separated, or otherwise recovered from the waste stream"); and (3) end markets ("for reuse or use in manufacturing or assembling another item"). TAC ¶ 10. The California Public Resources Code similarly defines recycling as "the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace." Cal. Pub. Res. Code § 40180; TAC ¶ 10.

The recently passed Senate Bill 343 ("SB 343") confirms that California law requires that, in order to be labeled as recyclable, products and packaging must be recycled in practice and not just in theory. *See, e.g.,* Cal. Pub. Res. Code § 42355.5(b) ("it is the public policy of the state that claims related to the recyclability of a product or packaging be truthful *in practice* and accurate.") (emphasis added); *id.* § 42355.51(b) (1) (recycling representation is deceptive unless the product or

packaging "is of a material type and form that routinely becomes feedstock used in the production of new products or packaging"); *id.* § 42355.51(d)(2) (product or packaging is not considered recyclable unless made of a "material type and form" that is collected for recycling, and "sorted into defined streams for recycling . . . with the defined streams sent to and reclaimed at a reclaiming facility," for at least 60 percent of the population); *id.* § 42355.51(d)(4) (product or packaging recyclable if "not less than 75 percent of the product or packaging sorted and aggregated in the state is reprocessed into new products or packaging.").  SB 343 also amended EMCA by: (1) adding "through the use of a chasing arrows symbol or by otherwise directing a consumer to recycle a consumer good" to the enumerated examples of representations that a consumer good is "not harmful to, or is beneficial to, the natural environment" and must therefore be substantiated, and (2) adding whether a consumer good conforms to California's new recycling guidelines as an enumerated item that must be included in a company's substantiation.

### III.   FACTS

All of the following facts are presumed true for purposes of the MTD.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Walmart advertises, markets, and sells the Products as recyclable without maintaining written records that substantiate its claims.  TAC ¶¶ 1, 31, 33, 35.

Greenpeace is a non-profit public interest organization that works to combat plastic pollution and other environmental harms, to protect California coasts from harms related to plastic pollution, and to ensure that companies do not falsely tout the environmental benefits of their products.  *Id.* ¶ 13.  In late 2018, Greenpeace began research on the plastic and recycling policies and practices of Walmart and other retailers.  *Id.* ¶¶ 20-21.  Greenpeace spent money, staff time, and other resources organizing its supporters to raise awareness of Walmart's contribution to the proliferation of plastic pollution.  *Id.* ¶¶ 17-21.  Greenpeace's California staff specifically investigated Walmart and sought substantiation that the Products are recyclable.  *Id.* ¶¶ 13-22.  When Walmart failed to provide such substantiation, Greenpeace staff continued to spend time, money, and other organizational resources to convince Walmart to provide such substantiation and to discourage Walmart from labeling the Products as recyclable without substantiation.  *Id.* ¶¶ 21-26, 28-36.  Walmart failed to do so.

Greenpeace continues to divert time and resources to investigate and to counter Walmart's failure to substantiate its recycling claims.  TAC ¶¶ 6, 7, 14-20, 22-23, 26-27, 31, 65, 72-73, 83. This diversion of resources comes at the expense of spending money, staff time and other resources on other organizational priorities, such as the national bottle deposit program and its work to pass the Break Free From Plastic Pollution Act.  *Id*. ¶¶ 6, 13, 21-22, 27-28, 31, 33-36.  As a result of Walmart's failure to substantiate its recycling claims, Greenpeace has had to reallocate the organization's staff time and money to continue investigating Walmart's claims.  *Ibid*.

Greenpeace does not seek any monetary relief.  Rather, Greenpeace seeks an injunction to require Walmart to substantiate its recycling representations or to prohibit Walmart from marketing its Products as recyclable without providing substantiation.  TAC, Prayer for Relief.  Absent such relief, Greenpeace will continue to suffer irreparable harm because it will be forced to continue to spend money, staff time, and other organizational resources to combat Walmart's unsubstantiated recycling claims.  *Id*. ¶¶ 6, 7, 14-20, 22-23, 26-27, 31, 65, 72-73, 83.  Greenpeace's efforts to protect natural resources and to promote legitimate recycling and sustainable business practices will also continue to suffer so long as Walmart continues marketing Products as recyclable without maintaining records to substantiate those claims.  This failure will continue to negatively impact Greenpeace's mission.  *Id*. ¶¶ 27, 65, 72, 82.

## IV.   <u>ARGUMENT</u>

### A.  Greenpeace Has Standing Under the Both the UCL and Article III.

#### 1.  There Are Important Differences Between UCL and Article III Standing.

Walmart conflates UCL and Article III standing, but there are important differences between the two doctrines.  To be sure, Greenpeace must allege "injury in fact" for purposes of both the UCL and Article III, and this injury in fact element is fundamentally the same under both inquiries.  *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011).  But each standing doctrine has separate and distinct requirements that the other does not.  For UCL standing purposes only, Greenpeace must also allege that it "*lost* money or property" as a result of Walmart's unlawful conduct.  B&P § 17204, *emphasis added*.  Importantly, though, like the injury in fact prong ("suffered"), this standing requirement is expressed in the past ("lost") (*id.*), and Greenpeace

is not required to allege an ongoing injury in fact or loss of money or property for UCL standing purposes (although it does).  TAC ¶¶ 15, 30-36.  And for Article III standing purposes only, Greenpeace must allege an *ongoing* injury in fact to itself in order to secure injunctive relief, the only remedy sought here.  In other words, there is a temporal aspect of the Article III standing inquiry that simply does not apply for UCL purposes.  *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  To the contrary, under the UCL, Greenpeace is entitled to seek injunctive relief to prohibit Walmart's unlawful business practices that threaten future injury to the general public irrespective of whether Greenpeace itself is still suffering any harm.  *See, e.g., McGill*, 2 Cal. 5th at 959; *Olosoni v. HRD Tax Grp., Inc.,* 2019 U.S. Dist. LEXIS 224869 (November 5, 2019).  This latter distinction is important because it dictates remand here, rather than dismissal, if the Court concludes that Greenpeace lacks Article III standing.

In sum, Greenpeace can satisfy UCL standing by alleging it suffered injury in fact and lost money or property as a result of Walmart's unlawful conduct irrespective of whether Greenpeace continues to suffer ongoing harm, and Greenpeace can satisfy both UCL and Article III standing by alleging that it has and continues to suffer ongoing, non-monetary harm.  Because Greenpeace has done both, Walmart's standing arguments should be rejected.  However, to the extent the Court disagrees as to Greenpeace's Article III standing, remand and not dismissal is the proper remedy.

### 2.  Greenpeace Has Adequately Alleged Injury In Fact (UCL and Article III).

As Walmart concedes, injury in fact is the same under the UCL and Article III, and the injury in fact requirement is construed broadly to encompass, for example, harm to aesthetic interests, recreational interests, environmental interests, and other intangible harms.  MTD, pp. 7: 21-22 and 8:2-3.  *See, e.g., Friends of the Earth v. Laidlaw Envtl. Servs (TOC), Inc.* 528 U.S. 167, 183 (2000); *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 U.S. Dist. LEXIS 244695, at *45-46 (N.D. Cal. Dec. 22, 2021).  Here, Greenpeace alleges injury in fact that suffices for purposes of both the UCL and Article III.

For instance, Greenpeace alleges that, by depriving it of information to which it is entitled under EMCA, Walmart is depriving the organization of its statutory rights.  TAC ¶ 36.  Courts have recognized that this type of informational injury can give rise to Article III standing.  *See, e.g.,*

1    *Asbestos Disease Awareness Org. v. Wheeler*, 508 F. Supp. 3d 707, 716 (N.D. Cal. 2020) (plaintiffs

2    demonstrated injury as a result of the lack of access to accurate information under federal law);

3    *FEC v. Akins*, 524 U.S. 11, 21 (1998); *Envtl. Def. Fund v. EPA*, 922 F.3d 446, 452 (D.C. Cir.

4    2019); *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010); *Animal Legal Def.

5    Fund v. United States Dep't of Agric.*, 953 F.3d 858, 867-68 (9th Cir. 2019).

6         As discussed in more detail below, Greenpeace also alleges economic harm as a result of

7    Walmart's unlawful and unfair business practices.  *See* Section 3, *infra*.  This economic injury in

8    the form of staff time, money, and other organizational resources also qualifies as injury in fact

9    under both the UCL and Article III.  *See, e.g., Kwikset*, 51 Cal. 4th at 322; *Maya v. Centex Corp*.,

10   658 F.3d 1060, 1069 (9th Cir. 2011).

11        **3.  Greenpeace Has Adequately Alleged Loss of Money or Property (UCL).**

12        Unlike Article III, the UCL requires a loss of money or property caused by the business

13   practice at issue.  *See, e.g., Kwikset Corp.*, 51 Cal. 4th at 322.  However, California courts have

14   recognized that there are "innumerable ways" to demonstrate economic injury from unfair

15   competition.  *Cappello v. Walmart Inc*., 394 F.Supp.3d 1015, 1019 (N.D. Cal. 2019).  Greenpeace

16   has met these requirements by alleging that it diverted resources and spent organizational time and

17   money to investigate and counter Walmart's unlawful and unfair failure to substantiate its recycling

18   claims.  Walmart's arguments to the contrary ignore the allegations of the TAC and UCL standing

19   jurisprudence.

20        As an initial matter, Walmart mischaracterizes the TAC by alleging that Greenpeace's

21   claims are tied to deception and that Greenpeace is thus required to plead reliance.  MTD 8:13-9:8.

22   To the contrary, the TAC alleges claims under the UCL for unlawful and unfair business practices

23   because Walmart failed to maintain and provide the written records required under EMCA to

24   substantiate its recycling claims.  Because the TAC no longer alleges a UCL claim based on fraud,

25   it does not need to allege reliance on any misrepresentation.

26        Reliance is only required where a plaintiff's claims are based on a misrepresentation under

27   the UCL.  *Svenson v. Google, Inc*., No. 13-cv-04080-BLF, 2015 U.S. Dist. LEXIS 43902 at *9-10

28   (N.D. Cal. April 1, 2015).  The Court previously acknowledged this point [ECF No. 40, p. 3],

which Walmart itself has conceded (*see* MTD SAC at 10:12-14 [ECF No. 45]).  Indeed, "[w]hen a plaintiff alleges a different type of unfair competition not based on a misrepresentation…courts have dispensed with the actual reliance requirement." *Cappello*, 394 F.Supp.3d at 1020.  *See also Kissel v. Code 42 Software, Inc.*, No. 8:15-cv-01936, 2016 U.S. Dist. LEXIS 184368, at *8 (C.D. Cal. Apr. 14, 2016) ("[T]he California Supreme Court has consistently indicated that this concept of reliance may not apply to UCL claims that do not sound in fraud."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 n. 9 (Cal. 2009) (noting in a UCL deceptive case that the court "need express no views concerning the proper construction of the cause requirement in other types of cases."); *LegalForce RAPC Worldwide P.C. v. DeMassa,* No. 18-cv-00043-MMC, 2020 LEXIS 2148021, at *11-12 (N.D. Cal. Aug. 17, 2020).

Imposing a reliance requirement is nonsensical where, as here, a UCL claim is not tethered to any misrepresentation.  Simply put, Greenpeace need not allege that it relied to its detriment on Walmart's alleged misrepresentations, or that any consumer did, because those misrepresentations are no longer an element of Greenpeace's claims.  Instead, standing is satisfied by alleging a causal connection between a loss of money or property (Greenpeace's diversion of resources) and the unlawful conduct (Walmart's failure to maintain in written form records that substantiate its recycling claims and its refusal to provide that information to Greenpeace upon request).

Walmart does not cite to a single case in which a court has imposed a reliance requirement for a UCL claim that is not tied to a misrepresentation claim, and Greenpeace is aware of none.  Instead, Walmart relies upon a set of cases alleging misrepresentation under the UCL, which are not applicable here.  MTD 8:13-9:8.[2]

Walmart further argues that the TAC fails because Greenpeace has not alleged that it lost money or property due to Walmart's failure to substantiate, but this argument disregards the detailed allegations in the TAC.  *See, e.g.,* MTD 9:10 – 11:10.

First, Walmart argues that Greenpeace has not alleged sufficient facts to support

---

[2] *In re iPhone Applic. Litig.* 6 F. Supp. 3d 1004 (N.D. Cal. 2013) (plaintiffs failed to allege they actually *saw* the manufacturer's alleged misrepresentations, let alone relied on them); *Kwan v. SanMedica Internat'l*, 854 F.3d 1088 (9th Cir. 2017) (plaintiff failed to properly allege that defendant's marketing claims were actually false); *Lytle v. Nutramax Laboratories, Inc*., 2019 U.S. LEXIS 228123 (Sept. 26, 2019) (plaintiff's allegations held to heightened fraud pleading standard).

Greenpeace's claim that Walmart has failed to substantiate its recycling claims.  MTD 9:10-24.
For instance, while conceding that the law does not establish a formal procedure for requesting
substantiation, Walmart faults Greenpeace for failing to allege that it complied with this non-
existent procedural requirement.  MTD 5:25-26 and 9:18-19.  As Walmart acknowledges, the TAC
alleges that Greenpeace requested such substantiation on numerous occasions (MTD 9:12-14), and
the TAC goes on to detail numerous examples of such substantiation requests.  TAC ¶¶ 5-6,  20,
22-25, 30, 33.  Nothing more is required under either EMCA or UCL pleading standards.

      Next, Walmart argues that, to the extent Greenpeace spent resources seeking substantiation
from Walmart, those expenditures could not have been caused by Walmart's failure to substantiate
since they happened before Greenpeace learned that Walmart refused to provide substantiation.
MTD 10:5-11.  Had Walmart complied with EMCA by maintaining written records substantiating
its recycling claims and by providing those records to Greenpeace upon request, Greenpeace would
lack standing to sue Walmart for its time and expenses incurred seeking such substantiation (nor
would any such claim have merit).  However, having refused to provide such substantiation,
Walmart's efforts to parse time spent by Greenpeace before and after Greenpeace initially
requested such substantiation are irrelevant.  In any event, Walmart concedes (as it must) that
Greenpeace has alleged a loss of time and money after requesting substantiation from Walmart
(MTD 10:12-26), which suffices to confer standing on Greenpeace under the UCL.

      Walmart also argues that the time and expenses incurred by Greenpeace were not caused by
Walmart's refusal to substantiate its recycling claims since Greenpeace would have spent those
organizational resources anyway as part of Greenpeace's overall mission of addressing plastic
pollution.  MTD 10:13-28 and 11:23-13:25.  To be sure, Greenpeace would have spent time and
money combatting the proliferation of plastic irrespective of how Walmart responded to
Greenpeace's substantiation request.  However, Walmart's failure to maintain and provide such
substantiation forced Greenpeace to divert resources from its other efforts in order to address
Walmart's violations of California law.  TAC ¶¶ 6, 13, 21-22, 27-28, 33-36.

      In support of its argument that Greenpeace has not expended additional resources beyond its
ordinary work in combatting plastic pollution, Walmart cites to a line of cases involving multiple

litigation efforts against Sanderson Farms' use of antibiotics.  MTD 12:20-13:26.  The Sanderson

Farms cases are distinguishable as they involved serial attempts by the same organizational

plaintiffs to challenge alleged misrepresentations that had not caused them harm.  Here, by contrast,

Greenpeace is not trying to manufacture standing, is not pursuing duplicative claims that were

already dismissed in another case and is not alleging a misrepresentation claim.  The TAC sets

forth precisely how Greenpeace took specific steps to investigate and address Walmart's unlawful

failure to substantiate.  TAC ¶¶ 20-34.  Although part of Greenpeace's mission is to reduce plastic

pollution, Greenpeace took actions it otherwise would not have taken to investigate Walmart's

failure to maintain written records supporting its recycling claims, including diverting resources it

would have spent elsewhere requesting Walmart's records that substantiate its recycling claims and

continuing to engage with Walmart on these issues.  *Ibid.  Cf. In Defense of Animals*, 2021 U.S.

Dist. LEXIS 177626 at *5 (plaintiff failed to include "specific averments about what it would have

done with its time and money otherwise").

   Walmart also cites *Mayron v. Google LLC*, 54 Cal. App. 5th 566 (2020) in support of its

standing argument (MTD 9:27-10:11), but *Mayron* is easily distinguishable.  In that putative class

action, plaintiff challenged Google's data storage charges under the UCL based on a California law

requiring disclosures for automatic renewal charges.  *Mayron*, 54 Cal. App. 5th at 571.  The Court

found that, to establish standing, plaintiff would have needed to allege that he would not have

ordered Google storage had the disclosures been provided, or that he would have canceled the

storage if it had been easier to do so.  *Id*.  However, Plaintiff made no such allegations, which the

Court found "suggests he would have purchased and maintained the added Google Drive capacity

even if Google had complied with the automatic renewal law."  *Id*.  Essentially, the court in

*Mayron* found that there was no causal connection between the injury and the unlawful business

practice because the plaintiff would have paid the same amount whether or not Google complied

with the automatic renewal law.  *Id*. at 575.  By contrast, the TAC details Greenpeace's

expenditures as a result of Walmart's failure to substantiate—steps that it would not have needed to

take absent Walmart's violation of the law.  TAC ¶¶ 21-28, 30-35, 69-70.  This harm suffered by

Greenpeace and caused by Walmart's violations of law suffices for UCL standing.

1    Finally, Walmart suggests that Greenpeace's expenditures could not have been caused by

2    Walmart's failure to maintain and provide substantiation of its recycling claims because

3    Greenpeace already suspected those claims to be false.  MTD 10:13-28.  This is another red herring

4    since, irrespective of Greenpeace's suspicions, Greenpeace would not have been forced to spend

5    time and money pursuing Walmart to obtain legally required substantiation had Walmart simply

6    complied with EMCA in the first place.

7                    **4.  The UCL Allows Organizational Standing.**

8    Ultimately, Walmart's standing arguments all depend on its contention that there is no such

9    thing as organizational standing under the UCL.  *See* MTD 13:27–17:15.  The Court should decline

10   Walmart's invitation to depart from UCL jurisprudence in this fashion.

11   California and federal courts have affirmed that organizations have standing to pursue UCL

12   claims on their own behalf where, as here, an organization has directly suffered an injury in fact

13   due to a defendant's unfair or unlawful conduct.  *See, e.g.*, *Animal Legal Defense Fund v. LT NAPA*

14   *Partners LLC*, 234 Cal. App. 4th 1270 (2015) ("*ALDF I*"); *Animal Legal Defense Fund v. Great*

15   *Bull Run, LLC*, No. 14-cv-01171-MEJ, 2014 U.S. Dist. LEXIS 78367 (N.D. Cal. June 6, 2014)

16   ("*ALDF II*") (organization had standing to bring a UCL claim for violation of animal cruelty laws);

17   *People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-04301,

18   2016 U.S. Dist. LEXIS 11006 (N.D. Cal. Jan. 29, 2016); *S. Cal. Hous. Rights Ctr. v. Ass'n & Los*

19   *Feliz Towers Homeowners Ass'n Bd. of Dirs.*, 426 F. Supp. 2d 1061 (C.D. Cal 2005).  Under the

20   UCL, a plaintiff can establish standing by showing a loss or deprivation of money or property that

21   "was the result of, i.e., *caused by*" the unfair business practice.  *Kwikset*, 51 Cal. 4th at 320.  When

22   an organization is forced to divert its resources to identify and counteract unlawful activity that

23   frustrates its mission, the organization has suffered an injury in fact sufficient to warrant standing.

24   *ALDF II*, 2014 U.S. Dist. LEXIS 78367, at *12.  The proper focus of the inquiry is whether the

25   plaintiff undertook the expenditures in response to, and to counteract, the effects of the defendant's

26   alleged misconduct.  *ALDF I*, 234 Cal. App. 4th at 1283.  Here, Walmart's failure to maintain and

27   provide the required substantiation regarding the recyclability of its Products has directly injured

28   Greenpeace because it has spent a significant amount of money, staff time, and other organizational

- 12 -

1  resources investigating and counteracting Walmart's violations of California law.

2         Notably, all of the arguments raised by Walmart would apply equally to the plaintiff in

3  *ALDF I*, a case Walmart is unable to distinguish.  In *ALDF I*, the California Court of Appeal held

4  that an organizational plaintiff had standing to pursue a restaurant under the UCL for serving foie

5  gras in violation of the law.  234 Cal. App. 4th at 1283-84.  The Court found that plaintiff's

6  expenditure of time and money qualified for purposes of UCL standing even though, as here: (1)

7  the organization spent time and money both before and after suspecting defendant's unlawful

8  conduct (as will be the case in virtually every UCL case), (2) the expenditure of time and money

9  was consistent with the organization's longstanding mission, and (3) the investigation was

10 prompted by the plaintiff's suspicions that the defendant was violating the law.  Nevertheless,

11 relying on *Kwikset*, the court determined that the plaintiff had standing because it lost money to

12 counteract defendant's violation of law, which frustrated the organization's mission of prohibiting

13 the sale of foie gras.  *Id.*

14        Just as in *ALDF I*, Greenpeace brings claims under the unlawful and unfair prongs of the

15 UCL, and the TAC provides detailed accounts of the money and time it has spent engaging with

16 Walmart as a direct result of Walmart's continued failure to substantiate its recycling claims.  Just

17 like the plaintiff in *ALDF I*, Greenpeace suspected that defendant was selling products in violation

18 of a statute, hired an investigator to determine whether that was true, diverted staff resources to

19 evaluate the results of the investigation, and directly contacted defendant to address the issue

20 without litigation.  TAC ¶¶ 13-29.  Thus, Greenpeace has alleged it lost money, staff time, and

21 other organizational resources to counteract Walmart's failure to maintain and provide written

22 substantiation for its recycling claims.  *Id.* ¶¶ 30-36.

23        In seeking to overturn organizational standing under the UCL, Walmart notes that the

24 California Supreme Court has expressly held that the federal doctrine of "associational standing"

25 conflicts with the amended UCL.  MTD 14:7 (*citing Amalgamated Transit Union, Loc. 1756, ALF-*

26 *CIO v. Sup. Ct.,* 46 Cal. 4th 993 (2009)).  This finding is immaterial to the present case.

27 Greenpeace is not bringing this case on behalf of any third parties, despite Walmart's claims to the

28 contrary.  Thus, Walmart's continued reliance on *Amalgamated Transit* is unavailing.  The UCL

requires that a plaintiff lost money or property as a result of the defendant's conduct.  The UCL does not expressly forbid an organization from bringing a UCL claim on behalf of itself, and the idea that an organization is barred from bringing an unlawful or unfair claim when the organization itself has suffered harm runs contrary to both law and public policy.  *See S. Cal. Hous. Rights Ctr.*, 426 F. Supp. 2d 1061 (2005) (finding that the plaintiff organization has standing "because it presents evidence of actual injury based on loss of financial resources in investigating this claim and diversion of staff time from other cases to investigate the allegations here...(which) frustrates (plaintiff organization's) goals.").

Relying on *California Med. Assoc. v. Aetna Health of Cal., Inc.*, 63 Cal. App. 5th 660 (2021) ("*CMA*"), Walmart claims that Greenpeace lacks standing because it was not directly injured by Walmart's conduct.  MTD 14:5-17.  In *CMA*, an organization brought a UCL claim on behalf of its members, despite the explicit prohibition on doing so established by *Amalgamated Transit*.  The Court held that, in order to have standing to bring a UCL claim, an organization must allege that the organization itself, and not just its members, lost money or property.  *CMA*, 63 Cal. App. 5th at 667.  The Court in *CMA* distinguished *ALDF I* for the same reasons Greenpeace's case is distinguishable from both *Amalgamed Transit* and *CMA*: "[t]he key factual and procedural distinction is that the plaintiff in [ALDF] did not bring a representative action, as CMA did in this case."  *Id*. at 669.

The same is true here. The claims in the TAC are not based upon deception, and are not based on an injury to consumers, Greenpeace's members, recycling facilities, or Walmart's competitors.  To be sure, the TAC alleges facts about injuries to each of those constituents to highlight the downstream impacts of Walmart's practice of making false and unsubstantiated recycling claims.  *See, e.g.,* TAC ¶¶ 52-64, 68-70, 77-78, 87.  However, for standing purposes, Greenpeace has alleged it suffered an *economic injury* because it has been forced to continue expending financial resources and staff time *as a result of* Walmart's failure to maintain and provide written records that substantiate its recyclability claims.  *Id.* ¶¶ 6, 13, 19-28, 30-36.

**5.   Greenpeace Has Alleged Ongoing Injury In Fact Under Article III.**

Because Greenpeace has adequately alleged injury in fact for UCL purposes, Greenpeace has also sufficiently pled injury in fact for Article III purposes.  However, as the Court's Order on the SAC recognized, Article III has an additional standing requirement: Greenpeace must also allege that it is suffering ongoing injury in fact in order to secure injunctive relief.  Order re: SAC, [ECF No. 56].  Greenpeace has addressed the Court's concern by adding more details and specificity to its allegations that it will continue to suffer harm in various respects unless and until Walmart is enjoined from continuing its unlawful failure to substantiate its recycling claims.  TAC ¶¶ 6, 7, 14-20, 22-23, 26-27, 31, 65, 72-73, 83.

Notably, Walmart does not even argue that Greenpeace has failed to allege ongoing harm for purposes of Article III standing.[3]  Perhaps that is because the TAC provides numerous examples of the ways in which Greenpeace continues to suffer injury in fact as a result of Walmart's unlawful refusal to substantiate its recycling claims.  For example, Greenpeace alleges that it is still being deprived of information to which it is entitled under EMCA, which is the type of informational injury courts have recognized as sufficient under Article III.  TAC ¶ 36, *see also Wheeler*, 508 F. Supp. 3d at 716. And Walmart's continuing refusal to comply with EMCA by substantiating its recycling claims is diverting Greenpeace's time and resources that it would otherwise have spent engaging with other corporations or on other policy initiatives.  TAC ¶¶ 6, 13, 21-22, 27-28, 33-36.

The TAC makes it clear that Greenpeace's injuries will continue so long as Walmart continues failing to maintain the required substantiation necessary to make recyclable claims on the Products.  *See*, *e.g.*, TAC ¶¶ 6, 27, 65, 72, 82.  Although the injunctive relief Greenpeace seeks would also aid the State of California itself (its environment, its wildlife, its recycling infrastructure, its businesses, and its communities) and its residents, such additional benefits do not negate the fact that Greenpeace itself will continue to suffer injury to combat Walmart's unsubstantiated representations.  As long as Walmart fails to substantiate the recyclability of the

---

[3] Walmart has also dropped its previous argument that Greenpeace has failed to allege sufficient facts that it is entitled to injunctive relief.  *See* MTD, Sec. III [ECF No. 19]; MTD FAC, Sec. III [ECF No. 26]; MTD SAC, Sec. III [ECF No. 45].

Products, Greenpeace will be forced to continue exerting resources that could be spent elsewhere ensuring that Walmart comply with the law.  TAC ¶¶ 6, 26-27, 65, 72, 82.  Those ongoing injuries suffice to provide Greenpeace with Article III standing to pursue injunctive relief in federal court.

### B.  The Court Should Remand This Case If It Concludes That Greenpeace Lacks Article III Standing.

Greenpeace has Article III standing to pursue its claims in federal court.  However, to the extent the Court disagrees, remand and not dismissal is the proper remedy.

Walmart's remand argument is based on *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991), a case that, "although never expressly overruled, is no longer good law." *Baugh v. Holde*r, No. 3-13-CV-00561-ST, 2014 U.S. Dist. LEXIS 98814, at *4-5 (D. Or. Apr. 21, 2014), *see also Polo v. Innovations Int'l, LLC,*  833 F.3d 1193 (9th Cir. 2016); *Jordan v. Viceroy Hotel Mgmt., LLC*, No. 21-cv-01338-HSG, 2021 U.S. Dist. LEXIS 110181, at *6-7 (N.D. Cal. June 11, 2021); *Int'l Primate Prot. League v. Adm'rs of Tule Educ. Fund*, 500 U.S. 72, 87-89 (1991).  Indeed, just a few months after *Bell* was decided, the Supreme Court declined to apply the futility exception to the remand rule, noting that "'the literal words of § 1447(c). . .on their face, give no discretion to dismiss rather than remand an action.'" *Int'l Primate Prot. League,* at 89.[4]

In any event, even if there is a futility exception to the remand mandate of Section 1447(c), "a district court must have "absolute certainty" that a state court would "simply dismiss the action on remand." *Polo*, 833 F.3d at 1198.  Only when the "eventual outcome of a case after remand is so clear as to be foreordained" have district courts held that they may dismiss a case, instead of remand it to state court.  *Id*.  Remand here is not futile since, irrespective of whether it has Article III standing to pursue injunctive relief, Greenpeace still has viable claims in state court.  This is because, regardless of any ongoing harm to Greenpeace itself, the UCL authorizes Greenpeace to pursue "public" injunctive relief like the kind sought here so long as Greenpeace suffered injury in fact and lost money or property in the past as a result of Walmart's unlawful conduct (which it has). *See McGill*, 2 Cal. 5th at 955 (2017); *Olosoni,* 2019 U.S. Dist. LEXIS 224869, at *12 (N.D. Cal. Nov. 5, 2019).  As the California Supreme Court explained in *McGill*, "public injunctive relief

---

[4] 28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction the case *shall* be remanded."

under the UCL… is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill* at 955. The Court contrasted such public injunctive relief with "private" injunctive relief, which has "the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff." *Ibid.* And the Court easily concluded that an injunction prohibiting Citibank from using false and misleading advertisements to market its credit protection plans would provide relief to the general public.

Here, while Greenpeace is suing based its own harm, the TAC makes it clear that the injunctive relief sought by Greenpeace is to benefit the general public. *See, e.g.,* TAC ¶¶ 6, 35-36, 45, 70, 77, and 87. For instance, the TAC enumerates the various ways in which Walmart's unsubstantiated recycling representations on the Products contribute to plastic pollution, impede legitimate recycling efforts, confuse consumers, deprive the public of its right to access statutorily required information, and provide Walmart with an unfair advantage over its competitors. *Ibid.* An injunction prohibiting Walmart from continuing its unlawful practice of making unsubstantiated recycling claims will provide relief to the general public by mitigating these harms to the general public. Therefore, to the extent the Court concludes that Greenpeace lacks Article III standing to pursue injunctive relief, the Court should remand the case to California state court to enable Greenpeace to pursue its statutory right to seek public injunctive relief under California law.

The cases Walmart cites in support of dismissal over remand are all easily distinguishable as they involved cases of vexatious litigants filing duplicative and meritless claims (*Strojnik v. Forest Villas Inn II LLC*, No. CV-20-08328-PCT-DWL, 2021 U.S. Dist. LEXIS 99846 (D. Ariz. May 26, 2021); *Strojnik v. Hyatt Hotels Corp.*, No. CV-21-00741-PHX-DWL, 2022 U.S. Dist. LEXIS 29957 (D. Ariz. Feb. 18, 2022), cases in which Article III standing and jurisdiction were not even at issue (*Stanfield v. Tawkify, Inc*. No C 20-07000-WHA, 2021 U.S. Dist. LEXIS 175744 (N.D. Cal., Sept. 15, 2021) at *23-24)), or cases in which remand would clearly be futile. *See Romero v. United States Postal Serv.*, No. CV 20-6685-PSG, 2020 U.S. Dist. LEXIS 247498 (C.D. Cal. Nov. 23, 2020) at *4-5 (state court lacked jurisdiction over tort claims against federal government); *Advocs. for Individuals with Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891,

895 (D. Ariz. 2017) (state court had decided more than 1,000 substantively similar cases and found

that plaintiffs did not have standing).  Here, to the extent Article III standing is found to be lacking,

there is no reason to preclude Greenpeace from pursuing its state law claims in California superior

court where this case was originally filed.

### C.  The Court Should Not Stay The Case To Await A Ruling In *California Medical Association*.

Without even citing the correct legal standard or bothering to file a motion to stay, Walmart

also asks the Court to stay this case pending the California Supreme Court's decision in *CMA*.  The

Court should decline this improper request.

Walmart fails to cite the correct legal standard for issuance of a stay.  The Ninth Circuit has

established the following framework for evaluating whether to stay a case to await the outcome of

an unrelated proceeding:

> Where it is proposed that a pending proceeding be stayed, the competing interests which
> will be affected by the granting or refusal to grant a stay must be weighed.  Among those
> competing interests are the possible damage which may result from the granting of a stay,
> the hardship or inequity which a party may suffer in being required to go forward, and the
> orderly course of justice measured in terms of the simplifying or complicating of issues,
> proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *Landis v. North American

Co.*, 299 U.S. 248 (1936)).  When weighing the relevant interests, the Court must be mindful that

"if there is even a fair possibility that the stay for which he prays will work damage to someone

else," the moving party "must make out a clear case of hardship or inequity in being required to go

forward." *Id.* at 1112. "Only in rare circumstances will a litigant in one cause be compelled to step

aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at

1109-10.  Moreover, "being required to defend a suit, without more, does not constitute a

clear case of hardship or inequity." *Id.* at 1112. *See also Torliatt v. Ocwen Loan Servicing, LLC*,

No. 19-cv-04303-WHO, 2021 U.S. Dist. LEXIS 131349 (N.D. Cal. July 14, 2021).

Here, Walmart has not articulated any harm it will suffer if this suit is allowed to proceed.

In fact, other than the cost of defending this suit – which does not qualify under *Landis* and its

progeny – Walmart will not suffer any hardship if its stay request is denied.  On the other hand, the

TAC enumerates severe harm to Greenpeace, the environment, recycling infrastructure, Walmart's

- 18 -

competitors, and the public interest if Walmart is permitted to continue to make unsubstantiated recycling claims on the Products.  *See, e.g.,* TAC ¶¶ 6, 34-36, 55-70, 73, 76-78,83-88.

It is also unclear whether the California Supreme Court's ruling in *CMA* will have provide any relevant guidance to the resolution of this case.  While organizational standing may be addressed in that appeal, the main thrust of the lower courts' opinions are directed at the concept of associational standing, which has no bearing on this case.  Staying this case based on the mere possibility that the ruling in *CMA* may be useful makes no sense.  Indeed, if courts routinely stayed every case any time another unrelated case may have some precedential impact, the wheels of justice would quickly grind to a halt.[5]

Greenpeace filed this important public interest suit in state court nearly 18 months ago.  Ironically, while Walmart was the one to remove this case to federal court and is now resisting remand, its request for a stay is based on the notion that California state courts are best positioned to resolve the organizational standing questions being raised here.  To be sure, this case raises important and interesting issues of state law that can and should be resolved expeditiously.  Instead, Walmart's procedural machinations have landed this case in federal court and precluded a ruling on the merits.  The Court should reject Walmart's invitation for further delay and either deny Walmart's motion in its entirety or, if the Court concludes that Greenpeace lacks Article III standing to pursue injunctive relief, remand the case to state court.

**D.  Walmart Is Required To Substantiate Its Recyclability Claims Under EMCA.**

By its plain language, EMCA requires companies like Walmart to maintain substantiation of their recycling claims and to provide that substantiation to any member of the public upon request.  B&P § 17580(a).  Nevertheless, citing to legislative history that does not support its position, Walmart argues that EMCA's substantiation obligation does not apply to recycling claims.  The Court should reject Walmart's effort to rewrite the statute.

---

[5] Walmart relies on *Zhang v. Ancestry.com Operations, Inc*. to support its contention that a stay is justified. MTD 20:10-20.  But *Zhang* is easily distinguishable, as that case involved two cases with the same facts and parties that had already been "deemed related."  No. 21-cv-07652-LB, 22022 U.S. Dist. LEXIS 43131 (N.D. Cal. Mar. 10, 2022).  In *Zhang*, the court found that plaintiffs were attempting to litigate in California state court the same claims that the court dismissed due to the plaintiffs' lack of standing that were then before the Ninth Circuit.  *Id*. at *1-2. This is plainly not the case here.

Since at least 1990, EMCA has required substantiation with respect to any representation that a consumer good "is not harmful to, or is beneficial to, the natural environment . . . ."  B&P § 17580(a).  A representation that a product is recyclable qualifies under this standard since the only benefit to recycling is to minimize a product's impact on the environment by re-using that product's raw materials to make new products instead of disposing of them in the natural environment.  EMCA enumerates examples of the types of terms that are covered by its substantiation obligation: "'environmental choice,' 'ecologically friendly,' 'earth friendly,' 'environmentally friendly,' 'ecologically sound,' 'environmentally sound,' 'environmentally safe,' 'ecologically safe,' 'environmentally lite,' [and] 'green product.'"  *Ibid.*  While recyclability is not listed, the statute makes it clear that the list is non-exhaustive and that the obligation to substantiate applies to "any other like term."  *Ibid.*

What is more, since at least 1990 the statute has also specified that the documentation to be maintained must include whether or not the consumer good is recyclable.  B&P § 17580(a)(5).  Taken together, the plain language of these statutory provisions evinces a clear intent by the Legislature to require substantiation of recycling claims such as those at issue here.

Well-settled principles of statutory construction support this interpretation.  According to the doctrine of *ejusdem generis*, when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include those items of the same class as those listed. *See e.g.*, *Rizo v. Yovino*, 950 F.3d 1217, 1225 (9th Cir. 2020).  Here, EMCA sets forth examples of the types of terms that require substantiation.  All these terms relate to environmental claims representing that a product is beneficial to, or not harmful to, the environment.  By culminating the list of specific examples of terms associated with positive environmental impacts with the general phrase or "any other like term," the Legislature clearly meant to embrace "objects similar in nature to those objects enumerated by the preceding specific words."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001).  If the Legislature had meant only to include the specific terms listed, it would not have included the final phrase "or any other like term."  *See*, *e.g.*, *Bailey v. United States*, 516 U.S. 137, 146 (1995); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995).  The term "recyclable" is a term that represents that a product or packaging is not harmful to, or is

1    beneficial to, the natural environment, and is therefore covered under B&P § 17580(a).  This is

2    further exemplified by the fact that the Legislature specifically included a subsection that requires

3    substantiation for use of the terms "recycled" and "recyclable."  B&P § 17580(a)(5).

4         Walmart's argument that EMCA's substantiation obligation does not extend to recyclability

5    claims is based on its convoluted interpretation of legislative history.  *See* MTD 20:2–21:2.

6    However, since the plain language of the statute is clear, there is no need to resort to legislative

7    history to resolve this dispute.  *See*, *e.g.*, *Fournier v. Sebelius*, 718 F.3d 110, 1123 (9th Cir. 2013).

8    In any event, Walmart mis-reads the legislative record.

9         First, Walmart cites to the Legislature's 2021 passage of SB 343 to support its argument

10   that EMCA did not previously require companies to substantiate their recycling claims.  SB 343

11   creates new statewide criteria for recyclability labels and directs CalRecycle (the state agency

12   responsible for overseeing California's recycling programs) to establish regulations implementing

13   those criteria.  B&P Code §§ 17580(a)(6), 17580(e), 17580.5, Cal. Pub. Res. Code § 42355.51.

14   Most pertinent here, SB 343 amended EMCA by adding the use of a chasing arrows symbol or

15   recycling instructions as specific examples of representations that a consumer good is "not harmful

16   to, or is beneficial to, the natural environment" and must therefore be substantiated, and by adding

17   whether a consumer good conforms to California's new recycling guidelines as an enumerated item

18   that must be included in a company's substantiation.

19        Contrary to Walmart's argument, these amendments do not mean that the Legislature

20   previously did not view a recycling label as a representation that a product is not harmful to the

21   environment.  Rather, as evidenced by the legislative history of SB 343, the Legislature merely

22   wanted to clarify that the new recycling labeling requirements it was establishing are within the

23   purview of EMCA's substantiation obligation.  According to the California Legislature, "[u]nder

24   *existing law*, a person who represents in advertising or on the label of container of a consumer good

25   that the consumer good that it manufactures or distributes is not harmful to, or is beneficial to, the

26   natural environment, through the use of environmental terms, is required to maintain in its records

27   specified information and documentation supporting the validity of the representation, including, if

28   applicable, whether the consumer good conforms with the uniform standards contained in the

Federal Trade Commission Guidelines for Environmental Marketing Claims for the use of the term "recyclable," among other terms."  *See* 2021 Cal. Legis. Serv. Ch. 507 (SB 343) at p. 3, emphasis added.  SB 343 clarifies current law by confirming that the substantiation obligation applies to the use of the chasing arrows symbol or any other recycling instructions, and ensures that marketers maintain information consistent with the new statewide recyclability criteria.  However, current law already required substantiation of recyclable claims at the time of SB 343's passage.

Second, Walmart points to the legislation from the mid-1990s as somehow supporting its argument that recyclability claims are not covered by EMCA's substantiation requirement.  MTD 21:17–22:13.  However, the 1995 amendment Walmart cites is largely irrelevant since it involved the Legislature's decision to eliminate a separate prohibition on representing consumer goods as recyclable unless those goods met a California-specific definition of recyclability.  That definition was deemed unwieldy, particularly in light of the intervening promulgation of the FTC's Green Guides and its own definition of recyclability in 1992.  As the 1995 legislative history notes, "when California enacted its law, it was the first in the nation and there were no enforceable federal standards in place. However, such standards were subsequently developed in 1992 by the [FTC]."  *See* ECF No. 45, Ex. A at p. 2. The history goes on to state that adhering to the Green Guides is preferable and that it is more reasonable to have one nationwide standard to meet, rather than to require that marketers follow California's unique definitions and standards.  *Id.*  In doing so, the Legislature also amended EMCA's substantiation obligation, but only to clarify that the required documentation should pertain to whether a product complies with the Green Guides' definition of recyclability instead of the now repealed California standard.  Thus, the 1995 amendment cited by Walmart merely reflected an effort to make California environmental marketing laws consistent with the FTC's Green Guides, including its definition of recyclability.  In other words, the recyclability language was not *removed* in 1995, but instead was amended to incorporate the Green Guides' recyclability standard.[6]

---

[6] Even if the substantiation obligation did not apply to recyclability claims until the recent passage of SB 343, this would not impact Greenpeace's unfair claim since the public policies cited in the TAC as a basis for that claim have been in effect for years.

1    **E.  Private Parties Can Enforce EMCA's Substantiation Mandate Under The UCL.**

2         Citing vague and uncompelling public policy reasons, Walmart next argues that it is "not

3    clear" whether any private party can enforce EMCA's substantiation obligation, even if that party

4    has UCL standing.  MTD 22:16-23:10.  Walmart is wrong.

5         The violation of any law can serve as a predicate for a claim for a UCL unlawful claim.  *See*

6    *Abbott Laboratories*, 9 Cal.5th at 651.  In effect, the "unlawful" prong of the UCL makes a

7    violation of the underlying law a *per se* violation of B&P § 17200.  *See Kasky v. Nike, Inc.*, 27

8    Cal.4th 939, 950 (2002); *Moore v. Mars PetCare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020).

9    The unfair prong of the UCL prohibits business practices that are against public policy, that are

10   "immoral, unethical, oppressive, unscrupulous, or substantially injurious," or that cause injuries to

11   consumers that are not outweighed by countervailing benefits.  *Allen v. Hylands, Inc.*, 773 Fed.

12   Appx. 870, 874 (9th Cir. 2019).

13        Here, EMCA establishes a clear mandate for Walmart to maintain records substantiating its

14   recycling claims, and to provide those records to any member of the public upon request.  B&P §§

15   17580(a) and (b).  The Legislature has also expressed numerous public policies in favor of

16   companies maintaining adequate support for their environmental marketing claims and to provide

17   that support to the public.  Cal. Pub. Res. Code § 42355.5 and B&P § 17580(d).  Walmart's

18   violations of these legal obligations and public policies are actionable under the UCL's unlawful

19   and unfair prongs.

20        Walmart primarily relies on *National Council Against Health Fraud Inc. v. King Bio*

21   *Pharmaceuticals, Inc.* 107 Cal. App. 4th 1336 (2003) ("*King Bio*"), a case which does not even

22   address the relevant provisions of California law at issue here.  MTD 22:16-23:10.  Instead, the

23   *King Bio* case involved a private party's attempt to enforce the substantiation obligation of

24   California's False Advertising Law ("FAL"), B&P section 17508.  As Walmart acknowledges

25   (MTD 22:19-20), that statute expressly limits the authority to request substantiation, and the ability

26   to enforce the substantiation obligation, to public prosecutors.  B&P §§ 17508(b) and (c); *see also*

27   *King Bio*, 107 Cal. App. 4th at 1343.  Here, by contrast, EMCA explicitly authorizes "any member

28   of the public" to request substantiation, obligates companies to furnish substantiation in response to

- 23 -

any such request, and expresses a legislative intent that such substantiation "be fully disclosed to the public." B&P §§ 17580(b), (d). Therefore, *King Bio*'s discussion of the very different substantiation provisions of the FAL are irrelevant.[7] Walmart's position that Greenpeace is suing to force Walmart to provide "unspecified information," is contrary to the facts. MTD 23:8. The TAC outlines the specific substantiating documents that Walmart is required to maintain and to provide to any member of the public. TAC ¶¶ 3, 8.

Ultimately, Walmart's argument boils down to its misguided view of the merits of Greenpeace's case and to a vague public policy plea. MTD 22:16-23:10. However, limiting enforcement of EMCA's substantiation obligation to public prosecutors would run contrary to well-established case law interpreting the UCL's unlawful and unfair prongs, and undermine the public policy of EMCA to encourage full disclosure of environmental marketing substantiation to any member of the public. Therefore, the Court should reject Walmart's effort to carve EMCA out of the UCL's ordinary enforcement mechanisms.

### F. Greenpeace Has Adequately Pled Claims Under The Unlawful And Unfair Prongs Of The UCL.

Walmart next argues that Greenpeace's claims fail because, according to Walmart, Greenpeace is using the wrong definition of recyclability. MTD 23:13-24:18. Walmart's theoretical discussion of the meaning of recyclability ignores that Greenpeace's claims in the TAC are based on Walmart's failure to substantiate that the Products are recyclable, and not based on whether the Products are actually recyclable. To be sure, Greenpeace's allegations that Walmart fails to maintain written records that substantiate its recycling claims and provide such records stem from its conclusion that the Products are not recyclable under any reasonable definition of that term. And the fact that the Products are not recyclable directly leads to the downstream harms to the environment, to consumers, to recycling infrastructure and to competition that are cited in the TAC. TAC ¶¶ 6, 34-36, 45, 55-70, 73, 76-78, 83-88. Furthermore, to the extent Walmart seeks to defend this case by mustering documentation that it contends substantiate its recycling claims, the

---

[7] *King Bio* is also inapposite because the plaintiff in that case urged the court to shift the burden of proof to the defendant at trial, whereas this case is at the pleading stage and Greenpeace is not advocating for any burden-shifting.

Court may be asked to determine whether that substantiation satisfies the requirements of EMCA and the Green Guides.  However, the meaning of "recyclable" does not impact whether Greenpeace has adequately pled that Walmart has failed to substantiate its recycling claims.

Walmart's argument is also based on a misguided interpretation of California law and the Green Guides.  Ultimately, Walmart's position seems to be that it can label the Products as recyclable if they are theoretically capable of being recycled even if they are not actually recycled in practice.  MTD 24:5-11.  This "wishcycling" theory does not make sense under any standard, as consumers do not place the Products in their blue bins based on the theoretical possibility they could be recyclable.  And, as alleged in the TAC, the FTC has made it clear that the Green Guides do not permit recycling labels based on theoretical possibilities, and that such claims must instead be based on reality.  16 C.F.R. § 260.12(a), see also TAC ¶ 12. Courts agree: "the Green Guides state that if a product is rendered non-recyclable because of its size or components—even if the product's composite materials are recyclable—then labeling the product as recyclable would constitute deceptive marketing."  *Smith v. Keurig Green Mt., Inc.*, 393 F. Supp. 3d 837, 846 (N.D. Cal. 2019) (*citing* 16 C.F.R. § 260.12(d)).  Thus, Greenpeace is not asking the Court to rewrite the Green Guides as Walmart suggests (MTD 24:5), but instead is using the objective standards required by EMCA and the Green Guides to ensure that companies that label their Products as recyclable can substantiate that such Products are actually recycled.

Indeed, in enacting SB 343, the Legislature has made clear that a product may only be labeled recyclable if it is recyclable in reality.  According to the CalRecycle Statewide Commission on Recycling, "the only plastics that would likely be allowed to be labeled with a chasing arrows symbol under the considerations of this bill would be PET #1 and HDPE #2 plastic bottles and jugs."  *See* SB 343 Senate Bill Analysis, August 31, 2021, at p. 7.  The Products at issue here are largely comprised of plastic resins 3 through 7.  TAC ¶ 2.[8]

---

[8] Notably, this same legislatively-created body of recycling experts has recently issued guidance indicating that: (1) "California law (Cal. Bus. & Prof. Code § 17580 and Cal. Pub. Res. Code § 42355.5) and the federal Green Guides (16 C.F.R. § 260.2) require substantiation for recycling claims," (2) "recyclable labels used on many plastic bags and films in California described below are not legal in [the] State of California," and (3) several Walmart products violate these requirements, including one of the specific types of Products depicted in the TAC.  TAC ¶¶ 65-66.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Walmart's motion should be denied in its entirety.  To the extent the Court grants the motion at all, the case should be remanded back to state court or Greenpeace should be provided an opportunity to amend its complaint to cure any deficiency identified by the Court.

Dated: April 29, 2022                    LEXINGTON LAW GROUP


                                         */s/  Howard Hirsch*
                                         Howard Hirsch (State Bar No. 213209)
                                         Meredyth Merrow (State Bar No. 328337)
                                         LEXINGTON LAW GROUP
                                         503 Divisadero Street
                                         San Francisco, CA 94117
                                         Telephone: (415) 913-7800
                                         Facsimile: (415) 759-4112
                                         hhirsch@lexlawgroup.com
                                         mmerrow@lexlawgroup.com

                                         Attorneys for Plaintiff
                                         Greenpeace, Inc.


## <u>CERTIFICATE OF SERVICE</u>

I, Howard Hirsch, an attorney, hereby certify that on April 29, 2022, I caused a complete and accurate copy of the foregoing document to be served via this Court's ECM/ECF notification system, which will serve electronically to all participants in this case.


                                         */s/  Howard Hirsch*